No. 23-55714

# United States Court of Appeals for the Ninth Circuit

———————

CHAYA LOFFMAN, ET AL.,

*Plaintiffs-Appellants*,

v.

CALIFORNIA DEPARTMENT OF EDUCATION ET AL.,

*Defendants-Appellees*.

———————

On Appeal from the U.S. District Court
for the Central District of California
No. 2:23-cv-01832-JLS-MRW
Honorable Josephine L. Staton

———————

**BRIEF FOR PROFESSOR RICHARD W. GARNETT AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLANTS**

———————

Dino L. LaVerghetta
*Counsel of Record*
Aaron P. Haviland
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711
dlaverghetta@sidley.com

*Counsel for* Amicus Curiae

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ii

INTEREST OF *AMICUS CURIAE* ............................................................. 1

INTRODUCTION ........................................................................................ 2

ARGUMENT ................................................................................................ 7

I.  California's Nonsectarian Requirement Is Subject to Strict
    Scrutiny Because It Is Not Neutral. ................................................. 7

    A.  Laws That Exclude Individuals or Entities on Account of
        Their Religious Status Are Not Neutral. ............................... 7

    B.  California's Nonsectarian Requirement Is Self-Evidently Not
        Neutral Toward Religion. ...................................................... 10

II.  California's Nonsectarian Requirement Is Subject to Strict
     Scrutiny for the Additional Reason That It Is Not Generally
     Applicable. ...................................................................................... 15

    A.  Laws That Provide Mechanisms for Individualized
        Exemptions Are Not Generally Applicable. ........................ 15

    B.  California's System of Granting Individualized Exemptions
        for School Certification Renders the Nonsectarian
        Requirement Not Generally Applicable. .............................. 20

III.  California's Nonsectarian Requirement Does Not Survive Strict
      Scrutiny. .......................................................................................... 22

CONCLUSION .......................................................................................... 26

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A.H. ex rel. Hester v. French,*
985 F.3d 165 (2d Cir. 2021) ............................................................... 10

*Brown v. Borough of Mahaffey,*
35 F.3d 846 (3d Cir. 1994) ................................................................ 15

*Carson ex rel. O.C. v. Makin,*
142 S. Ct. 1987 (2022) ............................................................. *passim*

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
508 U.S. 520 (1993) ................................................................. *passim*

*City of Boerne v. Flores,*
521 U.S. 507 (1997) ....................................................................... 22

*Dahl v. Bd. of Trs. of W. Mich. Univ.,*
15 F.4th 728 (6th Cir. 2021) ...................................................... 19, 20

*Espinoza v. Mont. Dep't of Revenue,*
140 S. Ct. 2246 (2020) ............................................................. *passim*

*Everson v. Bd. of Educ.,*
330 U.S. 1 (1947) ........................................................................... 3

*Fazaga v. FBI,*
965 F.3d 1015 (9th Cir. 2020), *rev'd and remanded on
other grounds,* 595 U.S. 344 (2022) ..................................................... 14

*Fellowship of Christian Athletes v. San Jose Unified Sch.
Dist. Bd. of Educ.,*
82 F.4th 664 (9th Cir. 2023) ............................................. 2, 3, 6, 17, 18

*Foothill Church v. Watanabe,*
3 F.4th 1201 (9th Cir. 2021) ...................................................... 18, 19

*Foothill Church v. Watanabe,*
623 F. Supp. 3d 1079 (E.D. Cal. 2022) ................................................ 19

*Fulton v. City of Philadelphia,*
141 S. Ct. 1868 (2021) ...................................................... *passim*

*Hartmann v. Stone,*
68 F.3d 973 (6th Cir. 1995) .................................................. 14

*Kennedy v. Bremerton Sch. Dist.,*
142 S. Ct. 2407 (2022) ........................................................ 6

*Pierce v. Soc'y of Sisters,*
268 U.S. 510 (1925) .......................................................... 24

*Tandon v. Newsom,*
141 S. Ct. 1294 (2021) .................................................. 13, 22

*Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly,*
309 F.3d 144 (3d Cir. 2002) ................................................. 14

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
582 U.S. 449 (2017) ...................................................... *passim*

**Statutes**

20 U.S.C. § 1412(a)(1) ....................................................... 3, 4

20 U.S.C. § 1412(a)(10)(A) ..................................................... 25

20 U.S.C. § 1412(a)(10)(B) ...................................................... 4

20 U.S.C. § 1414(d)(1)(A) ....................................................... 3

20 U.S.C. § 1414(d)(1)(B) ....................................................... 3

Cal. Educ. Code § 56101(a) .................................................. 5, 20

Cal. Educ. Code § 56365(a) .................................................. 4, 10

Cal. Educ. Code § 56366.2(b) ................................................ 5, 20

## INTEREST OF *AMICUS CURIAE*[1]

Richard W. Garnett is the Paul J. Schierl/Fort Howard Corporation Professor at Notre Dame Law School.[2] Professor Garnett teaches and writes about the freedoms of speech, association, and religion, and constitutional law more generally. He is a leading authority on the role of religious believers and beliefs in politics and society. He has published widely on these matters, and is the author of dozens of law review articles and book chapters. He is the founding director of Notre Dame Law School's Program on Church, State, and Society, an interdisciplinary project that focuses on the role of religious institutions, communities, and authorities in the social order. Professor Garnett writes to aid the Court in understanding recent developments in the Supreme Court's Free Exercise Clause jurisprudence that are relevant to this appeal—in

---

[1] In accordance with Federal Rule of Appellate Procedure 29(a)(4)(E), counsel for *amicus curiae* certifies that no counsel for any party authored this brief in whole or in part and no entity or person, aside from *amicus curiae* or his counsel, made any monetary contribution intended to fund the preparation or submission of this brief. All parties have consented to the filing of this amicus brief.

[2] Institution is listed for affiliation purposes only. Professor Garnett is participating in his individual capacity, not as a representative of his institution.

1

particular, the tests for neutrality and general applicability. *See Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017); *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246 (2020); *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021); *Carson ex rel. O.C. v. Makin*, 142 S. Ct. 1987 (2022).

## **INTRODUCTION**

"Religious schools need not apply." That is the unambiguous message that the California legislature delivered when it explicitly excluded parochial schools—and only parochial schools—from participating in its funding program for students with disabilities. By mandating that schools can only participate if they are "nonsectarian"— i.e., *not* affiliated with a religious faith—California has singled out religion for disfavor in violation of the First Amendment's Free Exercise Clause.

As this Court recently affirmed, the Free Exercise Clause of the First Amendment is a "constitutional commitment" by the government "to be steadfastly neutral to religion." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 672 (9th Cir. 2023) (en banc). To that end, the government cannot exclude individuals

"because of their faith, or lack of it, from receiving the benefits of public welfare legislation." *Everson v. Bd. of Educ.*, 330 U.S. 1, 16 (1947). Nor can the government "'single out' religious groups 'for special disfavor' compared to similar secular groups." *Fellowship of Christian Athletes*, 82 F.4th at 672 (quoting *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2416 (2022)).

Despite this unambiguous command to remain neutral, California nevertheless mandates that only "nonsectarian" schools may receive public funds under a federal program intended to help educate children with disabilities. The Individuals with Disabilities Education Act offers federal funds to states that commit to making a "free appropriate public education" available to all students with disabilities. 20 U.S.C. § 1412(a)(1)(A). Each student with a disability is provided with an "individualized education program," which is a written statement of the student's educational needs and goals. *Id.* § 1414(d)(1)(A). The individualized education program is developed by a team that includes the student's parents, the student's general and special education teachers, and a representative from the local education agency. *See id.* § 1414(d)(1)(B). Full benefits are available under the Act if the student

attends either a public school, *see id.* § 1412(a)(1), or a private school that is certified by a state or local education agency and selected by the individualized education program team, *see id.* § 1412(a)(10)(B). In California, however, only private schools that are "nonsectarian" are eligible for certification and participation in this program. Cal. Educ. Code § 56365(a). Parochial schools are the only type of educational institutions that are categorically excluded from the program.

California's nonsectarian requirement is plainly inconsistent with the Free Exercise Clause and recent Supreme Court precedent. A *nonsectarian* requirement is the very definition of a lack of neutrality. The sole purpose and effect of such a requirement is to single out religious institutions for disfavor. Nevertheless, the district court concluded in the decision below that California's nonsectarian requirement does not violate the Free Exercise Clause. That decision was wrong and clearly at odds with the Supreme Court's Free Exercise Clause jurisprudence.

First, California's nonsectarian requirement is not neutral toward religion because it excludes parochial schools from a government program solely because they are religious. In *Trinity Lutheran Church of Columbia, Inc. v. Comer, Espinoza v. Montana Department of Revenue,*

4

and *Carson v. Makin*, the Supreme Court held that the government may not put a religious individual or entity to the choice of either remaining religious or receiving a public benefit. Consequently, a government assistance program that is available only for students who attend secular schools is not neutral toward religion. *See Carson*, 142 S. Ct. at 1997.

Second, California's nonsectarian requirement is not generally applicable because California provides a mechanism for obtaining an individualized exemption from the requirement. In *Fulton v. City of Philadelphia*, the Supreme Court held that the existence of a system of individualized exemptions renders a law not generally applicable, regardless of whether any exemptions have ever been granted. 141 S. Ct. at 1878–79. California's statute implementing the Individuals with Disabilities Education Act authorizes the State Board of Education to waive any of the requirements for certifying a school to receive funds, including the nonsectarian requirement. *See* Cal. Educ. Code §§ 56101(a), 56366.2(b). The mere existence of that system for granting individualized exemptions for private schools renders the nonsectarian requirement not generally applicable, even if the State Board of

Education has never granted such an exemption. *See Fellowship of Christian Athletes*, 82 F.4th at 687–88.

A law that fails either the test for neutrality or the test for general applicability is subject to strict scrutiny. *See Kennedy*, 142 S. Ct. at 2422. California's nonsectarian requirement fails both. Therefore, the law will pass constitutional muster only if it serves a compelling interest and is narrowly tailored to advance that interest. *See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993). The Defendants argued below that ensuring church-state separation is a sufficiently compelling interest to justify religious discrimination. *See* ER-123-24, 149. But the Supreme Court has rejected that argument in the context of government aid programs that exclude religious institutions, explaining that "an interest in separating church and state more fiercely than the Federal Constitution cannot qualify as compelling in the face of the infringement of free exercise." *Carson*, 142 S. Ct. at 1998 (cleaned up).

California's nonsectarian requirement violates the Free Exercise Clause and is "odious to our Constitution." *Trinity Lutheran*, 582 U.S. at 467. Accordingly, the decision below should be reversed.

6

## **ARGUMENT**

## I. **California's Nonsectarian Requirement Is Subject to Strict Scrutiny Because It Is Not Neutral.**

### A. **Laws That Exclude Individuals or Entities on Account of Their Religious Status Are Not Neutral.**

Neutrality requires, in general terms, that a law must not "discriminate[] against some or all religious beliefs or regulate[] or prohibit[] conduct because it is undertaken for religious reasons." *Lukumi*, 508 U.S. at 532. In the specific context of government programs and benefits, a law may not exclude religious observers and organizations "solely because of their religious character." *Trinity Lutheran*, 582 U.S. at 462. Put another way, the government may not put a religious organization to the choice of either remaining religious or receiving a public benefit. *See id.* "To condition the availability of benefits upon a recipient's willingness to surrender his religiously impelled status effectively penalizes the free exercise of his constitutional liberties." *Id.* (cleaned up).

The Supreme Court has elaborated upon this principle in three recent decisions involving government benefits. In 2017, the Court in *Trinity Lutheran* considered a challenge to a Missouri public program

that offered grants to public and private schools and nonprofit daycare centers to help pay for rubber playground surfaces made from recycled tires. 582 U.S. at 453. Missouri denied the application for a grant from a religious preschool and daycare center on the ground that state law prohibited the government from providing financial assistance to a church. *Id.* at 455–56. The Supreme Court held that "the State's decision to exclude" a religious school from a "public program" was subject to strict scrutiny because the decision "target[ed] the religious for special disabilities based on their religious status." *Id.* at 458, 463 (internal quotation marks omitted).

In 2020, the Court in *Espinoza* considered whether a state policy of barring religiously affiliated schools from a state scholarship program violated the Free Exercise Clause. 140 S. Ct. at 2251. Montana provided tax credits to individuals who donated to organizations that sponsored scholarships that paid for private school tuition. *See id.* The Montana Supreme Court held that the state constitution prohibited the inclusion of religious schools in the tuition assistance program. *See id.* The U.S. Supreme Court, however, reversed that decision, holding that the policy of categorically excluding religious schools from the program was subject

8

to strict scrutiny. *See id.* at 2256. The Court explained that Montana's policy of requiring a school to "divorce itself from any religious control or affiliation" in order to qualify for government aid would "inevitably deter[] or discourage[] the exercise of First Amendment rights." *Id.* (citation omitted).

Finally, in 2022, the Court in *Carson* reviewed Maine's policy of excluding religious schools from a tuition assistance program. 142 S. Ct. at 1993. In rural areas of Maine where no public school is available, the state government offered tuition assistance to help defray the cost of sending children to certain private schools that were approved by the Maine Department of Education. *See id.* To be eligible for approval and participation in the program, Maine required the schools to be nonsectarian. *See id.* at 1994. The Supreme Court held that, under a straightforward application of the "unremarkable principles applied in *Trinity Lutheran* and *Espinoza*," Maine's nonsectarian requirement triggered strict scrutiny. *Id.* at 1997 (internal quotation marks omitted).

Lower courts have followed these Supreme Court decisions and rejected similar attempts to exclude religious individuals and organizations from government benefits. For example, in *A.H. ex rel.*

9

*Hester v. French*, the Second Circuit ruled that a high school student was likely to succeed on the merits of her challenge to a Vermont tuition program that excluded parochial schools. 985 F.3d 165, 169–70 (2d Cir. 2021). Vermont's Dual Enrollment Program paid for the tuition of high school juniors and seniors who took up to two courses at approved state colleges. *Id.* at 170. To qualify for the program, a student had to attend either a public high school or a private high school that was "publicly funded." *Id.* at 170–71. Vermont excluded students from the program who attended "religious" high schools. *Id.* at 180. The Second Circuit held that the "publicly funded" requirement was subject to strict scrutiny because it forced parochial high schools "to choose whether to 'participate in an otherwise available benefit program or remain a religious institution.'" *Id.* (quoting *Trinity Lutheran*, 582 U.S. at 462).

## B. California's Nonsectarian Requirement Is Self-Evidently Not Neutral Toward Religion.

There can be no doubt in light of these precedents that California's nonsectarian requirement triggers strict scrutiny. California will certify a private school for receipt of federal and state assistance under the Individuals with Disabilities Education Act only if the school is "nonsectarian." Cal. Educ. Code § 56365(a). As a result, religious private

schools are explicitly disqualified from a benefit "solely because of their religious character." *Trinity Lutheran*, 582 U.S. at 462. The law thereby "imposes a penalty on the free exercise of religion," and that penalty "triggers the most exacting scrutiny." *Id.*

The district court concluded in the decision below that the nonsectarian requirement did not burden the free exercise rights of the parents of children with disabilities because those children could still attend parochial schools and receive some—albeit inferior—benefits. ER-44-53. Parents who elect to send their children to private schools, including parochial schools, are still entitled to receive "equitable services." ER-47 (citing 20 U.S.C. § 1412(a)(10)(A)(vi)). To receive the full benefits offered by the law, however, parents must accept the private school that is picked by their child's individualized education program team, which, in California, means a secular school. *See* ER-53.

In other words, according to the district court, the Individuals with Disabilities Education Act presents a "tradeoff between full benefits and school choice." ER-52. On the one hand, parents can choose to obtain full benefits, but the individualized education program team will select the private school their child will attend—and, in California, the only private

schools the team is allowed to select are nonsectarian. On the other hand, parents can choose the private school their child will attend—which may include religious schools—but they will receive inferior benefits under the Act.

The nonsectarian requirement is no less "odious" to the Constitution when framed in these terms. *Trinity Lutheran*, 582 U.S. at 467. Indeed, it strains credulity for the district court to have concluded that a law that uses the word "*nonsectarian*" is somehow *neutral* toward religion. Parochial schools are disqualified from a government program solely because they are religious. And the parents of children with disabilities are "put to the choice" of either sending their children to religious private schools with reduced benefits, or obtaining full benefits while sending their child to either a public school or a nonsectarian private school. *Id.* at 465. That choice effectively imposes a "penalty" on those parents who wish to retain the option of sending their children to religious schools. *Id.* at 466. It does not matter that those parents are still able to receive lesser benefits because the treatment of "*any* comparable secular activity more favorably than religious exercise" violates the Free

Exercise Clause. *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (per curiam).

The district court also reasoned that *Carson* does not control the outcome of this case because California exercises a greater degree of control over the curricula taught at private schools participating in the Individuals with Disabilities Education Act than Maine did over the curricula at private schools that received government tuition assistance. ER-51-52. But that reasoning is based on a distinction without a difference. The Supreme Court's holding in *Carson* did not turn on the degree of state supervision over a parochial school's curriculum. A nonsectarian requirement for private schools will never be neutral toward religion, regardless of how much curricular oversight the state exercises.

Finally, the parties below disputed—but the district court did not clearly resolve—whether a plaintiff must make a threshold showing of a substantial burden on his or her right to religious exercise. *See* Pls.' Consolidated Opp. to Defs.' Mots. to Dismiss 23 (ECF No. 37); State Defs.' Reply in Supp. of Mot. to Dismiss 11–14 (ECF No. 43); *see also* ER-53 (stating only that the parent plaintiffs had failed to allege that the

nonsectarian requirement burdened their free exercise rights). Assuming that the district court did incorporate a "substantial burden" requirement into its analysis, that decision is contrary to Supreme Court precedent.

"[A] law targeting religious beliefs as such is never permissible." *Lukumi*, 508 U.S. at 533. Accordingly, the Supreme Court has never required a showing of a substantial burden when considering claims that the government is discriminating against religion. *See id.* at 531–47 (finding a Free Exercise Clause violation without considering whether there was a substantial burden on religious exercise); *Trinity Lutheran*, 582 U.S. at 458–67 (same); *Espinoza*, 140 S. Ct. at 2254–63 (same); *Fulton*, 141 S. Ct. at 1876–82 (same); *Carson*, 142 S. Ct. at 1996–2002 (same). And lower courts have rejected attempts to impose such a requirement on Free Exercise Clause claims. *See, e.g.*, *Fazaga v. FBI*, 965 F.3d 1015, 1058 (9th Cir. 2020) (a law that fails strict scrutiny is invalid "[r]egardless of the magnitude of the burden imposed"), *rev'd and remanded on other grounds*, 595 U.S. 344 (2022); *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 170 (3d Cir. 2002) ("[T]here is no substantial burden requirement when government discriminates against religious conduct."); *Hartmann v. Stone*, 68 F.3d 973, 979 n.4 (6th Cir.

1995) ("[Plaintiffs] need not demonstrate a substantial burden on the practice of their religion."). "Applying such a burden test to non-neutral government actions would make petty harassment of religious institutions and exercise immune from the protection of the First Amendment." *Brown v. Borough of Mahaffey*, 35 F.3d 846, 849–50 (3d Cir. 1994).

## II. California's Nonsectarian Requirement Is Subject to Strict Scrutiny for the Additional Reason That It Is Not Generally Applicable.

### A. Laws That Provide Mechanisms for Individualized Exemptions Are Not Generally Applicable.

General applicability requires that the government, "in pursuit of legitimate interests, cannot in a selective manner impose burdens only on conduct motivated by religious belief[s]." *Lukumi*, 508 U.S. at 543. "A law is not generally applicable if it 'invites' the government to consider the particular reasons for a person's conduct by providing a 'mechanism for individualized exemptions.'" *Fulton*, 141 S. Ct. at 1877 (cleaned up) (quoting *Emp. Div. v. Smith*, 494 U.S. 872, 884 (1990)). In other words, a law is not generally applicable if it "permit[s] the government to grant exemptions based on the circumstances underlying each application." *Id.*

15

In 2021, the Supreme Court in *Fulton v. City of Philadelphia* considered a challenge to Philadelphia's decision not to contract with a Catholic foster care agency unless the agency agreed to certify same-sex couples as foster parents. 141 S. Ct. at 1874. Philadelphia argued that the agency's refusal to certify same-sex couples violated a non-discrimination provision of the contract between the city and the agency. *Id.* at 1875. The Court held, however, that the non-discrimination provision was not generally applicable because it contained "a system of individual exemptions," and whether to grant or deny those exemptions was left to the "sole discretion" of the Commissioner of the Department of Human Services. *Id.* at 1878. According to the Court, the fact that the Commissioner had never granted an exemption was not relevant: "The creation of a formal mechanism for granting exceptions renders a policy not generally applicable, regardless whether any exceptions have been given, because it invites the government to decide which reasons for not complying with the policy are worthy of solicitude." *Id.* at 1879 (cleaned up).

Lower courts, including this Court, have followed *Fulton* when considering other government programs that grant individualized

exemptions. Recently, in *Fellowship of Christian Athletes v. San Jose Unified School District Board of Education*, this Court reviewed the decision of a school district to revoke the status of a Christian group as an official student club because the group required its members to affirm that "sexual intimacy is to be expressed only within the context of marriage," which "is exclusively the union of one man and one woman." 82 F.4th at 671–72. The school district concluded that the club was in violation of the district's non-discrimination policy. *Id.* at 675. But this Court held that the non-discrimination policy was not generally applicable because the district "retain[ed] (and exercise[d]) significant discretion in applying exceptions to its own programs, as well as to student programs." *Id.* at 687. Indeed, the district allowed "student groups to discriminate based on other 'non-discriminatory' criteria," which were "sanctioned based on the District officials' use of 'common sense' on a case-by-case basis." *Id.* at 688. This Court held that such discretion, which allowed the district to grant exemptions "on an ad hoc basis," rendered the non-discrimination policy not generally applicable. *Id.* at 687.

Importantly, this Court rejected the district's argument that *Fulton* was concerned only with the government exercising "unfettered" discretion. *Fellowship of Christian Athletes*, 82 F.4th at 687. "Properly interpreted, *Fulton* counsels that the mere existence of a discretionary mechanism to grant exemptions can be sufficient to render a policy not generally applicable, regardless of actual exercise." *Id.* at 687–88. Even limiting the government's discretion to "common sense" standards triggers strict scrutiny because, although "'common sense often makes good law,' it means that the law is not generally applicable." *Id.* at 688 (citation omitted) (quoting *Peak v. United States*, 353 U.S. 43, 46 (1957)).

In *Foothill Church v. Watanabe*, this Court vacated a district court decision reviewing California's requirement that churches must provide elective abortions as part of group health plans for their employees. 3 F.4th 1201, 1201 (9th Cir. 2021); *see also id.* (Bress, J., dissenting). The district court had held that the abortion coverage requirement was generally applicable, even though the Director of the California Department of Managed Health Care had the authority to issue individualized exemptions. *See* 3 F.4th at 1204 (Bress, J., dissenting). This court remanded the case to the district court for further

consideration in light of *Fulton*. *See id.* at 1201. On remand, California conceded that the "system of individualized exemptions" in the statute requiring abortion coverage rendered the law not generally applicable and therefore subject to strict scrutiny. *Foothill Church v. Watanabe*, 623 F. Supp. 3d 1079, 1093–94 (E.D. Cal. 2022) (quoting *Fulton*, 141 S. Ct. at 1877).

The Sixth Circuit Court of Appeals also relied on *Fulton* when it considered a challenge to a public university vaccine mandate for student-athletes in *Dahl v. Board of Trustees of Western Michigan University*, 15 F.4th 728 (6th Cir. 2021) (per curiam). The university's mandate allowed for medical and religious exemptions to "be considered on an individual basis." *Id.* at 733. After the university denied the requests of 16 student-athletes for religious exemptions, the district court issued a preliminary injunction allowing the student-athletes to participate in team activities without vaccinations. *Id.* at 730. On a motion for a stay of the injunction pending appeal, the Sixth Circuit held that the students were likely to succeed on the merits of their claims and denied the stay request. *Id.* at 735–36. The court ruled that the mandate was not generally applicable because it provided a "mechanism for

individualized exemptions." *Id.* at 733. As the Sixth Circuit explained, "where a state extends discretionary exemptions to a policy, it must grant exemptions for cases of 'religious hardship' or present compelling reasons not to do so." *Id.* (quoting *Fulton*, 141 S. Ct. at 1877). Moreover, the court clarified that it did not matter that the university had never granted an exemption to the vaccine mandate because what mattered were "the terms of the policy itself." *Id.*

## B. California's System of Granting Individualized Exemptions for School Certification Renders the Nonsectarian Requirement Not Generally Applicable.

California's State Board of Education has the authority to waive "any provision" of the state law implementing the federal Individuals with Disabilities Education Act, as well as any "regulation[] adopted pursuant to that provision." Cal. Educ. Code § 56101(a); *see also id.* § 56366.2(b) (waiver of certification requirements requires approval by the State Board of Education). The only restrictions on that authority are that the waiver must be "necessary or beneficial" to implementing a student's individualized education program, it must not abrogate the rights of parents and students, and it must otherwise comply with the federal statute. Cal. Educ. Code § 56101(a). In other words, the State

20

Board has the "sole discretion" to waive any of the requirements for certifying a private school, including the requirement that the school is nonsectarian. *Fulton*, 141 S. Ct. at 1878.

That discretion renders the state law not generally applicable and, therefore, subject to strict scrutiny. *See id.* It is not relevant whether the State Board has ever waived the nonsectarian requirement. The mere existence of "a formal mechanism for granting exceptions . . . invites the government to decide which reasons for not complying with the policy are worthy of solicitude." *Id.* at 1879 (cleaned up).

The district court limited its analysis in the decision below to whether California's nonsectarian requirement violates the Free Exercise Clause in light of *Carson*, *Espinoza*, and *Trinity Lutheran*. ER-44-53. But the existence of a formal mechanism for granting an exemption to the nonsectarian requirement means that the law implicates *Fulton* and offers an alternative, independent ground for concluding that the law is subject to strict scrutiny. A law must be both neutral *and* generally applicable in order to be subject to the more deferential rational-basis review. *See Lukumi*, 508 U.S. at 546.

## III. California's Nonsectarian Requirement Does Not Survive Strict Scrutiny.

A law that is not neutral or not generally applicable must survive strict scrutiny. *See Lukumi*, 508 U.S. at 546. The burden of establishing that a law survives strict scrutiny rests with the government. *See Tandon*, 141 S. Ct. at 1296. It must show both that the challenged law serves a compelling interest and that the law is narrowly tailored in pursuit of that interest. *See Carson*, 142 S. Ct. at 1997. A "compelling interest" means an interest "of the highest order." *Lukumi*, 508 U.S. at 546. The First Amendment requires a "precise analysis" of the interests asserted by the government. *Fulton*, 141 S. Ct. at 1881. "Rather than rely on broadly formulated interests, courts must scrutinize the asserted harm of granting specific exemptions to particular religious claimants." *Id.* (cleaned up).

The district court did not reach the issue of whether California's nonsectarian requirement satisfies strict scrutiny. If it had, however, the law would not have survived. Strict scrutiny is "the most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997). The test "is not watered down but really means what it says." *Lukumi*, 508 U.S. at 546 (cleaned up). As a result, a "law that targets

religious conduct for distinctive treatment . . . will survive strict scrutiny only in rare cases." *Id.*; *see also Trinity Lutheran*, 582 U.S. at 466 (holding that the government failed to satisfy strict scrutiny); *Espinoza*, 140 S. Ct. at 2260–61 (same); *Carson*, 142 S. Ct. at 1997–98 (same); *Fulton*, 141 S. Ct. at 1881–82 (same). California's nonsectarian requirement is no exception.

In the briefing below, the defendants argued that ensuring church-state separation is a sufficiently compelling interest to survive strict scrutiny. *See* ER-123-24, 149. The Supreme Court, however, rejected this precise argument in *Trinity Lutheran*, *Espinoza*, and *Carson*. The Court explained in those opinions that the interest "in achieving greater separation of church and State than is already ensured under the Establishment Clause of the Federal Constitution . . . is limited by the Free Exercise Clause." *Trinity Lutheran*, 582 U.S. at 466 (quoting *Widmar v. Vincent*, 454 U.S. 263, 276 (1981)); *see also Carson*, 142 S. Ct. at 1998 ("[A]n 'interest in separating church and state more fiercely than the Federal Constitutional cannot qualify as compelling in the face of the infringement of free exercise.'" (cleaned up) (quoting *Espinoza*, 140 S. Ct. at 2260)). Even if a state's own constitution forbids providing aid to

parochial schools, a state may not, in the name of complying with its constitution, violate the federal Free Exercise Clause. *See Espinoza*, 140 S. Ct. at 2255 (holding that application of Montana Constitution's "no-aid" provision violated the Free Exercise Clause).

Moreover, any purported interest that California has in withholding aid from parochial schools must be considered against the competing interest that parents have in providing a religious education for their children—an interest that is protected as a constitutional right. *See Espinoza*, 140 S. Ct. at 2261 (considering the right to direct the religious upbring of one's children in the compelling-interest analysis). The Supreme Court has "long recognized the rights of parents to direct 'the religious upbringing' of their children," including by sending their children to parochial schools instead of public schools. *Id.* (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 214 (1972)); *see also Pierce v. Soc'y of Sisters*, 268 U.S. 510, 535 (1925) ("The fundamental theory of liberty upon which all governments in this Union repose excludes any general power of the state to standardize its children by forcing them to accept instruction from public teachers only."). California's nonsectarian

requirement impedes parents of disabled children from exercising that fundamental right.

Finally, even if preventing aid from flowing to parochial schools were a compelling interest, that interest is undermined by the fact that parents may still obtain lesser benefits if they choose to send their children to private schools that do not meet the nonsectarian requirement. *See* 20 U.S.C. § 1412(a)(10)(A). As the district court explained in the decision below, "parents who prefer private—including religious—school for their children" may still "seek equitable services" instead of "the full range of benefits." ER-53. Because a law does not advance a compelling interest "when it leaves appreciable damage to that supposedly vital interest unprohibited," California's nonsectarian requirement is "fatally underinclusive." *Espinoza*, 140 S. Ct. at 2261 (cleaned up); *see also Lukumi*, 508 U.S. at 546 (ordinances that were "underinclusive in substantial respects" were not narrowly tailored).

\*   \*   \*

A direct application of Supreme Court precedent can only yield one conclusion: the law at issue in this case violates the Free Exercise Clause. California's nonsectarian requirement for the certification of private

schools under the Individuals with Disabilities Education Act unambiguously singles out religion for disfavor by excluding parochial schools from participation in a government program solely because of the schools' religious status. *See Trinity Lutheran*, 562 U.S. at 462; *Espinoza*, 140 S. Ct. at 2254; *Carson*, 142 S. Ct. at 1996–97. That fact—combined with the laws' lack of general applicability, *see Fulton*, 141 S. Ct. at 1877—mandates that the law be subject to strict scrutiny. Because the law cannot survive that exacting scrutiny, the decision below cannot stand.

## CONCLUSION

For the foregoing reasons, the decision below should be reversed.

November 1, 2023                    Respectfully submitted,

                               */s/ Dino L. LaVerghetta*
                               Dino L. LaVerghetta
                                   *Counsel of Record*
                               Aaron P. Haviland
                               SIDLEY AUSTIN LLP
                               1501 K Street, N.W.
                               Washington, D.C. 20005
                               Telephone: (202) 736-8000
                               Facsimile: (202) 736-8711
                               dlaverghetta@sidley.com

                               *Counsel for* Amicus Curiae

26

## <u>CERTIFICATE OF COMPLIANCE</u>

This Brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(a)(5) and Circuit Rule 32-1 because it contains 4,987 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This Brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using the Microsoft Word 365 word processing system in 14-point Century Schoolbook font.

Date: November 1, 2023          Respectfully submitted,

*/s/ Dino L. LaVerghetta*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 1, 2023, a true and correct copy of the foregoing was timely filed with the Clerk of the Court using the appellate CM/ECF system, which will send notifications to all counsel registered to receive electronic notices.

<u>/s/ Dino L. LaVerghetta</u>
*Counsel for* Amicus Curiae