No. 23-55714

# In the United States Court of Appeals for the Ninth Circuit

---

CHAYA LOFFMAN, ET AL.,
PLAINTIFFS-APPELLANTS

*v.*

CALIFORNIA DEPARTMENT OF EDUCATION, ET AL.,
DEFENDANTS-APPELLEES

---

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA (CIV. NO. 23-1832)
(THE HONORABLE JOSEPHINE L. STATON, J.)*

---

**BRIEF OF AMICUS CURIAE JEWISH COALITION FOR RELIGIOUS LIBERTY SUPPORTING APPELLANTS**

---

KANNON K. SHANMUGAM
BRIAN M. LIPSHUTZ
YISHAI SCHWARTZ
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
*2001 K Street, N.W.
Washington, DC 20006
(202) 223-7300
kshanmugam@paulweiss.com*

# TABLE OF CONTENTS

Page

Interest of amicus curiae ........................................................................ vi

Introduction and summary of argument .............................................. 1

Argument .................................................................................................. 3

    I.    Public schools that fail to accommodate religious needs deprive Orthodox Jewish students with disabilities of a free appropriate public education .......................................... 3

        A.    Schools that fail to protect disabled students from harassment, bullying, and social isolation deprive those students of a FAPE .......................................... 4

        B.    Disabled students' access to education is especially impaired by missed classes, social isolation, and bullying ................................................................... 6

        C.    Disabled Orthodox Jewish students are particularly vulnerable to educational and social harms in schools that are not properly equipped to support their unique needs .................................................................. 9

        D.    Plaintiffs have adequately alleged that they were denied a FAPE in their current schools ........................... 14

    II.    California's 'nonsectarian' requirement violates the Free Exercise Clause by requiring families to subject their children to religious harms as a condition for receiving a FAPE ........................................................................ 17

Conclusion .............................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*Ashelman* v. *Wawrzaszek*, 111 F.3d 674 (9th Cir. 1997) ...................................10

*Byrne* v. *Springfield School District*,
   Civ. No. 21-3199, 2021 WL 4847804 (E.D. Pa. Oct. 14, 2021) .......................7

*Capistrano Unified School District* v. *S.W.*,
   21 F.4th 1125 (9th Cir. 2021), *cert. denied*, 143 S. Ct. 98 (2022)....................4

*Carson* v. *Makin*, 142 S. Ct. 1987 (2022) ...............................................................17

*Citizens for Quality Education San Diego* v. *Barrera*,
   333 F. Supp. 3d 1003 (S.D. Cal. 2018)..............................................................6

*Cianciotto ex rel. D.S.* v. *New York City Department of
   Education*, 600 F. Supp. 3d 434 (S.D.N.Y. 2022) ............................................5

*Doe by Next Friend of Doe* v. *Detroit Public School Community
   District*, Civ. No. 21-11136, 2022 WL 989331
   (E.D. Mich. Mar. 31, 2022)................................................................................8

*Espinoza* v. *Montana Department of Revenue*,
   140 S. Ct. 2246 (2020) .....................................................................................17

*Charlie F. ex rel. Neil F.* v. *Board of Education*,
   98 F.3d 989 (7th Cir. 1996)................................................................................5

*Endrew F. ex rel. Joseph F.* v. *Douglas County School District
   RE-1*, 580 U.S. 386 (2017) ...............................................................................4

*Lansberry* v. *Altoona Area School District*,
   356 F. Supp. 3d 486 (W.D. Pa. 2018)..............................................................6, 7

*LeBlanc-Sternberg* v. *Fletcher*, 781 F. Supp. 261 (S.D.N.Y. 1991) .................10

*Long* v. *Murray County School District & Gina Linder*,
   Civ. No. 10-15, 2012 WL 13071603 (N.D. Ga. Apr. 18, 2012) .......................7

Page

Cases—continued:

*Lyng* v. *Northwest Indian Cemetery Protective Association*,
485 U.S. 439 (1988)..................................................................17

*M.L.* v. *Federal Way School District*, 394 F.3d 634 (9th Cir. 2005) .................5

*Markel* v. *Union of Orthodox Jewish Congregations of America*,
Civ. No. 19-10704, 2023 WL 1093676 (C.D. Cal. Jan. 3, 2023) ....................18

*Midrash Sephardi, Inc.* v. *Town of Surfside*,
366 F.3d 1214 (11th Cir. 2004).........................................................9

*Our Lady of Guadalupe School* v. *Morrissey-Berru*,
140 S. Ct. 2049 (2020) ...............................................................10

*Shore Regional High School Board of Education* v. *P.S.*,
381 F.3d 194 (3d Cir. 2004) ...........................................................5

*T.K.* v. *New York City Department of Education*:
779 F. Supp. 2d 289 (E.D.N.Y. 2011).........................................*passim*
32 F. Supp 3d 405 (E.D.N.Y. 2014)....................................................5
810 F.3d 869 (2d Cir. 2016) ....................................................5, 8, 15

*T.R.* v. *School District of Philadelphia*,
223 F. Supp. 3d 321 (E.D. Pa. 2016) ..................................................5

*Trinity Lutheran Church of Columbia, Inc.* v. *Comer*,
582 U.S. 449 (2017)..................................................................17

*United States* v. *Village of Airmont*,
839 F. Supp. 1054 (S.D.N.Y. 1993)....................................................10

*Wagner* v. *Saint Joseph's/Candler Health System, Inc.*,
Civ. No. 20-284, 2022 WL 905551 (S.D. Ga. Mar. 28, 2022) ..........................9

*Westchester Day School* v. *Village of Mamaroneck*:
417 F. Supp. 2d 477 (S.D.N.Y. 2006)..................................................10
504 F.3d 338 (2d Cir. 2007) ..........................................................11

## CONSTITUTION, STATUTES, AND REGULATION

U.S. Const. Amend. I ....................................................................1, 2, 17, 19

20 U.S.C. § 1412(a)(10)(B)(i) ...................................................................4, 14

Cal. Educ. Code § 56365 .................................................................................3

Cal. Educ. Code § 56365(a) .....................................................................14, 17

34 C.F.R. § 300.146(a)(2) ................................................................................4

## OTHER AUTHORITIES

Haley Brown & Jesse O'Neil, *NYC Public School Students
   Brandish Antisemitic Signs, Call for Israel to be Eradicated*,
   N.Y. Post (Oct. 25, 2023) <tinyurl.com/3ttaez2k> .......................................13

Libby Emmons, *California High School Students Stage Pro-
   Hamas Walkouts After Textbooks Instill Anti-Israel, Pro-
   Jihad Views*, PM (Oct. 21, 2023) <tinyurl.com/4njtftjn> ...........................13

Federal Bureau of Investigation, *FBI Releases Supplement
   to the 2021 Hate Crime Statistics* (April 4, 2023)
   <tinyurl.com/fbi-2021-stats> ............................................................13

Sameer Hinduja, *Bullying Because of Religion: Our Latest
   Findings and Best Practices* (2019) <tinyurl.com/bullying-
   religion> ...............................................................................................13

Matthew Impelli, *Fight Breaks Out at High School Over Israel,
   Hamas War*, Newsweek (Oct. 17, 2023)
   <tinyurl.com/nxrkczhc> ...................................................................13

Gayle L. Macklem, *Bullying and Teasing: Social Power in
   Children's Groups* (2003) ..........................................................................9

Dan Olweus, *Bully at School: What We Know and What We Can
   Do* (1993) .....................................................................................................7

iv

Page

Other authorities—continued:

Aubrianna Osorio, *Children's Anxiety and Depression on the
Rise*, Georgetown University McCourt School of Public Policy
Center for Children and Families (Mar. 24, 2022)
<tinyurl.com/ydhjjy6v> ................................................................6

Sharon Otterman, *She Was Excited for a New School. Then the
Anti-Semitic 'Jokes' Started*, N.Y. Times (Mar. 4, 2020)
<tinyurl.com/nytimes-school> .....................................................13

Tara Parker-Pope, *Web of Popularity, Achieved by Bullying*,
N.Y. Times (Feb. 14, 2011) <tinyurl.com/4rcum2bz> ..................6

Faris Tanyos, *U.S. Sees Spike in Antisemitic Incidents Since
Beginning of Israel-Hamas War, Anti-Defamation League
Says*, CBS (Oct. 25, 2023) <tinyurl.com/mp58jvfd> ..................12

U.S. Department of Education, Office of Civil Rights, *Dear
Colleague* (May 25, 2023) <tinyurl.com/mr2f8mpm> .................12

Jing Wang, et al., *School Bullying Among Adolescents in the
United States: Physical, Verbal, Relation and Cyber*, Journal
of Adolescent Health (2009)........................................................8

Joseph L. Wright, *Address at American Medical Association
Educational Forum on Adolescent Health: Youth Bullying*
(2002) <tinyurl.com/5dxbhp85> ..................................................6

John Young, Ari Ne'eman & Sara Gelser, *Bullying and Students
With Disabilities,* National Council on Disability (2012)
<tinyurl.com/yss34urb> ................................................................8

## INTEREST OF AMICUS CURIAE

Amicus Jewish Coalition for Religious Liberty (JCRL) is an incorporated group of rabbis, lawyers, and professionals who practice Judaism and are committed to defending religious liberty. JCRL has an interest in protecting the religious rights of students and families in general, and in protecting the rights of Jewish children and families in particular. JCRL also has an interest in restoring an understanding of the Free Exercise Clause that offers broad protection to religious liberty, particularly to members of minority religions and those committed to traditional religious practice.[*]

---

[*] Amicus curiae state that no counsel for any party authored this brief in whole or in part; no counsel or party contributed money intended to fund the preparation or submission of this brief; and no person other than amicus curiae or their counsel contributed money intended to fund its preparation or submission. All parties have consented to the filing of this brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case involves a California educational policy that openly discriminates on the basis of religion, depriving disabled children of their rights to religious liberty and an equal education. By statute, California bars religious children with disabilities—and religious schools seeking to provide those students with services—from accessing state benefits on equal terms. That statute facially discriminates on the basis of religion and thus constitutes a clear violation of the First Amendment. The law also inflicts particular harms on Orthodox Jewish students with disabilities by denying many such students access to the free appropriate public education promised by federal and state law, and by forcing others to sacrifice their religious principles to receive promised educational services.

I.     By accepting federal funds through the Individuals with Disabilities Education Act (IDEA), California assumes the obligation to provide all students with disabilities with a free appropriate public education (FAPE). Because public schools often provide inadequate services for the full range of students' disabilities, States can meet their FAPE obligations by placing and funding some students in private schools. Regardless of whether they offer services through public or private school, however, States must ensure that the educational environment in which they place students meets those students' particular needs and facilitates their academic progress.

(1)

Disabled students are especially vulnerable to bullying, social isolation, and the effect of missed classes. Being an Orthodox Jew in a non-Jewish school exacerbates those harms, making disabled Orthodox Jewish students especially at risk of receiving an inadequate education. As plaintiffs have explained, public and nonsectarian schools often lack the experience, resources, and cultural competence to provide a FAPE to Orthodox Jewish students with disabilities.

II.     Even if a nonsectarian private school is able to provide a FAPE, the "nonsectarian" requirement under California law still inflicts unconstitutional harms on many Orthodox Jewish students. As plaintiffs have shown, many Orthodox Jews believe that educating their children in a religious environment is a religious imperative. Similarly, many Orthodox Jews adhere strictly to traditional religious practices—such as keeping a kosher diet and observing Jewish holidays—that students with disabilities may be unable to maintain in a secular environment. California nevertheless forces many Orthodox Jewish families to attend such secular private schools as a condition of obtaining a FAPE. Requiring Orthodox Jewish families to sacrifice their religious observances to obtain a FAPE in a nonsectarian private school violates the First Amendment.

California's program for placing children in private schools must not exclude religious schools. The judgement below should be reversed.

2

# ARGUMENT

## I. PUBLIC SCHOOLS THAT FAIL TO ACCOMMODATE RELIGIOUS NEEDS DEPRIVE ORTHODOX JEWISH STUDENTS WITH DISABILITIES OF A FREE APPROPRIATE PUBLIC EDUCATION

In granting defendants' motions to dismiss and denying plaintiffs' motion for a preliminary injunction, the district court held that plaintiffs had failed to "allege that [the individual plaintiffs] have been denied a FAPE because of their religion." ER-50. That is incorrect. It is well established that a State fails to provide a FAPE not only when instruction is inadequate, but also when the educational environment is insufficient to allow for adequate educational progress in light of the student's individual needs and circumstances. Because Orthodox Jewish students with disabilities experience a unique set of challenges that can materially interfere with their education, many public and nonsectarian schools are unable to provide those students with a FAPE. Plaintiffs in this case specifically alleged that their children were falling behind academically because of missed weeks of valuable instruction for holiday observances and the social isolation and anxiety caused by religious differences.[*]

---

[*] Plaintiffs have not asserted claims under the IDEA and do not need to establish that California's religiously discriminatory policy caused the denial of a FAPE to succeed in their free-exercise claims. Regardless of the *reason* plaintiffs cannot receive a FAPE in their public schools, the *fact* that a FAPE is unavailable triggers the State's obligation to provide plaintiffs with a FAPE in a non-public school. *See* Cal. Educ. Code § 56365. In light of that obligation, plaintiffs are affected by the nonsectarian requirement and thus have standing to pursue their free-exercise challenges to that requirement, regardless of

3

A.  **Schools That Fail To Protect Disabled Students From Harassment, Bullying, And Social Isolation Deprive Those Students of A FAPE**

Under the IDEA, States receive federal funds and assume the obligation to provide all students with disabilities with a free appropriate public education. *See, e.g., Endrew F. ex rel. Joseph F.* v. *Douglas County School District RE-1*, 580 U.S. 386, 390 (2017). Students with disabilities thus have "a substantive right to a FAPE, which consists of both instruction tailored to meet a child's unique needs and sufficient supportive services to permit the child to benefit from that instruction." *Capistrano Unified School District* v. *S.W.*, 21 F.4th 1125, 1129 (9th Cir. 2021) (internal quotation marks and citation omitted), *cert. denied*, 143 S. Ct. 98 (2022). In providing a FAPE, the State must account for "the academic, developmental, and functional needs of the child," among other things. *Id.* (citing 20 U.S.C. § 1414(d)(3)(A)). Recognizing that some disabled children require resources, facilities, or expertise available only in private institutions, the IDEA mandates that States provide such children with a FAPE through private schools "at no cost to the parents." 34 C.F.R. § 300.146(a)(2); *see also* 20 U.S.C. § 1412(a)(10)(B)(i).

---

whether the harms they experience amount to a denial of a FAPE. Amicus nonetheless addresses the denial of a FAPE because (1) the district court erred by holding that plaintiffs were not denied a FAPE because of their religion, and (2) the denial of a FAPE illustrates the scale and human costs of the harms caused by the nonsectarian requirement, particularly for Orthodox Jewish students and families.

To determine whether an education offered by a State constitutes a FAPE, a court asks whether the education is "likely to produce progress, not regression," and whether it "affords the student with an opportunity greater than mere trivial advancement." *T.K.* v. *New York City Department of Education*, 810 F.3d 869, 875 (2d Cir. 2016) (*T.K. III*). A State fails to provide a FAPE not only when it fails to offer particular educational or disability-support services, but also when the school environment inhibits the child's educational progress for other reasons. *See, e.g., M.L.* v. *Federal Way School District*, 394 F.3d 634, 650 (9th Cir. 2005); *T.K. III*, 810 F.3d at 875; *Shore Regional High School Board of Education* v. *P.S.*, 381 F.3d 194, 198 (3d Cir. 2004); *Charlie F. ex rel. Neil F.* v. *Board of Education*, 98 F.3d 989, 993 (7th Cir. 1996); *T.R.* v. *School District of Philadelphia*, 223 F. Supp. 3d 321, 330 (E.D. Pa. 2016); *Cianciotto ex rel. D.S.* v. *New York City Department of Education*, 600 F. Supp. 3d 434, 458 (S.D.N.Y. 2022). Courts have therefore held that a State fails to provide a FAPE when schools are insufficiently "free from the threat of harassment." *Shore Regional High*, 381 F.3d at 199; *see also T.K.* v. *New York City Department of Education*, 779 F. Supp. 2d 289, 311-312 (E.D.N.Y. 2011) (*T.K. I*). Although such harms might not directly relate to classroom instruction or disability support, they constitute a denial of a FAPE because they "substantially restrict[] a child with learning disabilities in her educational opportunities." *T.K.* v. *New York City Department of Education*,

32 F. Supp 3d 405, 417 (E.D.N.Y. 2014) (*T.K. II*), *aff'd*, 810 F.3d 869 (2d Cir. 2016).

### B. Disabled Students' Access To Education Is Especially Impaired By Missed Classes, Social Isolation, And Bullying

1. Federal courts recognize that social isolation and bullying pose "a pervasive problem nationally." *Lansberry* v. *Altoona Area School District*, 356 F. Supp. 3d 486, 502 (W.D. Pa. 2018). More than 7 million children have been diagnosed with anxiety or depression. *See* Aubrianna Osorio, *Children's Anxiety and Depression on the Rise*, Georgetown University McCourt School of Public Policy Center for Children and Families (Mar. 24, 2022) <tinyurl.com/ydhjjy6v>. One-third of students use "aggressive behavior" to gain popularity. *See* Tara Parker-Pope, *Web of Popularity, Achieved by Bullying*, N.Y. Times (Feb. 14, 2011) <tinyurl.com/4rcum2bz>. For those reasons, experts liken social isolation and bullying to an "epidemic." Joseph L. Wright, *Address at American Medical Association Educational Forum on Adolescent Health: Youth Bullying* (2002) <tinyurl.com/5dxbhp85>.

That epidemic assumes many shapes. As courts recognize, "the term bullying may be susceptible to different definitions." *Citizens for Quality Education San Diego* v. *Barrera*, 333 F. Supp. 3d 1003, 1035 (S.D. Cal. 2018). Bullying and social isolation often arise from "an imbalance of power or strength," a condition to which disabled students are particularly vulnerable. *Id.* And while "[i]ndirect, psychological bullying, in the form of exclusion and

isolation[,] is often less visible," it is "not less corrosive." *T.K. I*, 779 F. Supp. 2d at 298. Indeed, in our "interactive 'instant messaging' age," anxiety and isolation run rampant, producing "too-common traged[ies]." *Byrne* v. *Springfield School District*, Civ. No. 21-3199, 2021 WL 4847804, at *1 (E.D. Pa. Oct. 14, 2021). The interconnected nature of those tragedies—the "interplay of depression, anxiety, and bullying"—is "not new to our educators." *Byrne* v. *Springfield School District*, Civ. No. 21-3199, 2021 WL 4847804, at *1 (E.D. Pa. Oct. 14, 2021).

Nor are the harmful effects novel. Bullying and social isolation impair "the school performance, emotional well-being, mental health, and social development of school children throughout the United States." *T.K. I*, 779 F. Supp. 2d at 298. Victims suffer "lasting scars in the form of an inferior education, emotional damage, and decreased self-confidence." *Id.* at 293. And that damage lingers, with children "carry[ing] lasting emotional and psychological scars into adulthood." *Id.* at 305; *see also* Dan Olweus, *Bully at School: What We Know and What We Can Do* 68 (1993) (finding that childhood victims experience higher rates of depression and lower self-esteem as young adults).

Suicide is one such "tragic harm." *Lansberry*, 356 F. Supp. 3d at 502. Studies link bullying and social isolation to depression and suicidal ideation. *See Long* v. *Murray County School District & Gina Linder*, Civ. No. 10-15, 2012 WL 13071603, at *18 (N.D. Ga. Apr. 18, 2012). Indeed, frequent bullying

makes students more than four times more likely to attempt suicide. *See id.* (citing Jing Wang, et al., *School Bullying Among Adolescents in the United States: Physical, Verbal, Relation and Cyber*, Journal of Adolescent Health (2009)).

      2.     Children with disabilities are uniquely vulnerable to the foregoing harms. They are more likely to be bullied. *See* John Young, Ari Ne'eman & Sara Gelser, *Bullying and Students With Disabilities*, National Council on Disability (2012) <tinyurl.com/yss34urb>. The impact of their "humiliation and bullying" proves particularly acute. *See Doe by Next Friend of Doe* v. *Detroit Public School Community District*, Civ. No. 21-11136, 2022 WL 989331, at *7 (E.D. Mich. Mar. 31, 2022). They may also fail to complete "academic tasks or develop the social and behavioral skills that are an essential part of any education." *T.K. III*, 810 F.3d at 876. And that is all because children with disabilities often wrestle with feelings that they do not belong and "lack social awareness, which makes them more vulnerable." *T.K. I*, 779 F. Supp. 2d at 303. Such students thus become "marginalized from the mainstream peer group, lacking access to prosocial peers who provide role models of appropriate social skills, and also protection against bullying." *Id.* at 229. "Overall, students with disabilities are less popular, have fewer friends, and struggle more with loneliness and peer rejection, increasing the likelihood they will become the victim of bullying." *Id.*

A vicious feedback loop thus arises. Disabled students "are more likely to engage in antisocial behavior, have increased health problems, and struggle to adjust emotionally." *T.K. I*, 779 F. Supp. 2d at 304. They experience "sliding grades, absenteeism, poor academic achievement," loneliness, withdrawal, and behavioral issues. Gayle L. Macklem, *Bullying and Teasing: Social Power in Children's Groups* 68 (2003). In turn, they suffer isolation, anxiety, and bullying, deepening their psychological and social issues.

### C. Disabled Orthodox Jewish Students Are Particularly Vulnerable To Educational And Social Harms In Schools That Are Not Properly Equipped To Support Their Unique Needs

Local public schools and nonsectarian private schools are often ill-equipped to address the confluence of educational and social challenges that Orthodox Jewish students with disabilities experience when those students are placed—often for the first time in their lives—in a non-religious environment. Orthodox Jews adhere to traditional Jewish practices. They wear yarmulkes (skullcaps) and tzitzit (fringes). They observe Shabbat every week. They celebrate major holidays—including Rosh Hashanah, Yom Kippur, Sukkot, Passover, and Shavuot—that may preclude a child from attending school for up to three weeks of the year. *See Wagner* v. *Saint Joseph's/Candler Health System, Inc.*, Civ. No. 20-284, 2022 WL 905551, at *1 (S.D. Ga. Mar. 28, 2022), *abrogated by Groff* v. *DeJoy*, 143 S. Ct. 2279 (2023). They pray three times per day. *See Midrash Sephardi, Inc.* v. *Town of Surfside*, 366 F.3d 1214,

9

1221 (11th Cir. 2004). They maintain a strictly kosher diet, which requires eating only certain animals, refraining from mixing meat with dairy products, and avoiding non-kosher cutlery. *See Ashelman* v. *Wawrzaszek*, 111 F.3d 674, 675 (9th Cir. 1997). Many refrain from eating any food that is not certified as kosher, a restriction that would eliminate any food prepared in a school cafeteria. And they structure education around the daily study of Torah. *See Our Lady of Guadalupe School* v. *Morrissey-Berru*, 140 S. Ct. 2049, 2065 (2020) (noting that "[r]eligious education is a matter of central importance in Judaism").

To observe those traditions, Orthodox Jews rely heavily on communal infrastructure. "Because on the Jewish Sabbath and on some religious holidays driving motor vehicles is prohibited for Orthodox Jews, they tend to live near their community places of worship so that they may gather to pray within safe walking distance of their homes." *LeBlanc-Sternberg* v. *Fletcher*, 781 F. Supp. 261, 263-264 (S.D.N.Y. 1991). "The observation of many of these practices is dependent upon the location of other Orthodox Jews and kosher stores." *United States* v. *Village of Airmont*, 839 F. Supp. 1054, 1056 (S.D.N.Y. 1993). And education is no different: enrollment "in a dual curriculum Jewish school . . . is virtually mandatory." *Westchester Day School* v. *Village of Mamaroneck*, 417 F. Supp. 2d 477, 545 (S.D.N.Y. 2006), *aff'd*, 504 F.3d 338 (2d Cir. 2007).

When Orthodox Jewish students with disabilities are placed into educational settings ill-equipped to handle their religious needs, they are at substantial risk of not receiving a FAPE, for at least three reasons: (1) missed classes, (2) social isolation, and (3) bullying.

*First*, disabled Orthodox Jewish students experience a direct educational harm in the form of missed classes. Whereas Orthodox Jewish schools build their calendars around Jewish holidays, other schools do not. *See, e.g.*, *Westchester Day School* v. *Village of Mamaroneck*, 504 F.3d 338, 345 (2d Cir. 2007). The major Jewish holidays account for nearly three weeks of the year. And because some holidays fall in close succession, students miss long stretches of coursework and programming. As a result, observant Jewish students who attend non-Orthodox schools miss substantial learning time.

Navigating that challenge poses a tall task for any student. But for children with disabilities, the challenges created by such absences may be insurmountable. Students with social, mental, or behavioral issues are already more likely to struggle with their studies. *See* p. 8, *supra*. Add to the equation a slew of missed classes, and the burden may become impossible. Homework mounts. Modules pile up. And all the while, those children attempt to tread water, sometimes never managing to recover.

*Second*, when placed in a traditional public-school environment, Orthodox Jewish students are particularly vulnerable to social isolation. As children

11

with disabilities, they are already "more likely to be quiet, sensitive, and have low self-esteem" and to carry "feelings of rejection and loneliness." *T.K. I*, 779 F. Supp. 2d at 304-305. But as Orthodox Jews, they are even more predisposed to those challenges because of attendance issues and significant cultural differences. An extended absence disrupts the ability to succeed academically and make friends. It also compounds the alienation and unbelonging that religious students already experience. Wearing a yarmulke and tzitzit means dressing differently from everyone else. Maintaining a kosher diet means eating differently from everyone else. And keeping Shabbat means spending weekends differently from everyone else. Such cultural differences, when combined with disabilities, leave students disconnected, both academically and socially, and can lead to harassment and bullying.

*Third*, because Orthodox Jewish religious practices (including dress and strict dietary restrictions) are so visible, Orthodox Jewish students are readily identifiable as Jews. That makes them particularly susceptible to antisemitic harassment and bullying—a fast accelerating trend throughout the United States. *See* U.S. Department of Education, Office of Civil Rights, *Dear Colleague* (May 25, 2023) <tinyurl.com/mr2f8mpm>. In the last month alone, antisemitic incidents have spiked 388%, including in schools. *See* Faris Tanyos, *U.S. Sees Spike in Antisemitic Incidents Since Beginning of Israel-Hamas War, Anti-Defamation League Says*, CBS (Oct. 25, 2023) <tinyurl.

com/mp58jvfd>. Even before this past month, statistics from the Federal Bureau of Investigation confirmed that Jewish Americans are the victims of over 50% of all religiously motivated hate crimes. *See* Federal Bureau of Investigation, *FBI Releases Supplement to the 2021 Hate Crime Statistics* (April 4, 2023) <tinyurl.com/fbi-2021-stats>. And according to another recent study, over 25% of Jewish students reported being bullied within the last 30 days. *See* Sameer Hinduja, *Bullying Because of Religion: Our Latest Findings and Best Practices* (2019) <tinyurl.com/bullying-religion>.

Such bullying can make public schools unbearable even for Jewish children without disabilities. *See e.g.*, Sharon Otterman, *She Was Excited for a New School. Then the Anti-Semitic 'Jokes' Started*, N.Y. Times (Mar. 4, 2020) <tinyurl.com/nytimes-school>. Look no further than the month of October. Over the last several weeks, Jewish students across the country have faced a firestorm of antisemitic hatred, with classmates calling for the extermination of Jews, threatening to "slit" Jewish throats, and engaging in physical assaults. *See e.g.*, Elizabeth Wolfe & Artemis Moshtaghian, *Authorities Investigating Online Threats of Violence Against Jewish Students at Cornell University, School's President Says*, CNN (Oct. 30, 2023) <tinyurl.com/79xshx69>; Haley Brown & Jesse O'Neil, *NYC Public School Students Brandish Antisemitic Signs, Call for Israel to be Eradicated*, N.Y. Post (Oct. 25, 2023) <tinyurl.com/3ttaez2k>; Libby Emmons, *California High School*

*Students Stage Pro-Hamas Walkouts After Textbooks Instill Anti-Israel, Pro-Jihad Views*, PM (Oct. 21, 2023) <tinyurl.com/4njtftjn>; Matthew Impelli, *Fight Breaks Out at High School Over Israel, Hamas War*, Newsweek (Oct. 17, 2023) <tinyurl.com/nxrkczhc>. Such hostility terrorizes and endangers Jewish students, and would suffice to undermine the learning environment of any child, with or without disabilities. Subjecting students who *already* struggle both academically and socially—and who are among the most identifiably Jewish students in the country—to such an environment denies them a FAPE.

To be sure, a State has no general obligation to provide all Orthodox Jewish students with a free education in a religious school setting. But where the combination of religious or cultural differences and disabilities operates to deny a particular eligible student a FAPE in his current placement, the State has an obligation to ensure the student's placement in a school that *will* result in appropriate educational progress. Indeed, both the IDEA and California law recognize that some students will be able to receive a FAPE only in private schools. *See* 20 U.S.C. § 1412(a)(10)(B)(i); Cal. Educ. Code § 56365(a).

### D. Plaintiffs Have Alleged That They Were Denied A FAPE In Their Current Schools

Although plaintiffs need not establish that their inability to receive a FAPE in public school was related to their religion, *see* p. 3, *supra*, plaintiffs in this case have adequately alleged that the failure to address their

educational, social, and religious needs has resulted in the denial of a FAPE. N.P.—a 15-year-old with autism and a gene mutation-related intellectual disability—experiences speech delays, behavioral issues, and learning disabilities. *See* ER-263. N.P. is also an Orthodox Jew who observes the Jewish dietary laws (kosher) and the Jewish holidays. *See id.* And in a non-Orthodox Jewish school environment, the confluence of those aspects of his identity prevent N.P. from receiving an education "likely to produce progress, not regression." *T.K. III*, 810 F.3d at 875. His public school has sent him home early because of "inadequate staffing" and has failed to provide necessary therapeutic services, slowing his speech and academic progress. *See* ER-265-266. His observance of Jewish holidays forces him to miss additional stretches of school. *See* ER-266. His principal has challenged those absences, insisting that N.P. violate his family's observances of the Sukkot holiday. *See id.* And the school continues to provide him with non-kosher meals, ignoring the pleas of his parents. *See* ER-267. As a result, N.P.'s parents "do not believe N.P. is receiving a FAPE in public school." ER-265.

K.T. is a 15-year-old with autism and pronounced cognitive deficiencies. *See* ER-260. He is also an Orthodox Jew. Forced to attend public school, K.T. performs below grade level academically. *See* ER-42. He requires a full-time aide, speech and occupational therapists, adaptive physical education, a resource specialist for English and math, and a private reading tutor. *See* ER-

261. He misses classes in observance of the Jewish holidays, impairing his academic and therapeutic development. *See* ER-262. He has been given non-kosher food again and again, despite his parents' reminders to the school. *See id.* And he has been made to feel as if he is not "fully include[d]" within his own school. *Id.* As a result, his family "do[es] not believe K.T. is receiving a FAPE in public school." *Id.*

The harms alleged above suffice to describe an education unlikely to produce progress. Disabled children with significant learning, behavioral, and developmental challenges cannot afford to incur additional absences. They suffer emotionally and psychologically when they are pressured into violating their deeply held beliefs and when they are ostracized or bullied. Disabled religious children cannot be expected to succeed in environments that combine and exacerbate those harmful effects. Stuck in public schools that cannot accommodate the nexus of their various needs, N.P. and K.T. cannot hope to succeed—educationally, socially, or emotionally.

The district court thus erred when it held that "the [c]omplaint does not allege that either the Taxons or the Pereteses have been denied a FAPE because of their religion." ER-50. The truth is the opposite. The complaint expressly alleges that both N.P. and K.T. were denied an effective FAPE, *see* ER-262, 265, and that their schools' inability to address their religious needs played a significant role in that failure, *see* ER-261-266. And in the absence of

16

the "nonsectarian" requirement, both the Taxons and Pereteses would have had the opportunity to advocate for their children to receive a FAPE through a private education capable of meeting their distinct needs.

## II. CALIFORNIA'S 'NONSECTARIAN' REQUIREMENT VIOLATES THE FREE EXERCISE CLAUSE BY REQUIRING FAMILIES TO SUBJECT THEIR CHILDREN TO RELIGIOUS HARMS AS A CONDITION FOR RECEIVING A FAPE

The First Amendment forbids not merely "outright prohibitions" on the free exercise of religion, but also "indirect coercion or penalties." *Carson* v. *Makin*, 142 S. Ct. 1987, 1996 (2022) (citing *Lyng* v. *Northwest Indian Cemetery Protective Association*, 485 U.S. 439, 450 (1988)). As recent Supreme Court decisions make clear, that principle applies with full force to the conditioning of educational benefits on the recipient's abandoning his religious identity or compromising his religious practice. *See id.*; *Espinoza* v. *Montana Department of Revenue*, 140 S. Ct. 2246, 2255–2256 (2020); *Trinity Lutheran Church of Columbia, Inc.* v. *Comer*, 582 U.S. 449, 462 (2017).

California's nonsectarian requirement is unconstitutional. By failing to provide the plaintiff students with a FAPE in local public schools, the State assumed an obligation to place those children in an appropriate private school. *See* Cal. Educ. Code § 56365(a). But by categorically excluding religious private schools based solely on their religious affiliation, California artificially and discriminatorily narrows the field of available placements. That is a problem

not only because it unfairly privileges secular private schools and student interests over religious ones, but also because it makes religious students' access to a FAPE contingent on forfeiture of religious rights. As the plaintiff parents have alleged, they "believe that they are obligated to send their children to Orthodox Jewish schools to maintain and strengthen their family's Jewish religious beliefs, culture, and heritage." ER-258, 259, 264. The very act of sending their children to a secular private school thus constitutes a religious concession—a concession that California does not even attempt to justify demanding.

Nor is that the only concession California demands. Both the Taxon and Perets families allege that they have been forced repeatedly to remind teachers at their children's current school that their children cannot eat non-kosher food. *See* ER-267. Those dietary laws are indisputably a central pillar of Orthodox Jewish practice. *See Markel* v. *Union of Orthodox Jewish Congregations of America*, Civ. No. 19-10704, 2023 WL 1093676, at *4 (C.D. Cal. Jan. 3, 2023). And the challenge of keeping a kosher diet in a secular environment is particularly daunting for students with disabilities. Such children may lack the confidence or ability to advocate for themselves—or even the capacity to understand the dietary laws. *See* ER-260. Or they may simply fear the glare of attention that would accompany telling their teachers that they cannot eat particular foods, desperate to avoid further alienation or harassment. Yet

plaintiffs' current schools continue to ignore their requests, even attempting to convince students to adopt more flexible definitions of kosher. *See id.*

There is no reason to think that secular private schools would handle those requests any better. By forcing Orthodox Jewish students inadequately served by public schools into secular private schools, California's policy puts those students at substantial risk of spiritual, educational, and emotional harm—and does so without any justification.

In sum, even if the district court were correct that California's nonsectarian requirement "is not what prevents the Taxons and the Peretses from receiving a FAPE for their children," ER-53, that requirement unquestionably conditions the availability of a FAPE on the abandonment of religious obligations. The First Amendment does not permit that, and the district court was incorrect to hold that it does.

## CONCLUSION

The judgment of the district court should be reversed.

Respectfully submitted,

/s/ Kannon K. Shanmugam

KANNON K. SHANMUGAM
BRIAN M. LIPSHUTZ
YISHAI SCHWARTZ
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *2001 K Street, N.W.*
  *Washington, DC 20006*
  *(202) 223-7300*
  *kshanmugam@paulweiss.com*

NOVEMBER 1, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 23-55714

I am the attorney or self-represented party.

**This brief contains** 4,303 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Kannon K. Shanmugam **Date** 11/1/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*