No. 23-55714

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHAYA LOFFMAN, *et al.*,

*Plaintiffs-Appellants*,

v.

CALIFORNIA DEPARTMENT OF EDUCATION, *et al.*,

*Defendants-Appellees*,

On Appeal from the United States District Court
for the Central District of California

2:23-CV-01832-JLS-MRW
The Honorable Josephine L. Staton

**BRIEF FOR AMICI CURIAE IDAHO, ALABAMA, ARKANSAS, FLORIDA, GEORGIA, INDIANA, IOWA, KANSAS, KENTUCKY, LOUISIANA, MISSOURI, MONTANA, NEBRASKA, NEW HAMPSHIRE, NORTH DAKOTA, OHIO, SOUTH CAROLINA, SOUTH DAKOTA, TEXAS, UTAH, VIRGINIA, AND WEST VIRGINIA SUPPORTING PLAINTIFFS-APPELLANTS AND REVERSAL**

RAÚL R. LABRADOR
  *Attorney General*

Idaho Office of the
Attorney General
700 W. Jefferson St.
Suite 210
Boise, ID 83720
(208) 334-2400
josh.turner@ag.idaho.gov
jack.corkery@ag.idaho.gov

JOSHUA N. TURNER
  *Acting Solicitor General*

SEAN M. CORKERY
  *Assistant Solicitor General*

LILI PIRC
  *Extern in the Office of the Attorney General*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTERESTS OF *AMICI* STATES .......................................................................................1

SUMMARY OF THE ARGUMENT ....................................................................................2

ARGUMENT ........................................................................................................................4

   I. California's IDEA Regime Is Neither Neutral Nor Generally Applicable And Is Thus Subject To Strict Scrutiny ..............................................................4

      A. The policy is not neutral because it determines who receives generally available public benefits solely based on religious status .................4

      B. The policy is subject to strict scrutiny under *Fulton* because, by using a system of discretionary individualized exceptions, it is not generally applicable ......................................................................................7

      C. California's IDEA regime cannot survive strict scrutiny because California lacks a compelling reason to discriminate based on religion ..........8

   II. California's Regulatory Scheme Disregards Free Exercise Rights, To The Detriment Of Citizens In The Ninth Circuit And Beyond ...................................10

CONCLUSION ...................................................................................................................12

# TABLE OF AUTHORITIES

**CASES**

*Carson v. Makin*,
  142 S. Ct. 1987 (2022) ............................................................................... *passim*

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993) .............................................................................................. 9

*Espinoza v. Mont. Dep't of Revenue*,
  140 S. Ct. 2246 (2020) ............................................................................... *passim*

*Everson v. Bd. of Educ. of Ewing Twp.*,
  330 U.S. 1 (1947) ............................................................................................ 1, 7

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
  82 F.4th 664 (9th Cir. 2023) ............................................................................... 7

*Fulton v. City of Phila.*,
  141 S. Ct. 1868 (2021) ............................................................................... 3, 4, 7, 8

*Pierce v. Soc.'y of Sisters of the Holy Names of Jesus and Mary*,
  268 U.S. 510 (1925) ........................................................................................... 12

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
  137 S. Ct. 2012 (2017) ............................................................................ 1, 2, 6, 9

*Wisconsin v. Yoder*
  406 U.S. 205 (1972) ........................................................................................... 12

**STATUES**

Cal. Educ. Code § 56101 ........................................................................................ 8

Cal. Educ. Code § 56365 ..................................................................................... 2, 8

Cal. Educ. Code § 56366 ........................................................................................ 2

Cal. Educ. Code § 56366.1 ................................................................................... 11

Cal. Educ. Code § 56366.2 ..................................................................................... 8

**REGULATIONS**

Cal. Code Regs. tit. 5, § 3001 ...................................................................................... 2

**OTHER AUTHORITIES**

*2020 Census Population of Guam: Census Designated Place (CDP), Table 2*,
   U.S. Census Bureau ................................................................................................ 10

*2020 Census Population of the Commonwealth of the Northern Mariana Islands: Municipality and Village, Table 2*, U.S. Census Bureau ................................................................ 10

*Resident Population for the 50 States, the District of Columbia, and Puerto Rico: 2020 Census, Table 2*, U.S. Census Bureau ................................................................................. 10

**RULES**

Federal Rule of Appellate Procedure 29 ...................................................................... 2

**INTERESTS OF *AMICI* STATES**

The First Amendment to the U.S. Constitution protects every citizen's right to the free exercise of religion without discrimination by government officials. It is an unyielding protection that won't be circumvented by a government's creative characterizations. When it comes to the public funding of education, the law is clear: no matter how a government describes it, generally available funding cannot be withheld from schools just because they are religious. California has done that here, and the States of Idaho, Alabama, Arkansas, Florida, Georgia, Indiana, Iowa, Kansas, Kentucky, Louisiana, Missouri, Montana, Nebraska, New Hampshire, North Dakota, Ohio, South Carolina, South Dakota, Texas, Utah, Virginia, and West Virginia (*Amici* States) stand against its unconstitutional treatment of religious observers. Nor are *Amici* States alone. The U.S. Supreme Court has repeatedly recognized that the very type of religious discrimination California is engaged in here violates the Free Exercise Clause. *See Carson v. Makin*, 142 S. Ct. 1987, 1996 (2022); *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2260 (2020); *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2023 (2017); *Everson v. Bd. of Educ. of Ewing Twp.*, 330 U.S. 1, 16 (1947).

California's religious discrimination arises out of its implementation of the Individuals with Disabilities Education Act. California, like all states, receives federal funds pursuant to the IDEA to provide for the educational needs of disabled children. Many disabled children receive the services required by the IDEA in a public school, but not all do. The IDEA permits states to fund a private educational offering for

1

disabled students when a public one is either unavailable or insufficient. And California regularly does so. But it imposes a "nonsectarian" requirement and refuses to provide funding to any religious school. *See* Cal. Educ. Code §§ 56365, 56366. That categorical exclusion violates the First Amendment. And if not corrected, it provides a precedent and a blueprint for state and federal governments to discriminate against the religious.

Accordingly, *Amici* States file this brief in support of Plaintiffs-Appellants under Federal Rule of Appellate Procedure 29(a)(2).

## SUMMARY OF THE ARGUMENT

California has made public funding available for "nonpublic schools" to educate disabled children. Cal. Educ. Code § 56365. But in order to receive the public funding, these "nonpublic schools" may not be "owned, operated, controlled by, or formally affiliated with a religious group or sect, whatever might be the actual character of the education program or the primary purpose of the facility." Cal. Code Regs. tit. 5, § 3001(p). In other words, religious schools in California are denied a public benefit simply because of their religious character.

Three times in the last six years, the Supreme Court has said the Free Exercise Clause does not permit materially similar unequal treatment. *See Carson*, 142 S. Ct. at 1996; *Espinoza*, 140 S. Ct. at 2260; *Trinity Lutheran*, 137 S. Ct. at 2023. Those precedents have "repeatedly confirmed" the same "straightforward rule" that applies here: "When otherwise eligible recipients are disqualified from a public benefit solely because of their religious character," courts "must apply strict scrutiny." *Espinoza*, 140 S. Ct. at 2260

2

(citation omitted).

The district court tried to distinguish these cases by "defin[ing] the benefit at issue here" as something other than "a program for subsidizing private education." ER-47. But that is no different than the definitional recasting the Supreme Court rejected in *Carson*, *Espinoza*, and *Trinity Lutheran*. The district court's refusal to call California's educational funding for disabled students in non-public schools a "subsidy" for private education is no way around the substantive protections of the First Amendment. It is just evidence that the court "manipulated" the "definition of a particular program" and "reduced" the First Amendment "to a simple semantic exercise." *Carson*, 142 S. Ct. at 1999.

The Free Exercise Clause is more substantive than California recognizes. Its protections cannot be avoided with "magic words" or clever characterizations—what matters is that California denies religious schools what it makes available to nonsectarian schools. *See Carson*, 142 S. Ct. at 2000. Because California's policy determines who receives generally available benefits based on a school's religious status, the policy is subject to the "strictest scrutiny." *Id.* at 1997; *see also Trinity Lutheran*, 582 U.S. at 460 (holding that the Free Exercise Clause forbids discrimination on the basis of religious status). Additionally, because state officials have discretion to waive the nonsectarian requirement to specific private schools, California's discriminatory regime is not generally applicable for that independent reason. *See Fulton v. City of Phila.*, 141 S. Ct. 1868, 1878 (2021).

3

## ARGUMENT

I. **California's IDEA Regime Is Neither Neutral Nor Generally Applicable And Is Thus Subject To Strict Scrutiny.**

A government violates the Free Exercise Clause when it "disqualif[ies] some private schools from funding solely because they are religious." *Carson*, 142 S. Ct. at 1997 (cleaned up). Likewise, laws incidentally burdening religion will be subject to strict scrutiny where the government has discretion to exempt certain parties that would otherwise be subject to the requirement. *Fulton*, 141 S. Ct. at 1878. California's policy fails on both grounds and is therefore subject to strict scrutiny.

**A. The policy is not neutral because it determines who receives generally available public benefits solely based on religious status.**

This should be a straightforward case under *Carson*, *Espinoza*, and *Trinity Lutheran*. All acknowledge that California makes public funds generally available for the private education of disabled children. And all acknowledge that California bars those funds from being used to educate disabled children at religious schools for no other reason than that the school is religious. That is the definition of the "indirect coercion" and "penalties on the free exercise of religion" prohibited by the First Amendment. *Carson*, 142 S. Ct. at 1996.

California cannot circumvent the First Amendment by hiding behind the complexity of the IDEA and its own implementing regulations or by claiming that the benefit at issue isn't really an education subsidy. The IDEA regime California's Department of Education oversees involves complexity, to be sure, but the simple fact

4

is California has chosen to fund the private education of disabled children in certain circumstances. And that decision to fund private education makes this case indistinguishable from *Carson* and *Espinoza*.

In *Carson*, Maine provided tuition assistance for parents who did not have access to a public school. *Carson*, 142 S. Ct. at 1993. But Maine limited the tuition assistance to "nonsectarian" private schools. *Id.* The Court held that Maine's "nonsectarian" requirement for otherwise generally available tuition assistance payments violated the Free Exercise Clause. *Id.* at 2002. Although Maine could have provided a strictly secular education in public schools, its decision to fund private education prevented it from directing funds to private schools based on those schools' religious status or activities. *Id.* at 2000. As the Court explained, "a 'State need not subsidize private education. But once a State decides to do so, it cannot disqualify some private schools solely because they are religious.'" *Id.* (quoting *Espinoza*, 140 S. Ct. at 2261). The Court rejected Maine's argument that tuition assistance was only for the equivalent of a "public" education—what ultimately mattered is that funds were generally available to private schools, and private schools cannot provide a "public" education. *Id.* at 1999. Thus, Maine's administration of the tuition assistance payments violated "the prohibition on denying the benefit based on a recipient's religious exercise." *Id.* at 2000.

Like Maine, California has chosen to provide a component of education to children whose local public schools are unable to provide the necessary education. ER-6, 13. And like Maine's program, California funds private schools that remain private:

5

receiving the IDEA funds does not remove the private schools' authority over its many aspects of its curriculum, the student body's composition, or the cost of the private education. ER-14-15 (listing the requirements for a private school to qualify for state funding under California's IDEA framework, including that the core curriculum merely needs to be "aligned" with state standards).

The district court attempted to distinguish *Carson* by characterizing the benefit at issue as something other than an education subsidy. ER-47. It got there by focusing on the local school district's role in deciding on a private alternative to public schooling. ER-47-49. But the fact California's regulations prevent local school districts—and not parents directly—from considering private religious schools does not cure the constitutional violation. The Missouri Department of Natural Resources was the entity with its hands tied by Missouri's nonsectarian requirement in *Trinity Lutheran*, and that did not impact the free exercise issue. *See Trinity Lutheran*, 137 S. Ct. at 2017.

The district court also thought that a parent's ability to seek equitable relief for the costs of a religious education somehow inoculates any constitutional problem. ER-49-50. That is incorrect for many reasons, but it is sufficient for free exercise purposes that parents wishing to receive public funding for their disabled children's education face a far greater burden—not to mention a wholly uncertain outcome—if they decide to send their children to a religious school. ER-19-22, 50-51. Moreover, as the district court elsewhere recognized, "parental placement" and "unilateral placement" are different from the "nonpublic school placement" at issue here. ER-43-45. The bottom

6

line is that California categorically excludes religious schools from being considered as a "nonpublic school placement" based solely on their religious character. That triggers strict scrutiny.

The consequences of California's position and district court's reasoning extend beyond this case. For example, those rationales would allow any government to circumvent the Free Exercise Clause and withhold generally available public benefits from religious institutions as long as the government characterizes the limitation as "simply a limitation on the types of entities with which the State may contract." *See* ER-50. But that isn't an excuse, it's an admission. It is hard to imagine a more succinct way to describe religious discrimination. The rule has long been that a government "cannot exclude [religious entities] because of their faith, or lack of it, from receiving the benefits of public welfare legislation." *Everson*, 330 U.S. at 16. Because California funds the education of disabled children in "nonpublic schools," it cannot exclude religious institutions from participation on account of their religious character.

**B. The policy is subject to strict scrutiny under *Fulton* because, by using a system of discretionary individualized exceptions, it is not generally applicable.**

A regulation is also subject to strict scrutiny when the government has the discretion to exempt certain parties that would otherwise be subject to the requirement. *Fulton*, 141 S. Ct. at 1878; *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 687-688 (9th Cir. 2023) ("[T]he mere existence of a discretionary mechanism to grant exemptions can be sufficient to render a policy not generally

7

applicable."). In *Fulton*, the City of Philadelphia ended its contract with a religious foster care agency that refused to certify same-sex couples in violation of a non-discrimination provision. *Fulton*, 141 S. Ct. at 1874. At the same time, the City incorporated a system of individual exemptions "made . . . at the 'sole discretion' of the Commissioner," which allowed the Commissioner to exempt parties from the non-discrimination requirements. *Id.* at 1878. Because of that discretion, the regulation was subject to strict scrutiny. *Id.* Whether the City had ever actually waived the discrimination requirement was immaterial. *Id.* at 1879.

Here, just like in *Fulton*, California allows its officials discretion to waive the nonsectarian requirement. Cal. Educ. Code §§ 56101(a), 56366.2(b). That discretion defeats the nonsectarian requirement's general applicability and is alone enough to subject the policy to strict scrutiny.

The reason such discretion triggers strict scrutiny is because it can be exercised to harm citizens "who take their religion seriously" and "those whose religious beliefs and practices are least popular." *See Espinoza*, 140 S. Ct. at 2277. Allowing government officials discretion to refuse exemptions for certain religious institutions inevitably "invites" them to weigh the negative attributes they subjectively attach to each religion. *See Fulton*, 141 S. Ct. at 1879; *see also* Cal. Educ. Code § 56365.

### C. California's IDEA regime cannot survive strict scrutiny because California lacks a compelling reason to discriminate based on religion.

To survive strict scrutiny, the policy "must advance 'interests of the highest

order' and must be narrowly tailored in pursuit of those interests." *Carson*, 142 S. Ct. at 1997 (quoting *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 546 (1993)). California's nonsectarian requirement fails that test.

The district court recognized only one interest in support of California's religious discrimination: "simply" to limit the types of entities with which California may contract to provide a public education. ER-50. But California's interest in contracting with only secular entities fails strict scrutiny. The Supreme Court has already held that Missouri, Montana, and Maine did not have a compelling interest in withholding generally available public benefits from religious entities. *Carson*, 142 S. Ct. at 1998; *Espinoza*, 140 S. Ct. at 2260; *Trinity Lutheran*, 137 S. Ct. at 2024.

California "pays tuition for certain students at private schools—so long as the schools are not religious. That is discrimination against religion." *See Carson*, 142 S. Ct. at 1998. And California's "antiestablishment interest does not justify enactments that exclude some members of the community from an otherwise generally available public benefit because of their religious exercise." *Id.* Any "interest . . . in achieving greater separation of church and State than is already ensured under the Establishment Clause . . . is limited by the Free Exercise Clause." *Id.* As *Carson* and *Espinoza* make clear, "the Establishment Clause is not offended when religious observers and organizations benefit from neutral government programs." *Espinoza*, 140 S. Ct. at 2254; *see also Carson*, 142 S. Ct. at 1997.

A government may not exclude some people because of their religious exercise

9

from an otherwise generally available public benefit without a compelling reason. California does not have a compelling reason here, so its discriminatory policy is unconstitutional.

## II. California's Regulatory Scheme Disregards Free Exercise Rights, To The Detriment Of Citizens In The Ninth Circuit And Beyond.

This case's impact will not be felt by Plaintiffs alone. If allowed to stand, California's unconstitutional regulatory scheme provides a precedent and a blueprint for eroding the free exercise rights of citizens beyond California.

The Supreme Court's holdings in *Carson*, *Espinoza*, and *Trinity Lutheran* are important guides on First Amendment questions. The district court's analysis muddles those clear holdings, however. This Court should affirm the "straightforward" rule from those decisions and remove the confusion—and error—introduced by the district court. *Amici* States appreciate the clarity *Carson*, *Espinoza*, and *Trinity Lutheran* offer and are concerned with the district court's wayward analysis.

This Court's resolution of Plaintiffs' First Amendment claims will also impact the free exercise rights of each person in the Ninth Circuit, many of whom reside in *Amici* States. Over 67 million people, one-fifth of the country's population spread across nine states and two territories, live in the Ninth Circuit.[1] Allowing the district

---

[1] *Resident Population for the 50 States, the District of Columbia, and Puerto Rico: 2020 Census, Table 2*, U.S. Census Bureau, https://tinyurl.com/3z3w79p7; *2020 Census Population of the Commonwealth of the Northern Mariana Islands: Municipality and Village, Table 2*, U.S. Census Bureau, https://tinyurl.com/mf9b23ae; *2020 Census Population of Guam: Census Designated Place (CDP), Table 2*, U.S. Census Bureau, https://tinyurl.com/bdb5u2zy.

court's decision to stand damages the free exercise rights of each of them.

*Amici* States also reject California's purported state interest in denying public funding to religious schools. California's regulatory scheme caricatures a state's valid interest in ensuring the education of every one of its citizens—an interest shared by *Amici* States. But when California discriminates against religious practitioners and institutions in furtherance of a purported educational interest, it distorts states' legitimate educational interests. States do not need to fund private education, but when they do in the name of providing for the educational needs of their citizens, they must do so without discriminating against religious observers. *Carson*, 142 S. Ct. at 2000 (quoting *Espinoza*, 140 S. Ct. at 2261).

Another concerning aspect of California's regulations is that they allow the State to discriminate against out-of-state religious schools, some that may be situated in *Amici* States. Cal. Ed. Code § 56366.1(n). *Amici* States stand against California's constitutional violations generally, and here, where California has the ability to export its discrimination against non-California schools, *Amici* States' interest is squarely implicated.

Last, California's position undermines fundamental parental rights in steering the education of their children. As California and the district court see it, once parents "accept the State's offer of [IDEA educational assistance]," then they "give up [their] choice of private school." ER-49. Although California may undoubtedly exercise significant control over school curricula, the Supreme Court formally recognized that

11

"the child is not the mere creature of the state" a century ago. *Pierce v. Soc.'y of Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510, 535 (1925). The Court has built on this principle in the decades since. In *Wisconsin v. Yoder*, the Court noted that "the values of parental direction" hold a "high place in our society" and that such interests are "traditional." 406 U.S. 205, 213-14 (1972). Similarly, the Court confirmed in *Espinoza* and *Carson* that a government's ability to structure its school systems does not give it the prerogative to cut parents out of the educational outcomes of their children. And for parents of disabled children, few educational decisions are more impactful—and more in need of parental input—than where that child is educated. Religious parents should not have less of a say in where their children receive the full benefits of a generally available public program just because they are religious.

## CONCLUSION

For the reasons stated, this Court should reverse the decision below.

Respectfully Submitted,

RAÚL R. LABRADOR
*Attorney General*

Date: November 1, 2023

*/s/ Joshua N. Turner*
JOSHUA N. TURNER
*Acting Solicitor General*
Idaho Attorney General's Office
Statehouse, Room 210
Boise, ID 83720

12

**ADDITIONAL STATE SIGNATORIES**

STEVE MARSHALL
Attorney General
*State of Alabama*

TIM GRIFFIN
Attorney General
*State of Arkansas*

ASHLEY MOODY
Attorney General
*State of Florida*

CHRISTOPHER M. CARR
Attorney General
*State of Georgia*

THEODORE E. ROKITA
Attorney General
*State of Indiana*

BRENNA BIRD
Attorney General
*State of Iowa*

KRIS W. KOBACH
Attorney General
*State of Kansas*

DANIEL CAMERON
Attorney General
*Commonwealth of Kentucky*

JEFF LANDRY
Attorney General
*State of Louisiana*

ANDREW BAILEY
Attorney General
*State of Missouri*

AUSTIN KNUDSEN
Attorney General
*State of Montana*

MICHAEL T. HILGERS
Attorney General
*State of Nebraska*

JOHN M. FORMELLA
Attorney General
*State of New Hampshire*

DREW H. WRIGLEY
Attorney General
*State of North Dakota*

DAVE YOST
Attorney General
*State of Ohio*

ALAN WILSON
Attorney General
*State of South Carolina*

MARTY JACKLEY
Attorney General
*State of South Dakota*

KEN PAXTON
Attorney General
*State of Texas*

SEAN REYES
Attorney General
*State of Utah*

JASON S. MIYARES
Attorney General
*Commonwealth of Virginia*

PATRICK MORRISEY
Attorney General
*State of West Virginia*

**CERTIFICATE OF COMPLIANCE FOR BRIEFS**

9th Circuit Case No.:        23-55714

I am the attorney representing *Amici* State of Idaho et. al..

**This brief contains 2,959 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief is an amicus brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

Date: November 1, 2023             /s/ *Joshua N. Turner*
                                   JOSHUA N. TURNER

14

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Joshua N. Turner*
JOSHUA N. TURNER
