**Case No. 23-55714**

## UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

---

CHAYA LOFFMAN; et al.,

Plaintiffs - Appellants,
v.
CALIFORNIA DEPARTMENT OF EDUCATION; et al.,

Defendants - Appellees.

---

## APPELLEES LOS ANGELES UNIFIED SCHOOL DISTRICT AND ANTHONY AGUILAR'S ANSWERING BRIEF

---

Appeal from a Decision of the United States District Court for the Central District of California, Case No: 2:23-cv-01832-JLS-MRW
Honorable Josephine L. Staton, United States District Judge

---

Sue Ann Salmon Evans, Esq. (SB#151562)
sevans@DWKesq.com
William G. Ash, Esq. (SB#324122)
wash@DWKesq.com
DANNIS WOLIVER KELLEY
444 W. Ocean Blvd., Suite 1750,
Long Beach, CA 90802
PH: 562.366.8500
FAX: 562.366.8505
Attorneys for Defendants – Appellees
LOS ANGELES UNIFIED SCHOOL DISTRICT and
ANTHONY AGUILAR

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ............................................................................1

TABLE OF AUTHORITIES ....................................................................3

I. INTRODUCTION ..........................................................................7

II. STATEMENT OF JURISDICTION ...............................................8

III. STATEMENT OF ISSUES ............................................................8

IV. STATEMENT OF THE CASE .......................................................9

    A. The IDEA ............................................................................9

        1. Private School Placement ........................................10

        2. LEA Obligations When Providing FAPE .................13

    B. California's Implementation of the IDEA ...........................14

    C. Student Plaintiff's Claims ..................................................18

        1. The Loffmans ...........................................................19

        2. The Taxons ..............................................................19

        3. The Perets ................................................................20

    D. School Plaintiffs' Claims ...................................................20

    E. Procedural History ..............................................................21

    F. Ruling for Review ...............................................................22

V. SUMMARY OF THE ARGUMENT .............................................23

VI. ARGUMENT ................................................................................24

    A. Standard of Review ............................................................24

        1. General Standards ....................................................24

        2.     Motion to Dismiss per Rule 12(b)(6) for Failure to State a Claim ............................................................................25

   B.    Appellants' Claims Were Rightly Found to Be Prohibited By Eleventh Amendment Sovereign Immunity ...........................26

   C.    Appellants' Claims Are Necessarily Limited By Article III Standing ...........................................................................29

        1.     The District Court Correctly Rejected Appellants' Claims Related to Standing, Except As to the Perets and Taxons ........29

        2.     Waiver of the Nonsectarian Requirement .................................32

   D.    Appellants Free Exercise Claims Fail Where No Benefit Has Been Denied In LAUSD's Provision of FAPE ...................35

   E.    Impacts to LEAs of Requested Relief ...................................42

VII.   CONCLUSION ...............................................................44

Certificate of Compliance…………………………………………….. 45

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................26

*Balistreri v. Pac. Police Dep't*,
  901 F.2d 696 (9th Cir. 1988) ................................................25

*Belanger v. Madera Unif. Sch. Dist.*,
  963 F.2d 248 (9th Cir. 1992) ................................................27

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................25

*Bowen v. Roy*,
  476 U.S. 693 (1986)................................................................43

*Cahill v. Liberty Mutual Ins. Co.*,
  80 F.3d 336 (9th Cir. 1996) ..................................................26

*Capistrano Unified Sch. Dist. v. S.W.*,
  21 F.4th 1125 (9th Cir. 2021) ........................................10, 12

*Carson v. Makin*,
  142 S. Ct. 1987 (2022)..........................................37, 39, 40, 41, 43

*City of Los Angeles v. U.S. Department of Commerce*,
  307 F.3d 859 (9th Cir. 2002) ................................................25

*Clegg v. Cult Awareness Network*,
  18 F.3d 752 (9th Cir. 1994) ..................................................26

*Doug C. v. Haw. Dep't of Educ.*,
  720 F.3d 1038 (2013)..............................................................10

*Edelman v. Jordan*,
  415 U.S. 651 (1974)................................................................28

*Espinoza v. Montana Department of Revenue*,
  140 S. Ct. 2246 (2020)......................................................37, 41

*Los Angeles Cnty. Off. of Educ. v. C.M.*,
    2011 WL 1584314 (C.D. Cal. Apr. 22, 2011), *aff'd*, 550 F. App'x
    387 (9th Cir. 2013) ............................................................................ 14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .......................................................................... 29

*M.S. v. Brown*,
    902 F.3d 1076 (9th Cir. 2018) .......................................................... 33

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
    15 F.4th 885 (9th Cir. 2021) ............................................................ 25

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ............................................................ 25

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of
    Jacksonville*,
    508 U.S. 656 (1993) .................................................................... 30, 31

*Parke v. Raley*,
    506 U.S. 20 (1992) ............................................................................ 24

*Pennhurst State School and Hospital v. Halderman*,
    465 U.S. 89 (1984) ............................................................................ 28

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006) .............................................................................. 25

*Sabra v. Maricopa County Community College Dist.*,
    44 F.4th 867 (9th Cir. 2022) ....................................................... 27, 28

*Sato v. Orange Cty. Dep't of Educ.*,
    861 F.3d 923 (9th Cir. 2017) ............................................................ 27

*Simon v. Eastern Ky. Welfare Rights Organization*,
    426 U.S. 26 (1976) ...................................................................... 30, 34

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ............................................................ 26

*Trinity Lutheran Church of Colombia, Inc. v. Comer*,
    582 U.S. 449 (2017) .................................................................... 37, 41

*Van Buskirk v. Cable News Network, Inc.*,
  284 F.3d 977 (9th Cir. 2002) ................................................................25

*Wesley-Willis v. Cajon Valley Union Sch. Dist.*,
  No. 17CV1662-WQH-WVG, 2018 WL 3752833 (S.D. Cal. Aug.
  8, 2018) ....................................................................................................27

*Will v. Michigan Dep't of State Police*,
  491 U.S. 58 (1989) ...................................................................................27

**Constitutional Provisions**

U.S. Const. amend. XI ...................................................... 7, 8, 9, 23, 26, 27, 28, 35

**Federal Statutes**

20 U.S.C..§ 1412(a)(10)(C)(i) ....................................................................38

20 U.S.C. § 1401(9) ....................................................................................13

20 U.S.C. § 1412(a)(1)(A) ..........................................................................10

20 U.S.C. § 1412(a)(IV)(5)(A) ...................................................................13

20 U.S.C. § 1412(a)(10) ..............................................................................11

20 U.S.C. § 1412(a)(10)(vi) ..................................................................11, 38

20 U.S.C. § 1412(a)(10)(B) .............................................................10, 11, 40

20 U.S.C. § 1412(a)(10)(B)(ii) ...............................................................12, 14

20 U.S.C. § 1412(a)(10)(C) .........................................................................12

20 U.S.C. § 1412(a)(10)(C)(ii) ....................................................................38

**State Statutes**

Cal. Educ. Code § 56034 .............................................................................13

Cal. Educ. Code § 56101 .............................................................................34

Cal. Educ. Code § 56101(a) ...................................................................17, 33

Cal. Educ. Code § 56361 .............................................................................13

Cal. Educ. Code § 56365 ...............................................................21, 39

Cal. Educ. Code § 56365(a) ..........................................................13, 15

Cal. Educ. Code § 56366 ...................................................................16

Cal. Educ. Code § 56366 ...............................................................21, 39

Cal. Educ. Code § 56366(a)(2)(B) ......................................................41

Cal. Educ. Code § 56366(a)(8) ...........................................................16

Cal. Educ. Code § 56366(d) ...............................................................16

Cal. Educ. Code § 56366.1 .................................................................17

Cal. Educ. Code §§ 56366.1(a)(1) .......................................................16

Cal. Educ. Code §§ 56366.1(a)(3) .......................................................16

Cal. Educ. Code §§ 56366.1(a)(5) .......................................................16

Cal. Educ. Code § 56366.2 .............................................................17, 18

Cal. Educ. Code § 56505.2 .............................................................16, 39

**State Statutes**

Cal. Code Regs. title 5, § 3001(p)........................................................15

Cal. Code Regs. title 5, § 3060(d)........................................................16

Cal. Code Regs. title 5, § 3070 ...........................................................40

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................9, 23, 24, 25

**Federal Regulations**

34 C.F.R. § 300.115 .....................................................................11, 40

34 C.F.R. § 300.137(a)......................................................................11

34 C.F.R. § 300.147 .....................................................................12, 14

34 C.F.R. § 300.148(c)..................................................................13, 38

34 C.F.R. § 300.325(c)..................................................................12, 14

34 C.F.R. § 300.600(d)(1)..................................................................13

## I.     INTRODUCTION

The District Court found numerous faults with Appellants' complaint ("Complaint"). The Complaint pled claims against arms of the state, but failed to plead claims for which sovereign immunity had been waived. Eleventh Amendment sovereign immunity thus applied, resulting in the necessary dismissal of the Complaint. Further, the Complaint lacked facts supporting standing for several of the Appellants, again resulting in the dismissal of claims. Finally, the District Court addressed the substance of Appellants' claims, and determined that it too failed to state a claim. As such, the District Court dismissed Appellants' Complaint with prejudice.

Appellants now appeal but have entirely failed to raise any new grounds to support their claims. Sovereign immunity and standing still act as preliminary barriers to their claims, and their claims against Los Angeles Unified School District simply are not justified.

The Los Angeles Unified School District and its Chief of Special Education, Tony Aguilar ("LAUSD Defendant") are particularly aggrieved by continued involvement in this litigation and the repetition of the claims made below. The LAUSD Defendant did not create the statute at issue, its regulations, nor the nonsectarian requirement itself. The California Legislature alone holds that role. Neither may the LAUSD Defendant waive the non-public school certification

requirement at issue. The California Department of Education ("CDE Defendant") is the only entity which may waive that requirement. Further, the LAUSD Defendant has no ability to implement, oversee, or regulate the non-public school certification process. Again, that responsibility rests solely with the CDE Defendant. The LAUSD Defendant has done nothing to create the dispute and is without the ability to impact this dispute in any meaningful way. LAUSD Defendant's involvement in this litigation is the collateral damage of Appellants' disputes against the CDE Defendant.

Appellants' appeal therefore is not only lacking in substance but continues to seek to enforce Appellants' claims against the LAUSD Defendant without proper justification. This Court must not allow this to continue and should dismiss Appellants' appeal.

## II.    STATEMENT OF JURISDICTION

The District-Appellees agree with Appellants' Statement of Jurisdiction.

## III.   STATEMENT OF ISSUES

Whether the District Court properly dismissed the claims against the LAUSD Defendant and CDE Defendant on the grounds that Appellants' Complaint was prohibited by the application of Eleventh Amendment sovereign immunity under Federal Rule of Civil Procedure ("Rule") 12(b)(6)?

Whether the District Court properly dismissed the monetary damages claims against the Defendants Tony Thurmond and Anthony Aguilar on the grounds that Appellants' monetary claims were prohibited by the application of Eleventh Amendment sovereign immunity under Rule 12(b)(6)?

Whether the District Court properly dismissed the claims of Appellant against the Defendants under Rule 12(b)(6) on the grounds that the Appellant lack standing where they are not ready and able to accept the benefit at issue?

Whether the District Court properly dismissed the claims of Appellant M.L. against the Defendants under Rule 12(b)(6) on the grounds that Appellant M.L. lacks standing where they are not ready and able to accept the benefit at issue?

Whether the District Court properly dismissed the claims of Appellants Taxons and Perets against the Defendants under Rule 12(b)(6) on the grounds that the School Appellants have failed to state a claim as to free exercise?

## IV.    STATEMENT OF THE CASE

### A.    The IDEA

As the District Court repeatedly noted, a thorough understanding of the IDEA is vital to reaching the correct conclusion on this case. At its core, the IDEA requires that a local education agency ("LEA") make available a free appropriate public education ("FAPE") to all children with disabilities residing within its

boundaries who meet the eligibility requirements. 20 U.S.C. § 1412(a)(1)(A). FAPE includes the provision of special education and related services. *Id.*

The individualized education program ("IEP") is the vehicle through which the statute converts this state-wide obligation to individual student implementation. "A comprehensive plan prepared by a child's 'IEP Team' (which includes teachers, school officials, and the child's parents), an IEP must be drafted in compliance with a detailed set of procedures." *Id.* (quoting 20 U.S.C. § 1414(d)(1)(B)). Parents are important members of their child's IEP team and "parental participation in the IEP and educational process is critical to the organization of the IDEA." *Doug C. v. Haw. Dep't of Educ.*, 720 F.3d 1038, 1043 (2013). Still, the LEA is ultimately responsible for offering an appropriate IEP, including placement, and ensuring implementation of the IEP. 20 U.S.C. § 1412(a)(10)(B).

### 1.    Private School Placement

As part of the general obligation to provide FAPE, the IDEA anticipated the intersection of public and private schools, including those private schools with religious affiliations. The IDEA recognizes two categories of private school student : 1) children placed unilaterally in private schools by their parents ("Parentally-Placed"); and, 2) children placed in private schools by a public agency ("Publicly-Placed"). *Capistrano Unified Sch. Dist. v. S.W.*, 21 F.4th 1125, 1138-39

(9th Cir. 2021) ("*Capistrano*") [interpreting provisions of 20 U.S.C.
§ 1412(a)(10).]

Parental placement involves the placement of a student at a private school without an LEA's offer of FAPE. "No parentally-placed private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school." 34 C.F.R. § 300.137(a). The IDEA affords a parentally-placed student the right to receive "equitable services," but requires those services must be "secular, neutral, and nonideological." 20 U.S.C. § 1412(a)(10)(vi).

Publicly-placed students are placed at a private school by the LEA itself with an offer of FAPE. These placements are a means of the LEA providing a FAPE and the full continuum of special education and related services. 20 U.S.C. § 1412(a)(10)(B); 34 C.F.R. § 300.115. Publicly-placed students are so placed only where the student's IEP team concludes that it is necessary for the provision of FAPE. While parents may advocate for this placement as a valued member of the IEP team, it is ultimately the LEA's responsibility to provide placement which complies with the IEP. 20 U.S.C. § 1412(a)(10)(B).  When an LEA chooses to place a child in a private institution, it remains responsible for adequately implementing the IDEA's requirements: "Even if a private school or facility

11

implements a child's IEP, responsibility for compliance . . . remains with the [State and local agencies]." 34 C.F.R. § 300.325(c).

The IDEA regards the LEA's obligations vis a vie private schools as extending only to the LEA responsibility to consider, offer, and implement a FAPE.   For availability and maintenance of the continuum's private school options, however, the IDEA looks solely to the State.   To the extent that private schools are part of the IDEA's public placement options, the IDEA charges the State with the obligation to ensure that private institutions chosen for an alternative placement are appropriate.   Setting forward the "Standards" for publicly-funded private school placements, the IDEA dictates: "the State educational agency shall determine whether such schools and facilities meet standards that apply to State educational agencies and local educational agencies and that children so served have all the rights the children would have if served by such agencies." 20 U.S.C. § 1412(a)(10)(B)(ii). The State "must . . . [m]onitor compliance" with those standards "through procedures such as written reports, on-site visits, and parent questionnaires[.]" 34 C.F.R. § 300.147.

Finally, within the parentally placed category, the IDEA allows a parent who refuses an LEA's offer of FAPE and unilaterally places their student at a private school a means of reimbursement if the LEA has not offered a FAPE. 20 U.S.C. § 1412(a)(10)(C); *Capistrano*, *supra*, 21 F.4[th] at 1139 ["rather than establishing a

third category, subparagraph (C) instead simply addresses reimbursement for a subset of students."] "[A] court or a hearing officer may require the [LEA] to reimburse the parents for the cost of that enrollment" upon finding "that the agency had not made FAPE available to the child in a timely manner prior to that enrollment and that the private placement is appropriate." 34 C.F.R. § 300.148(c).

### 2. LEA Obligations When Providing FAPE

In providing FAPE to a student, regardless of their placement, an LEA must comply with a number of obligations. This includes the State's public curriculum which the LEA must deliver under the direction and supervision of the State's public educational agencies. *See* 20 U.S.C. § 1401(9). Further, the LEA is obligated to ensure that the student receives FAPE in the "least restrictive environment." 34 C.F.R. § 300.600(d)(1). "To the maximum extent appropriate," a child with a disability must be "educated with children who are not disabled." 20 U.S.C. § 1412(a)(IV)(5)(A). A child may be removed from a regular educational environment "only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." *Id*. Placement at a private school is one of the most restrictive settings and can be offered only "if no appropriate public education program is available." Cal. Educ. Code §§ 56034, 56361, 56365(a).

These obligations do not end when an LEA places a student at a private school. In such circumstances, the LEA remains responsible for adequately implementing the IDEA's requirements: "Even if a private school or facility implements a child's IEP, responsibility for compliance . . . remains with the [State and local agencies]." 34 C.F.R. § 300.325(c). Further, the State must ensure that private institutions chosen for an alternative placement "meet standards that apply to State educational agencies and local educational agencies and that children so served have all the rights the children would have if served by such agencies." 20 U.S.C. § 1412(a)(10)(B)(ii). The State "must . . . [m]onitor compliance" with those standards "through procedures such as written reports, on-site visits, and parent questionnaires[.]" 34 C.F.R. § 300.147.

## B.    California's Implementation of the IDEA

California has chosen to participate in the IDEA and has implemented the IDEA through a statutory and regulatory framework. Responsibility for implementing and ensuring compliance with the IDEA lies with the CDE, which also administers IDEA funds to local agencies. *See, e.g.*, *Los Angeles Cnty. Off. of Educ. v. C.M.*, 2011 WL 1584314, at *3 (C.D. Cal. Apr. 22, 2011), *aff'd*, 550 F. App'x 387 (9th Cir. 2013).

Pursuant to the IDEA's private school standards requirement, California's Legislature has implemented its IDEA obligations by enacting a statutory scheme

to provide that, "services provided by nonpublic, nonsectarian schools . . . and nonpublic, nonsectarian agencies . . . shall be made available . . . under contract with the [LEA] to provide the appropriate special educational facilities, special education, or designated instruction and services required by the individual with exceptional needs if no appropriate public education program is available." Cal. Educ. Code § 56365(a). CDE regulations further define "nonsectarian" as "a private, nonpublic school . . . that is not owned, operated, controlled by, or formally affiliated with a religious group or sect, whatever might be the actual character of the education program or the primary purpose of the facility and whose articles of incorporation and/or by-laws stipulate that the assets of such agency or corporation will not inure to the benefit of a religious group." Cal. Code Regs. title 5, § 3001(p). These provisions apply to those non-public schools ("NPS") which an LEA is authorized to contract with.

The LEA and NPS contract are key in understanding the relationship between the LEA and the NPS. While the contract controls the relationship of the LEA and NPS, it also illustrates that the majority of the parameters of this relationship are dictated by the State. Specifically, not only does the State prescribe *which* private schools are available to LEAs as NPS options, but it further dictates *how* an LEA will contract with the NPSs. An LEA is limited by California's rules regarding implementation of the IDEA in what an NPS "master contract" may

contain. *Id.* § 56366. These State-dictated contractual standards include recognition that the NPS is subject to the state's accountability system "in the same manner as public schools" and that each pupil placed in the NPS by an LEA shall be tested by qualified staff at the NPS in accordance with that system. *Id.* § 56366(a)(8).

LEAs are further limited by their inability to contract with an NPS which has not been certified by the State. Cal. Educ. Code § 56366(d). Even judges in due process hearings are limited to only NPS placements that the State has certified. Cal. Educ. Code § 56505.2.

To be certified, an NPS must meet a number of requirements and be approved by the Superintendent of Public Instruction ("Superintendent"). Among these requirements are that an NPS must provide "special education and designated instruction and services" from "appropriately qualified staff," including an administrator with appropriate credentialing. Cal. Educ. Code §§ 56366.1(a)(1), (a)(3), (a)(5). Further, an NPS must stay in compliance with the IDEA, but also other federal laws including the Civil Rights Act, Fair Employment Act, and Section 504 of the Rehabilitation Act. Cal. Code Regs. title 5, § 3060(d).

Appellants do not dispute the IDEA's or the State's NPS certification rules as they are enforced upon the LAUSD Defendant. Rather, Appellants only connection to hold LAUSD Defendant accountable for this State-controlled scheme is via the Education Code's provisions for a waiver application. But even

that process is dictated by and issued only at State discretion. Further, regardless of the broad waiver processes potential applicability, Appellants alleged no facts that the LAUSD Defendant was asked to engage in the waiver process on behalf of their interests.

NPS master contract requirements may not be waived by either the NPS itself or the LEA. Cal. Educ. Code § 56366.2 affords a specific process for LEAS or NPSs to seek waivers of NPS master contract requirements, but it specifically excludes from that waiver process the NPS certification requirements contained in § 56366.1. Any master contracting waivers must be approved by the Superintendent. An LEA may not waive any master contract requirements on its own initiative. Neither the Education Code nor the implementing regulations allow an LEA to waive portions of the certification requirements.

The California Education Code also contains a broader waiver provision that is not specific to the NPS processes. Under the Education Code's broader waiver provision, an LEA may "request the [B]oard to grant a waiver of any provision of this code or regulations adopted pursuant to that provision if the waiver is necessary or beneficial to the content and implementation of the pupil's individualized education program and does not abrogate any right provided individuals with exceptional needs and their parents or guardians under [IDEA]." *Id*. § 56101(a). This broad waiver authority arguably may include the ability to

petition for waiver of the nonsectarian NPS certification requirement, however given the more specific NPS waiver provisions included in section 56366.2, this question is not entirely clear. Regardless, the final approval of an LEA's request for waiver rests with the Superintendent. *Id*. § 56366.2(a, b).  Without the express approval by the Superintendent, a LEA may not waive any provision of the certification requirements, including the nonsectarian requirement.

### C.     Student Appellant's Claims

Student Appellants are three pairs of Orthodox Jewish parents— Chaya and Jonathan Loffman, Fedora Nick and Morris Taxon, and Sarah and Ariel Perets— suing on their own behalf and on behalf of their respective children with disabilities. While each student pleads unique facts as to their discrimination, they share a common claim that "California discriminates against Jewish children with disabilities and Jewish schools that seek to provide an education for children with disabilities." ER-243-244. Further, each Student Appellant argues that California violates their rights guaranteed by the First Amendment's Free Exercise Clause and the Fourteenth Amendment's Equal Protection Clause through its provision of IDEA funds only to "nonsectarian" schools, because it "will not allow a private school to access otherwise generally available funds for special education if the private school is religious." ER-243-244.

### 1.    The Loffmans

Appellants Chaya and Jonathan Loffman (the "Loffmans") bring suit on behalf of their four-year-old son who they claim has been diagnosed with high-functioning autism, M.L. ER-246;257. M.L. does not attend a LAUSD school, but rather receives educational services at Maor Academy, an Orthodox Jewish learning center that supports students with special needs. ER-246;257. The Complaint does not allege that the Loffmans have ever sought a FAPE from LAUSD or that M.L. has been evaluated by LAUSD personnel. The Loffmans "recognize that M.L. might be eligible for more services in public school as part of an IEP" but allege that they have been "forced to forgo those services" because the nonsectarian requirement they challenge would make it impossible for M.L. to receive a FAPE at an Orthodox Jewish school. ER-259. There are no facts alleged that the Loffmans asked the LAUSD Defendant to petition the State for a waiver of the NPS nonsectarian certification requirement.

### 2.    The Taxons

Appellants Fedora Nick and Morris Taxon (the "Taxons") have three children, and bring suit on behalf of their fourteen-year-old son K.T., who was diagnosed with autism at age 2. ER-259;260. The Taxons plead that K.T. is a LAUSD student and that, "K.T. has an IEP that includes 9 service providers, including a full-time aide, a supervisor for the aide, speech and occupational

therapists, adaptive physical education, resource specialists for English and math, and a private reading tutor." ER-261. There are no facts alleged that the Taxons asked the LAUSD Defendant to petition the State for a waiver of the NPS nonsectarian certification requirement.

### 3. The Perets

Appellants Sarah and Ariel Perets ("Perets") have six children, and file suit on behalf of their fourteen-year-old son N.P., who was diagnosed with autism at age 3 and a WAC gene mutation at age 6. ER-263. Like the Loffmans and the Taxons, the Peretses "believe that they are obligated to send their children to Orthodox Jewish schools to maintain and strengthen their family's Jewish religious beliefs, culture, and heritage." ER-264. N.P. "currently attends Sutter Middle School, a public middle school, where he has an IEP in place." ER-265. N.P. receives "limited speech therapy" at Sutter Middle School. ER-265. There are no facts alleged that the Perets asked the LAUSD Defendant to petition the State for a waiver of the NPS nonsectarian certification requirement.

### D. School Appellants' Claims

The School Appellants consist of two schools located in Los Angeles, California: the Jean & Jerry Friedman Shalhevet High School ("Shalhevet") and the Samuel A. Fryer Yavneh Hebrew Academy ("Yavneh"). The School Appellants plead that they "seek[] the opportunity to qualify to provide a

distinctively Orthodox Jewish education to children with disabilities." ER-267. The School Appellants allege "[o]n information and belief" that the School Appellants "either otherwise meet[] or [are] capable of meeting California's other certification requirements to become an NPS." ER-268; 270. An LEA has no role in the certification process. There are no facts alleged that either Shalhevet or Yavneh asked the LAUSD Defendant to petition the State for a waiver of the NPS nonsectarian certification requirement.

### E. Procedural History

Appellants filed their Complaint on March 13, 2023, seeking declaratory and injunctive relief based on six causes of action. Counts I, II, III, and VI are based in the Free Exercise Clause. Count IV is based in the Equal Protection Clause (Count IV) and Count V alleges a violation of the unconstitutional conditions doctrine. Appellants are suing the California Department of Education and the Superintendent of Public Instruction, Tony Thurmond, as well as the Los Angeles Unified School District and its Chief of Special Education, Equity, and Access, Anthony Aguilar. ER-244.

On May 22, 2023, Appellants moved for a preliminary injunction barring Defendants from enforcing the nonsectarian requirement in Sections 56365 and 56366 of the California Education Code. Dkt. 28. On May 23 and 24, the LAUSD

Defendant and the CDE Defendant filed separate motions to dismiss Appellants'
Complaint. *See* Dkt. 29, 31.

The District Court held a hearing on the parties' Motions on July 21, 2023.
On August 9, 2023 the District Court denied Appellants' motion for a preliminary
injunction and granted Defendants' motions to dismiss. ER-5.

Appellants subsequently appealed.

### F.    Ruling for Review

The District Court denied the Appellants' motion for a preliminary
injunction and granted Defendants' motions to dismiss. The District Court first
held that both the CDE Defendant and LAUSD Defendant held sovereign
immunity for claims raised under the IDEA, and that this immunity had not been
waived as to Appellants' claims. ER-26-27. Further, the District Court found that
the individual Defendants, Tony Thurmond and Anthony Aguilar, held sovereign
immunity as to the claims seeking monetary damages in the Complaint. ER-27.

The District Court next held that the Taxons and Peretses had standing citing
sufficiently pled facts demonstrating an injury in fact. ER-42-44. In contrast, the
District Court found that the Loffmans lacked injury where M.L. had not sought
eligibility under the IDEA nor was placed in a District School and the School
Appellants lacked standing where they had taken no concrete steps to seek
certification. ER-37, 40-41.

Finally, the District Court addressed the sufficiency of the Appellants' substantive claims. The District Court concluded that Appellants Free Exercise claims failed, as "California's nonsectarian requirement for NPS certification is simply a limitation on the types of entities with which the State may contract to provide a FAPE to children with exceptional needs when a public school cannot meet those children's needs. California's NPS system is not a mechanism for subsidizing the education of IDEA-eligible children at private schools." ER-50. The District Court therefore concluded that the Appellants' Free Exercise rights had not been violated, and granted the Defendants' motions to dismiss.

## V.    SUMMARY OF THE ARGUMENT

The District Court properly dismissed the Complaint as to LAUSD Defendant and CDE Defendant, pursuant to Rule 12(b)(6), due to the application of Eleventh Amendment sovereign immunity, on the basis that both the LAUSD and CDE Defendants are arms of the state and therefore enjoy sovereign immunity. ER-24-26.

The District Court properly dismissed the monetary claims as to Defendants Tony Thurmond and Anthony Aguilar, pursuant to Rule 12(b)(6), due to the application of Eleventh Amendment sovereign immunity, on the basis that both Defendants Tony Thurmond and Anthony Aguilar are employees of entities which are the arms of the state and therefore enjoy sovereign immunity.  ER-26.

The District Court properly dismissed the School Appellants' claims in the Complaint in their entirety, pursuant to Rule 12(b)(6), due to the School Appellants' failure to plead facts demonstrating standing, on the basis that School Appellants have not demonstrated that they are ready and able to receive NPS certification. ER-27-37.

The District Court properly dismissed the M.L.'s claims in the Complaint in their entirety, pursuant to Rule 12(b)(6), due to M.L.'s failure to plead facts demonstrating standing, on the basis that M.L. has not shown that they are ready and able to accept the benefit at issue. ER-37-41.

The District Court properly dismissed the Perets and Taxons claims in the Complaint in their entirety, pursuant to Rule 12(b)(6), due their failure to plead a cause of action on which relief could be granted, on that no violation of the Free Exercise clause was sufficiently pled. ER-44-53.

## VI.  ARGUMENT

### A.    Standard of Review

#### 1.    General Standards

Generally, the Ninth Circuit presumes District Court decisions to be correct. *Parke v. Raley*, 506 U.S. 20, 29 (1992).  The appellant has the burden of overcoming this presumption.  *Id.*  A District Court's interpretation of statutes and its application of such interpretation to a given dispute are also reviewed de novo.

*City of Los Angeles v. U.S. Department of Commerce*, 307 F.3d 859, 868 (9th Cir. 2002). A District Court's findings of fact are reviewed for "clear error." *Purcell v. Gonzalez*, 549 U.S. 1, 5 (2006).

### 2. Motion to Dismiss per Rule 12(b)(6) for Failure to State a Claim

A District Court's decision to grant a motion to dismiss under Fed. R. Civ. P 12(b)(6) for failure to state a claim is also reviewed de novo. *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.,* 15 F.4th 885, 889 (9th Cir. 2021).

A motion to dismiss "tests the legal sufficiency of the claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The Court, in reviewing the complaint for legal sufficiency, "may look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). A motion to dismiss may be granted if there is no cognizable legal theory to grant relief or sufficient facts to support a cognizable legal theory. *Balistreri v. Pac. Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

In order to survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). All factual allegations set forth in

the complaint must be taken as true and construed in the light most favorable to the plaintiff. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain sufficient factual matter, accepted as true, to plausibly -- not merely possibly -- allow the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft,* 556 U.S. at 678-679. The court need not accept allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994).

## B. Appellants' Claims Were Rightly Found to Be Prohibited By Eleventh Amendment Sovereign Immunity

The portion of the District Court's Ruling on the application of sovereign immunity is brief and conclusive. That is because there is clear and binding Ninth Circuit precedent establishing sovereign immunity for all of Appellants' claims, except the non-monetary damages claims against the individual Defendants. Appellants have repeatedly acknowledged this. In fact, they do not address sovereign immunity in their brief at all, except for one footnote, resulting in waiver of any challenge to application of sovereign immunity. Dkt. 13, 22, fn. 7.

Appellants failure to address it on appeal must result in waiver of any objections. *Sabra v. Maricopa County Community College Dist.*, 44 F.4th 867, 881-882 (9th Cir. 2022)*.* Therefore, each of Appellants' claims other than the non-monetary damages claims against the individual Defendants must be barred by the application of the Eleventh Amendment and the doctrine of sovereign immunity.

Sovereign immunity clearly acts to prohibit Appellants' claims against the LAUSD Defendant. Under the Eleventh Amendment to the United States Constitution, a state is not subject to suit in federal court. U.S. Const. Amend. XI; *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Ninth Circuit precedent makes clear that a school district benefits from Eleventh Amendment sovereign immunity, due to its relationship with the State. In *Belanger v. Madera Unif. Sch. Dist.*, 963 F.2d 248 (9th Cir. 1992), the Ninth Circuit held that California school districts are arms of the State of California, and thus enjoy Eleventh Amendment immunity[1]. *Id.*, at 251-52. And in 2017, the Ninth Circuit reaffirmed its holding that California school districts are arms of the State with Eleventh Amendment immunity, after changes to the California Education Code. *Sato v. Orange Cty. Dep't of Educ.*, 861 F.3d 923 (9th Cir. 2017). The District

---

[1] While certain exceptions exist to sovereign immunity, none apply here and Appellants have made no effort to argue their applicability. *Wesley-Willis v. Cajon Valley Union Sch. Dist.*, No. 17CV1662-WQH-WVG, 2018 WL 3752833, at *3 (S.D. Cal. Aug. 8, 2018) (reciting exceptions).

Court quickly and definitively concluded that Eleventh Amendment immunity applied, and on this ground dismissed with prejudice Appellants' claims against the LAUSD Defendant and CDE Defendant. ER-26-26.

The same holds true for non-damages claims against the individual Defendants. The Eleventh Amendment prohibits retroactive relief against a state or state official in an official capacity, even if the relief is equitable in nature. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 102-03, 106 (1984); *Edelman v. Jordan*, 415 U.S. 651, 667-69 (1974). Again, the District Court determined that this immunity applied, and dismissed with prejudice Appellants' claims for damages against the individual Defendants.

At every possible opportunity, Appellants have conceded that Eleventh Amendment sovereign immunity prohibits their claims. Further, their Opening Brief contains only one reference to sovereign immunity, in which they state that they do not appeal this portion of the District Court's Ruling. Dkt. 13, 22, fn. 7. Where Appellants have not raised this in their Opening Brief, they are considered to have abandoned the issue. *Sabra v. Maricopa County Community College Dist.*, *supra*, 44 F.4th at 881-882.

Eleventh Amendment sovereign immunity acts to preclude all of Appellants' claims against the LAUSD Defendant and CDE Defendant, and the non-monetary

damages against the individual Defendants. Appellants do not appeal this element of the Ruling and have abandoned it on appeal.

## C. Appellants' Claims Are Necessarily Limited By Article III Standing

### 1. The District Court Correctly Rejected Appellants' Claims Related to Standing, Except As to the Perets and Taxons

The District Court correctly concluded that the Loffmans and the School Appellants do not have standing. Appellants do not dispute the District Court's findings, but instead rely solely on the standards applicable to discriminatory classifications. In their attempt to overturn this ruling, Appellants seek to push the standards for standing to their breaking point. Where both the Loffmans and the School Appellants fail to meet the applicable standards, this Court should not allow Appellants to stretch the rules governing standing until they lose all meaning.

To successfully demonstrates standing, a plaintiff must plead a "irreducible constitutional minimum of standing" to proceed: 1) an injury in fact, 2) a causal connection between the injury and the conduct complained of, and 3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). An injury in fact is an "invasion of a legally protected interest" that is both "concrete and particularized" as well as "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id*. at 560, quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155

(1990). The second element, the causal connection, requires that this injury be "fairly…trace[able] to the challenged action of the defendant, and not…the] result [of] the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976). Finally, Appellants must show a likelihood, as opposed to mere speculation, that the injury will be "redressed by a favorable decision." *Id*. at 38, 43. A court's inquiry as to whether a plaintiff has shown the requisite ability and readiness to apply is a "highly-fact specific" undertaking and requires more than the nonapplicant's belief that they meet the "minimum qualifications" and are "able and ready." *Carney*, 141 S. Ct. at 500–1 (concluding that the plaintiff lacked standing where the record did not show that he was "able and ready" to apply).

The particular issue of standing arising from this case relates to the "discriminatory barrier" standing. "When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville* ("*AGC*"), 508 U.S. 656, 666 (1993). But even where this standard applies, the plaintiff must still meet certain minimum standards. "The 'injury in fact' in an equal protection case of this variety is the denial of equal

treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *AGC*, 508 U.S. at 666. The District Court, in applying this standard, reviewed a number of Ninth Circuit cases to determine whether the case at hand was "cases… where the plaintiffs were "able and ready" to apply for and receive the benefits at issue, or more analogous to the other cases…where the plaintiffs failed to meet their burden to establish Article III standing."

The Loffmans cannot demonstrate standing where their child, M.L., has no connection with Defendants. The District Court based its ruling on two points. First, the District Court noted that "there is no allegation that the Loffmans have ever sought a FAPE from LAUSD or that LAUSD has ever evaluated M.L., who may or may not be entitled to receive a special education and related services under the IDEA." ER-39. This failure to seek the benefit at issue weighed heavily against Appellants' claims for standing. Further, "[t]he Complaint assumes that M.L. is eligible to receive a FAPE from LAUSD because of his autism diagnosis, but an autism diagnosis does not equate to IDEA eligibility." ER-39. It is possible based on this diagnosis that M.L. is not eligible for coverage under IDEA. Based on these two facts, the District Court rightly concluded that Appellants had failed to plead sufficient injury in fact to demonstrate standing. ER-40-41.

The School Appellants similarly failed to plead facts sufficient to demonstrate standing. The District Court noted that the "Complaint does not

include any allegations about concrete steps the School Appellants have taken to become certified as NPSs, and it does not explain on what grounds the schools believe that they would be able to meet the other certification requirements for becoming an NPS." ER-34. Further, although the "statutory requirements for a school to achieve NPS certification in California are extensive", the District Court found that "[t]he Complaint includes no allegations related to the School Appellants' experience or efforts in educating children with disabilities." ER-34. In effect, the District Court found that the School Appellants failed to plead facts demonstrating that they were ready and able to accept the benefits, regardless of whether they are available.

Appellants continue to argue that they need not satisfy this burden, even in the face of the District Court's analysis of the Ninth Circuit's clear precedent. Despite the discriminatory barrier standard, Appellants must still show that they were injured in fact, and that they are ready and able to receive the benefits at issue. The District Court found that the Loffmans and the School Appellants have failed to plead facts sufficient to meet this standard. Appellants introduce nothing which undermines this simple result.

## 2. Waiver of the Nonsectarian Requirement

In reaching its conclusion on standing, the District Court chose not to address another basis for rejecting Appellants' claims of standing, specifically as to

the LAUSD Defendant. Appellants claim that the LAUSD Defendant is equally culpable for the imposition of the nonsectarian requirement due to their failure to waive this requirement. However, the LAUSD Defendant itself may not waive the requirement – rather, they only hold the power to petition for its waiver. Moreover, even the LAUSD Defendant's power of petition is limited, the LAUSD Defendant is only authorized to seek a waiver "if necessary or beneficial to the content and implementation of the pupils' individualized education program." Cal. Educ. Code § 56101(a). As such, this stands as a separate and distinct basis for rejecting Appellants' claims of standing.

An additional element of standing is redressability. Redressability is pled where a plaintiff shows that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) (quoting *Lujan*, 504 U.S. at 561). A plaintiff must show "a substantial likelihood that the relief sought would redress the injury[.]" *Id.* (internal quotation marks and citations omitted). "If, however, a favorable judicial decision would not require the defendant to redress the plaintiff's claimed injury, the plaintiff cannot demonstrate redressability . . . unless she adduces facts to show that the defendant or a third party are nonetheless likely to provide redress as a result of the decision." *Id.* (internal quotation marks and citations omitted).

As described above, an LEA may arguably petition for the waiver of a NPS certification requirement, including the nonsectarian requirement. *See* Cal. Educ. Code § 56101. However, for requirements such as the nonsectarian NPS certification requirement, final approval rests with the Superintendent. *Id.* §56101. Thus, Appellants' alleged injury related to the waiver of the NPS certification requirements is still not traceable to any LAUSD Defendant action and instead, even if viable or evoked, rests upon the independent action of the Superintendent and CDE. *See Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. at 41-42. As such, even this belabored effort to apply a State induced injury to the LAUSD Defendant fails. Appellants' injury in fact is not redressable by act of the LAUSD Defendant nor any court order effecting the LAUSD Defendant.

It is also significant and fatal to Appellants' standing as to the LAUSD Defendant that they failed to allege any facts that the LAUSD Defendant was asked to engage in the waiver process on behalf of their interests. The general waiver process of Section 56101 does not empower an LEA to decide sua sponte that it does not like a particular Education Code provision and seek waiver of that provision's general applicability. Instead, Section 56101 requires and is contingent upon an LEA's specific concern, specific to an individual pupil, and only "if" the waiver is ". . . necessary or beneficial to the content and implementation of the pupil's [IEP]. . ." Appellants failure to allege any facts that they invoked this

request of the LAUSD Defendant or that the LAUSD Defendant had reason to invoke this request for a specific pupil attempts to assign responsibility where there is none. Appellants' waiver argument reads into the law a power that the LAUSD Defendant does not have: the ability to waive statutes or regulations mandated by the State without any specific invocation or reason to do so.

This separate and distinct grounds for rejecting standing was not addressed by the District Court, but must act to prohibit the Appellants' claims against the LAUSD Defendant.

### D. Appellants Free Exercise Claims Fail Where No Benefit Has Been Denied In LAUSD's Provision of FAPE

As with the District Court, this Court need not reach the substance of Appellants' claims. Both Eleventh Amendment sovereign immunity and Appellants' failure to properly plead facts supporting standing act to limit their claims, rendering the substance of Appellants' claims irrelevant. With that said, the District Court's analysis remains true: the benefit sought by Appellants does not appear to be the provision of public education at a private school. Rather, Appellants appear to desire access to a religious private school education via the public education processes. Appellants make no effort to distinguish the religious component of the benefit they seek, indeed entangling the need for religious instruction with the need for a FAPE. Dkt. 13, 16 [Appellants "believe that Jewish

law—as set forth in the Torah, Talmud, the Shulchan Aruch and other authorities—obligates them to send all their children to schools where they can receive an education both in secular subjects and in their Orthodox Jewish faith."] The effort apparently aims to bypass the distinction as it applies to all other students seeking religious instruction, including some of Appellants' own children. Specifically, that families have a choice between enrolling their children in private religious school or public school LEAs.

The LAUSD Defendant respects the deeply personal choice this reflects for families. The LAUSD Defendant is, however, concerned that public employees of the IEP teams may be asked to participate in this deeply personal decision making. Without further guidance or additional statutory or regulatory authority, it is not speculative to imagine that Appellants desired and overtly stated outcome in this litigation is that IEP teams are called upon to decide the question of a FAPE placement based upon the religious preferences of the child they are tasked with educating.

The larger question is whether that choice, made within the context of IDEA and California's NPS certification process, violates the Free Exercise clause. And further, for the LAUSD Defendant, if the scheme set by the California legislature and the CDE *does* violate the Free Exercise clause, that these entities also set parameters for how LEAs (and the LAUSD Defendant) are to navigate such a

scheme without being compelled to decide a child's FAPE based upon that child's religious preferences.

Appellants turn to *Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020) ("*Espinoza*"); *Carson v. Makin*, 142 S. Ct. 1987 (2022) ("*Carson*"); and *Trinity Lutheran Church of Colombia, Inc. v. Comer*, 582 U.S. 449 (2017) ("*Trinity Lutheran*") to assert that Parent Appellants have been excluded from advocating for Student Appellants to receive FAPE at an Orthodox Jewish NPS and School Appellants have been excluded from participating as an NPS. However, the District Court correctly found that these cases do not support the alleged violations.

These cases stand for the proposition that "[a] State need not subsidize private education, but once the State decides to do so, it cannot disqualify some private schools solely because they are religious." *Espinoza*, 140 S. Ct at 2261. Doing so violates the Free Exercise clause, as "a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Carson*, 142 S. Ct. at 1996. However, *Espinoza* and *Carson* each involved the state's choice to provide direct public benefits available generally *to families* in order to subsidize private school education *of their choosing* by scholarship or tuition. *Trinity Lutheran* involved a grant for playground equipment. Each involved a direct public benefit requested by parents or schools, rather than a

request or right flowing from the decisions made by public employees of a local school district. This distinction is what makes defining the benefit at issue so vital.

The District Court was careful in its analysis of the benefit at issue. To begin, the Court noted that as "California's NPS system is a means of delivering benefits that are available to students with disabilities under the IDEA, we begin with the federal statute." ER-46. Turning to the language of the statute, the District Court compared the available options Appellants faced under the IDEA. While the IDEA's purpose is to ensure the provision of FAPE to all eligible students, "the IDEA also contemplates that some families will opt for private education for their children and imposes on the States different obligations toward eligible children depending on the type of school eligible children attend." ER-47. The IDEA provides both the option for a parent to send their child to a private school and receive "equitable services" (20 U.S.C. § 1412(a)(10)(vi); *id*. § 1412(a)(10)(C)(i)), and/or to seek reimbursement for a private school education if the parents can demonstrate that the school district did not provide a FAPE to their child. 20 U.S.C. § 1412(a)(10)(C)(ii); 34 C.F.R. § 300.148(c). *Capistrano*, *supra*, 21 F.4th at 1138 ["the more natural reading of the section is that it establishes two kinds of private school students—those placed by the parents and those placed by the school—and then includes a third part about reimbursement for a subset of students placed by their parents."]

However, the statutory requirements of the IDEA itself make clear that "[f]or their children to receive the full benefits of the IDEA—a FAPE with the support of an IEP—parents must work with the LEA in charge of the public schools their children would attend." ER-48. In other words, the IDEA's statutory framework requires that "[f]or their child to receive the maximum support that the IDEA requires the State to provide to eligible pupils, parents have to give up their ability to choose a private school and accept the LEA's placement decision. In sum: accept the State's offer of a FAPE, give up your choice of private school." (Order, 44.)

Turning to the nonsectarian requirement and California's implementation of the IDEA, the District Court noted that within the IDEA's statutory scheme, the nonsectarian requirement "does not prevent the provision of equitable services at religious schools or bar reimbursement to parents when they unilaterally place their child in a religious school." ER-48. Rather, the nonsectarian requirement is simply a limitation on the types of entities LEAs may contract with when placement in a private institution is necessary to implement the child's IEP. *See* Cal. Educ. Code §§ 56365, 56366, 56505.2.

This distinguishes the case at hand to the Supreme Court precedent upon which Appellants rest their case. For example, in *Carson*, a benefit was provided to families to support the provision of secondary education where the state did not

provide such schools. There was no requirement the private schools accept all students, and the "curriculum taught at participating private schools need not even resemble that taught in the Maine public schools." *Carson,* 142 S. Ct. at 1999. The Court in *Carson* called out the fact that "[t]he benefit provided by statute is *tuition* at a public *or* private school, selected by the parent, with no suggestion that the 'private school' must somehow provide a 'public' education." *Id.*, at 1998-99 (emphasis in original). "Maine has chosen to offer tuition assistance that parents may direct to the public or private schools of *their* choice." *Ibid.* The District Court made clear that this case was distinguishable.

Unlike Maine's tuition assistance scheme, California's NPS system requires, at the outset, the involvement of decision-making by public employees. An LEA's IEP team must make the NPS offer in the first place. 20 U.S.C. § 1412(a)(10)(B); 34 C.F.R. § 300.115. Further, California's NPS system *does* obligate participating institutions to provide a public education that conforms to the State's curriculum and standards. *See, e.g.* Cal. Code Regs. title 5, § 3070. [The LEA is the entity which issues a diploma, when a student completes their course of study.] Further, NPSs do not simply receive tuition assistance payments; they contract with the LEA to provide students with exceptional needs with a FAPE as detailed in their IEPs. And that contract is involved, with the State mandating that LEAs observe, supervise, and actively participate in the implementation of that child's FAPE at

the contracted NPS. Cal. Educ. Code § 56366(a)(2)(B).  Finally, the NPS system

certainly does not direct funding to parents of eligible children that the parents can

utilize to fund a private education, as Appellants allege and was the case in

*Carson*. It directs that funding via the State to LEAs. As California has not chosen

to provide FAPE at any private schools that parents may choose on their own

initiative, it has not denied Appellants equal access to FAPE. Therefore, *Carson*,

*Espinoza*, and *Trinity* Lutheran do not apply.

The District Court summarized its holding as follows:

> California's nonsectarian requirement for NPS certification is not
> what prevents the Taxons and the Peretses from receiving a FAPE for
> their children. By their own allegations, LAUSD has provided the
> special education and services to which their children are entitled
> under the IDEA. What LAUSD has not provided are special
> accommodations that take into account the families' religious wants.
> But said accommodations are not available under the IDEA, which
> contemplates that parents who prefer private—including religious—
> school for their children will seek equitable services or reimbursement
> rather than the full range of benefits available under the IDEA.

This conclusion must be drawn when the Supreme Court's precedent is applied to

the facts as plead in the Complaint and the statutory scheme at play in California.

Therefore, the District's ruling on the substance of Appellants' claims must be

upheld.

### E.     Impacts to LEAs of Requested Relief

Unaddressed by Appellants' lengthy brief is the potential impact a decision overturning the District Court will have on LEAs. The removal of the nonsectarian requirement will result in vastly increased costs and heightened regulatory burden on the LEAs. Further, its removal will leave LEAs without guidance as to how to continue to meet their many obligations under the IDEA or prevent the entanglement of public employee decisions in the deeply personal religious decisions of the families they work with.

A decision by this Court removing or limiting the nonsectarian requirement will have a number of potentially disruptive negative impacts on LEAs. First among these impacts will be an increased cost in the provision of FAPE. These costs will derive both from the provision of FAPE at an increased number of NPSs, but also in the increased regulatory costs such provision of services will require. A LEA will be required to ensure that the NPSs comply with all remaining aspects of their certification and master contract, including that NPSs with religious affiliations provide FAPE in a non-discriminatory fashion. Further, LEAs would need further guidance as to how to balance their new obligations to religious NPSs against existing prohibitions on the funding of religious education. Finally, LEAs would similarly require guidance as to the IEP team's obligations in light of

inevitable advocacy from parents asserting that their children require a private religious education in order to receive a FAPE under the IDEA.

Placing LEA employees in the position of evaluating a student's religious beliefs raises numerous concerns. Such a role for a public agency conflicts with long held traditions regarding the government's role in religious activities. Public agencies may not be required to conduct their internal activities in a manner which complies with a particular faith. "The Free Exercise Clause simply cannot be understood to require the Government to conduct its own internal affairs in ways that comport with the religious beliefs of particular citizens." *Bowen v. Roy*, 476 U.S. 693, 699, 106 S. Ct. 2147, 2152, 90 L. Ed. 2d 735 (1986). At the same time, Appellants' position would impose upon an LEA the obligation to evaluate the role religious belief plays in a student's life. A similar issue arose in *Carson*, where the court held that "scrutinizing whether and how a religious school pursues its educational mission" would "raise serious concerns about state entanglement with religion and denominational favoritism." *Carson*, 142 S. Ct. at 2001. The matter here is the opposite side of the same coin: public employees will be asked to evaluate the religious beliefs of students to evaluate the efficacy of the public education. Clearly, this raises entanglement concerns on par with those in *Carson*.

The complexity inherent in such a balancing necessitates further guidance, and without it, there will certainly be widespread confusion and dispute followed

by the inevitable drain of expensive litigation on already limited public funds given to LEAs for the obligations they must carry out under the IDEA and related California law. Should this Court be inclined to agree with Appellants' position, the LAUSD Defendant requests the Court's consideration of these concerns and that any order be coupled with direction for the CDE Defendant to address these concerns prescriptively.

## VII. CONCLUSION

For the foregoing reasons, the LAUSD Defendant respectfully request that the Court affirm the District Court's ruling dismissing Appellants' complaint against them in its entirety.

Respectfully submitted,

Dated: January 8, 2024            DANNIS WOLIVER KELLEY

By: /s/ *Sue Ann Salmon Evans*
Sue Ann Salmon Evans, Esq.
Attorneys for Defendants – Appellees
LOS ANGELES UNIFIED SCHOOL
DISTRICT and ANTHONY AGUILAR

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-55714

I am the attorney or self-represented party.

**This brief contains** | 8,545 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

🔘 complies with the word limit of Cir. R. 32-1.

⚪ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⚪ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

⚪ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

⚪ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

　☐ it is a joint brief submitted by separately represented parties.
　☐ a party or parties are filing a single brief in response to multiple briefs.
　☐ a party or parties are filing a single brief in response to a longer joint brief.

⚪ complies with the length limit designated by court order dated ☐.

⚪ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Sue Ann Salmon Evans | **Date** | 01/08/2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**　　　　　　　　　　　　　　　　　　　　　　　　　*Rev. 12/01/22*

45