**Case No. 23-55714**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

CHAYA LOFFMAN, ET AL.,

*Plaintiffs – Appellants,*

*v.*

CALIFORNIA DEPARTMENT OF EDUCATION, ET AL.,

*Defendants – Appellees.*

On Appeal from the United States District Court for the
Central District of California
District Court No. 2:23-cv-001832-JLS-MRW
The Honorable Josephine L. Staton

### RULE 28-2.7 ADDENDUM TO THE STATE APPELLEES'
### ANSWERING BRIEF

LEN GARFINKEL, State Bar No. 114815
General Counsel
BRUCE YONEHIRO, State Bar No. 142405
Assistant General Counsel
THOMAS H. PROUTY, State Bar No. 238950
Deputy General Counsel
California Department of Education
1430 N Street, Room 5319
Sacramento, California 95814
Telephone: 916-319-0860
Facsimile: 916-322-2549
*Attorneys for the State Appellees*

# ADDENDUM TABLE OF CONTENTS

**United States Constitutional Provisions** ..................................................1

    First Amendment ........................................................................1

    Fourteenth Amendment ...............................................................1

**United States Code, Title 20** ...........................................................**1**

    § 1400.  Short title; findings; purposes ....................................1

    § 1401.  Definitions ....................................................................2

    § 1412.  State Eligibility ............................................................3

    § 1415.  Procedural Safeguards ...............................................15

    § 7801.  Definitions ..................................................................16

**Code of Federal Regulations, Title 34** ........................................**18**

    § 76.532.  Use of funds for religion prohibited ......................18

    § 300.17.  Free appropriate public education .........................18

    § 300.28.  Local Educational Agency ....................................18

    § 300.41.  State Educational Agency......................................19

    § 300.100.  Eligibility for Assistance ....................................19

    § 300.101.  Free appropriate public education (FAPE)..........19

    § 300.102.  Limitation – exception to FAPE for certain ages. ......................20

    § 300.114.  LRE requirements................................................20

    § 300.115.  Continuum of alternative placements....................22

    § 300.116.  Placements........................................................22

    § 300.118.  Children in public or private institutions................23

    § 300.121.  Procedural Safeguards .......................................23

§ 300.130.  Definition of parentally-placed private school children with disabilities .................................................................23

§ 300.131.  Child find for parentally-placed private school children with disabilities .................................................................24

§ 300.132.  Provision of services for parentally-placed private school children with disabilities – basic requirement .......................................25

§ 300.133.  Expenditures ..................................................26

§ 300.134.  Consultation. ................................................28

§ 300.135.  Written affirmation .........................................29

§ 300.136.  Compliance ...................................................29

§ 300.137.  Equitable services determined ...............................30

§300.138.  Equitable services provided ..................................31

§ 300.139.  Location of services and transportation......................32

§ 300.140.  Due process complaints and state complaints .................33

§ 300.141.  Requirement that funds not benefit a private school.........34

§ 300.142.  Use of personnel ...........................................34

§ 300.143.  Separate classes prohibited .................................35

§ 300.144.  Property, equipment, and supplies...........................35

§ 300.145.  Applicability of §§ 300.146 through 300.147 .................36

§ 300.146.  Responsibility of SEA .......................................36

§ 300.147.  Implementation by SEA ......................................37

§ 300.320.  Definition of individualized education program .............37

§300.325.  Private school placement by public agencies ................40

§300.600.  State monitoring and enforcement............................41

**California Education Code.................................................42**

§ 51225.3.  Requirements for graduation ................................42

§ 51225.31. Statewide course requirements; individuals with exceptional needs .................................................................................43

§ 56026. Individuals with exceptional needs ................................................44

§ 56028.5. Public agency..................................................................................46

§ 56034. Nonpublic, nonsectarian school....................................................47

§ 56101. Waivers of code or regulations......................................................47

§ 56345. Individualized education program; contents; legislative intent; use of state moneys; hearing impaired children...........................................48

§ 56365. Services provided by nonpublic, nonsectarian schools and agencies; contracts; allowances for services; tuition; report; out-of-state programs ...........................................................................52

§ 56366. Nonpublic, nonsectarian schools; legislative intent; alternative special education service; contracts; warrants; certification; standards 55

§ 56366.1. Nonpublic, nonsectarian school or agency; application for certification; multiple sites; review and oversight; expansion of services; conditions required for certification; fees; staff credentials; rules and regulations; safety standards ...............................................60

§ 56366.2. Waiver of requirements; petition.................................................70

§ 56366.4. Revocation or suspension of certification of nonpublic, nonsectarian school or agency; grounds; notice to affected entities .....71

§ 56366.5. Payment for contract services of nonpublic, nonsectarian school; request; penalty for unjustified nonpayment; use of funds for individuals with exceptional needs ...........................................................73

§ 56366.10. Nonpublic, nonsectarian schools; additional certification requirements....................................................................................73

**California Code of Regulations, Title 5 ....................................................75**

§ 3001. Definitions .......................................................................................75

§ 3060. Application for Certification ..........................................................76

§ 3061. Service Fees, Finance and Maintenance of Records .......................80

§ 3062. Contracts and Agreements...............................................................80

§ 3063. Program Reviews...............................................................................82

§ 3064.  Staff Qualifications – Special Education Instruction ......................84

§ 3070.  Graduation ............................................................................85

**CERTIFICATE OF SERVICE** ..........................................................**86**

## **United States Constitutional Provisions**

**First Amendment**

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

**Fourteenth Amendment**

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

## **United States Code, Title 20**

**§ 1400.  Short title; findings; purposes**

**(a) Short title**

This chapter may be cited as the "Individuals with Disabilities Education Act".

* * *

**(d) Purposes**

The purposes of this chapter are--

**(1)(A)** to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services

1

designed to meet their unique needs and prepare them for further education, employment, and independent living;

**(B)** to ensure that the rights of children with disabilities and parents of such children are protected; and

**(C)** to assist States, localities, educational service agencies, and Federal agencies to provide for the education of all children with disabilities;

**(2)** to assist States in the implementation of a statewide, comprehensive, coordinated, multidisciplinary, interagency system of early intervention services for infants and toddlers with disabilities and their families;

**(3)** to ensure that educators and parents have the necessary tools to improve educational results for children with disabilities by supporting system improvement activities; coordinated research and personnel preparation; coordinated technical assistance, dissemination, and support; and technology development and media services; and

**(4)** to assess, and ensure the effectiveness of, efforts to educate children with disabilities.

## § 1401.  Definitions

Except as otherwise provided, in this chapter:

* * *

**(9) Free appropriate public education**

The term "free appropriate public education" means special education and related services that--

   **(A)** have been provided at public expense, under public supervision and direction, and without charge;

   **(B)** meet the standards of the State educational agency;

2

**(C)** include an appropriate preschool, elementary school, or secondary school education in the State involved; and

**(D)** are provided in conformity with the individualized education program required under section 1414(d) of this title.

## §1412.  State Eligibility

**(a) In general**

A State is eligible for assistance under this subchapter for a fiscal year if the State submits a plan that provides assurances to the Secretary that the State has in effect policies and procedures to ensure that the State meets each of the following conditions:

**(1) Free appropriate public education**

**(A) In general**

A free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school.

\* \* \*

**(2) Full educational opportunity goal**

The State has established a goal of providing full educational opportunity to all children with disabilities and a detailed timetable for accomplishing that goal.

**(3) Child find**

**(A) In general**

All children with disabilities residing in the State, including children with disabilities who are homeless children or are wards of the State and children with disabilities attending private schools, regardless of the severity of their disabilities, and who are in need of special education and related services, are identified,

3

located, and evaluated and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related services.

**(B) Construction**

Nothing in this chapter requires that children be classified by their disability so long as each child who has a disability listed in section 1401 of this title and who, by reason of that disability, needs special education and related services is regarded as a child with a disability under this subchapter.

**(4) Individualized education program**

An individualized education program, or an individualized family service plan that meets the requirements of section 1436(d) of this title, is developed, reviewed, and revised for each child with a disability in accordance with section 1414(d) of this title.

**(5) Least restrictive environment**

**(A) In general**

To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

**(B) Additional requirement**

**(i) In general**

A State funding mechanism shall not result in placements that violate the requirements of subparagraph (A), and a State shall not use a funding mechanism by which the State distributes funds on the basis of the type of setting in which a

child is served that will result in the failure to provide a child with a disability a free appropriate public education according to the unique needs of the child as described in the child's IEP.

**(ii) Assurance**

If the State does not have policies and procedures to ensure compliance with clause (i), the State shall provide the Secretary an assurance that the State will revise the funding mechanism as soon as feasible to ensure that such mechanism does not result in such placements.

**(6) Procedural safeguards**

**(A) In general**

Children with disabilities and their parents are afforded the procedural safeguards required by <u>section 1415</u> of this title.

* * *

**(10) Children in private schools**

**(A) Children enrolled in private schools by their parents**

**(i) In general**

To the extent consistent with the number and location of children with disabilities in the State who are enrolled by their parents in private elementary schools and secondary schools in the school district served by a local educational agency, provision is made for the participation of those children in the program assisted or carried out under this subchapter by providing for such children special education and related services in accordance with the following requirements, unless the Secretary has arranged for services to those children under subsection (f):

**(I)** Amounts to be expended for the provision of those services (including direct services to parentally placed private school children) by the local educational agency shall be equal to a proportionate amount of Federal funds made available under this subchapter.

5

**(II)** In calculating the proportionate amount of Federal funds, the local educational agency, after timely and meaningful consultation with representatives of private schools as described in clause (iii), shall conduct a thorough and complete child find process to determine the number of parentally placed children with disabilities attending private schools located in the local educational agency.

**(III)** Such services to parentally placed private school children with disabilities may be provided to the children on the premises of private, including religious, schools, to the extent consistent with law.

**(IV)** State and local funds may supplement and in no case shall supplant the proportionate amount of Federal funds required to be expended under this subparagraph.

**(V)** Each local educational agency shall maintain in its records and provide to the State educational agency the number of children evaluated under this subparagraph, the number of children determined to be children with disabilities under this paragraph, and the number of children served under this paragraph.

## (ii) Child find requirement

### (I) In general

The requirements of paragraph (3) (relating to child find) shall apply with respect to children with disabilities in the State who are enrolled in private, including religious, elementary schools and secondary schools.

### (II) Equitable participation

The child find process shall be designed to ensure the equitable participation of parentally placed private school children with disabilities and an accurate count of such children.

### (III) Activities

In carrying out this clause, the local educational agency, or where applicable, the State educational agency, shall undertake activities similar to those activities undertaken for the agency's public school children.

**(IV) Cost**

The cost of carrying out this clause, including individual evaluations, may not be considered in determining whether a local educational agency has met its obligations under clause (i).

**(V) Completion period**

Such child find process shall be completed in a time period comparable to that for other students attending public schools in the local educational agency.

**(iii) Consultation**

To ensure timely and meaningful consultation, a local educational agency, or where appropriate, a State educational agency, shall consult with private school representatives and representatives of parents of parentally placed private school children with disabilities during the design and development of special education and related services for the children, including regarding--

    **(I)** the child find process and how parentally placed private school children suspected of having a disability can participate equitably, including how parents, teachers, and private school officials will be informed of the process;

    **(II)** the determination of the proportionate amount of Federal funds available to serve parentally placed private school children with disabilities under this subparagraph, including the determination of how the amount was calculated;

    **(III)** the consultation process among the local educational agency, private school officials, and representatives of parents of parentally placed private school children with disabilities, including how such process will operate throughout the school year to ensure that parentally placed private school children with disabilities

identified through the child find process can meaningfully participate in special education and related services;

    **(IV)** how, where, and by whom special education and related services will be provided for parentally placed private school children with disabilities, including a discussion of types of services, including direct services and alternate service delivery mechanisms, how such services will be apportioned if funds are insufficient to serve all children, and how and when these decisions will be made; and

    **(V)** how, if the local educational agency disagrees with the views of the private school officials on the provision of services or the types of services, whether provided directly or through a contract, the local educational agency shall provide to the private school officials a written explanation of the reasons why the local educational agency chose not to provide services directly or through a contract.

**(iv) Written affirmation**

When timely and meaningful consultation as required by clause (iii) has occurred, the local educational agency shall obtain a written affirmation signed by the representatives of participating private schools, and if such representatives do not provide such affirmation within a reasonable period of time, the local educational agency shall forward the documentation of the consultation process to the State educational agency.

**(v) Compliance**

**(I) In general**

A private school official shall have the right to submit a complaint to the State educational agency that the local educational agency did not engage in consultation

that was meaningful and timely, or did not give due consideration to the views of the private school official.

**(II) Procedure**

If the private school official wishes to submit a complaint, the official shall provide the basis of the noncompliance with this subparagraph by the local educational agency to the State educational agency, and the local educational agency shall forward the appropriate documentation to the State educational agency. If the private school official is dissatisfied with the decision of the State educational agency, such official may submit a complaint to the Secretary by providing the basis of the noncompliance with this subparagraph by the local educational agency to the Secretary, and the State educational agency shall forward the appropriate documentation to the Secretary.

**(vi) Provision of equitable services**

**(I) Directly or through contracts**

The provision of services pursuant to this subparagraph shall be provided--

> **(aa)** by employees of a public agency; or

> **(bb)** through contract by the public agency with an individual, association, agency, organization, or other entity.

**(II) Secular, neutral, nonideological**

Special education and related services provided to parentally placed private school children with disabilities, including materials and equipment, shall be secular, neutral, and nonideological.

**(vii) Public control of funds**

The control of funds used to provide special education and related services under this subparagraph, and title to materials, equipment, and property purchased with

those funds, shall be in a public agency for the uses and purposes provided in this chapter, and a public agency shall administer the funds and property.

**(B) Children placed in, or referred to, private schools by public agencies**

**(i) In general**

Children with disabilities in private schools and facilities are provided special education and related services, in accordance with an individualized education program, at no cost to their parents, if such children are placed in, or referred to, such schools or facilities by the State or appropriate local educational agency as the means of carrying out the requirements of this subchapter or any other applicable law requiring the provision of special education and related services to all children with disabilities within such State.

**(ii) Standards**

In all cases described in clause (i), the State educational agency shall determine whether such schools and facilities meet standards that apply to State educational agencies and local educational agencies and that children so served have all the rights the children would have if served by such agencies.

**(C) Payment for education of children enrolled in private schools without consent of or referral by the public agency**

**(i) In general**

Subject to subparagraph (A), this subchapter does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility.

**(ii) Reimbursement for private school placement**

10

If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.

**(iii) Limitation on reimbursement**

The cost of reimbursement described in clause (ii) may be reduced or denied--

**(I)** if--

**(aa)** at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or

**(bb)** 10 business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in item (aa);

**(II)** if, prior to the parents' removal of the child from the public school, the public agency informed the parents, through the notice requirements described in section 1415(b)(3) of this title, of its intent to evaluate the child (including a statement of the purpose of the evaluation that was appropriate and reasonable), but the parents did not make the child available for such evaluation; or

**(III)** upon a judicial finding of unreasonableness with respect to actions taken by the parents.

**(iv) Exception**

11

Notwithstanding the notice requirement in clause (iii)(I), the cost of reimbursement--

**(I)** shall not be reduced or denied for failure to provide such notice if--

    **(aa)** the school prevented the parent from providing such notice;

    **(bb)** the parents had not received notice, pursuant to section 1415 of this title, of the notice requirement in clause (iii)(I); or

    **(cc)** compliance with clause (iii)(I) would likely result in physical harm to the child; and

**(II)** may, in the discretion of a court or a hearing officer, not be reduced or denied for failure to provide such notice if--

    **(aa)** the parent is illiterate or cannot write in English; or

    **(bb)** compliance with clause (iii)(I) would likely result in serious emotional harm to the child.

**(11) State educational agency responsible for general supervision**

**(A) In general**

The State educational agency is responsible for ensuring that--

**(i)** the requirements of this subchapter are met;

**(ii)** all educational programs for children with disabilities in the State, including all such programs administered by any other State agency or local agency--

    **(I)** are under the general supervision of individuals in the State who are responsible for educational programs for children with disabilities; and

    **(II)** meet the educational standards of the State educational agency; and

**(iii)** in carrying out this subchapter with respect to homeless children, the requirements of subtitle B of title VII of the McKinney-Vento Homeless Assistance Act (42 U.S.C. 11431 et seq.) are met.

**(B) Limitation**

Subparagraph (A) shall not limit the responsibility of agencies in the State other than the State educational agency to provide, or pay for some or all of the costs of, a free appropriate public education for any child with a disability in the State.

**(C) Exception**

Notwithstanding subparagraphs (A) and (B), the Governor (or another individual pursuant to State law), consistent with State law, may assign to any public agency in the State the responsibility of ensuring that the requirements of this subchapter are met with respect to children with disabilities who are convicted as adults under State law and incarcerated in adult prisons.

*** * ***

**(14) Personnel qualifications**

**(A) In general**

The State educational agency has established and maintains qualifications to ensure that personnel necessary to carry out this subchapter are appropriately and adequately prepared and trained, including that those personnel have the content knowledge and skills to serve children with disabilities.

**(B) Related services personnel and paraprofessionals**

The qualifications under subparagraph (A) include qualifications for related services personnel and paraprofessionals that--

**(i)** are consistent with any State-approved or State-recognized certification, licensing, registration, or other comparable requirements that apply to the professional discipline in which those personnel are providing special education or related services;

**(ii)** ensure that related services personnel who deliver services in their discipline or profession meet the requirements of clause (i) and have not had certification or licensure requirements waived on an emergency, temporary, or provisional basis; and

13

**(iii)** allow paraprofessionals and assistants who are appropriately trained and supervised, in accordance with State law, regulation, or written policy, in meeting the requirements of this subchapter to be used to assist in the provision of special education and related services under this subchapter to children with disabilities.

**(C) Qualifications for special education teachers**

The qualifications described in subparagraph (A) shall ensure that each person employed as a special education teacher in the State who teaches elementary school, middle school, or secondary school--

**(i)** has obtained full State certification as a special education teacher (including participating in an alternate route to certification as a special educator, if such alternate route meets minimum requirements described in section 2005.56(a)(2)(ii) of title 34, Code of Federal Regulations, as such section was in effect on November 28, 2008), or passed the State special education teacher licensing examination, and holds a license to teach in the State as a special education teacher, except with respect to any teacher teaching in a public charter school who shall meet the requirements set forth in the State's public charter school law;

**(ii)** has not had special education certification or licensure requirements waived on an emergency, temporary, or provisional basis; and

**(iii)** holds at least a bachelor's degree.

**(D) Policy**

In implementing this section, a State shall adopt a policy that includes a requirement that local educational agencies in the State take measurable steps to recruit, hire, train, and retain personnel who meet the applicable requirements described in this paragraph to provide special education and related services under this subchapter to children with disabilities.

**(E) Rule of construction**

14

Notwithstanding any other individual right of action that a parent or student may maintain under this subchapter, nothing in this paragraph shall be construed to create a right of action on behalf of an individual student for the failure of a particular State educational agency or local educational agency staff person to meet the applicable requirements described in this paragraph, or to prevent a parent from filing a complaint about staff qualifications with the State educational agency as provided for under this subchapter.

* * *

## § 1415. Procedural Safeguards

### (a) Establishment of procedures

Any State educational agency, State agency, or local educational agency that receives assistance under this subchapter shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies.

### (b) Types of procedures

The procedures required by this section shall include the following:

* * *

**(6)** An opportunity for any party to present a complaint--

**(A)** with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child; and

**(B)** which sets forth an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time

limitation for presenting such a complaint under this subchapter, in such time as the State law allows, except that the exceptions to the timeline described in subsection (f)(3)(D) shall apply to the timeline described in this subparagraph.

\* \* \*

**(f) Impartial due process hearing**

**(1) In general**

**(A) Hearing**

Whenever a complaint has been received under subsection (b)(6) or (k), the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency.

\* \* \*

**§ 7801. Definitions**

\* \* \*

**(23) Extended-year adjusted cohort graduation rate**

**(A) In general**

The term "extended-year adjusted cohort graduation rate" means the fraction--

**(i)** the denominator of which consists of the number of students who form the original cohort of entering first-time students in grade 9 enrolled in the high school no later than the date by which student membership data must be collected annually by State educational agencies for submission to the National Center for Education Statistics under section 9543 of this title, adjusted by--

  **(I)** adding the students who joined that cohort, after the date of the determination of the original cohort; and

16

**(II)** subtracting only those students who left that cohort, after the date of the determination of the original cohort, as described in subparagraph (B); and

**(ii)** the numerator of which--

**(I)** consists of the sum of--

**(aa)** the number of students in the cohort, as adjusted under clause (i), who earned a regular high school diploma before, during, or at the conclusion of--

**(AA)** one or more additional years beyond the fourth year of high school; or

**(BB)** a summer session immediately following the additional year of high school; and

**(bb)** all students with the most significant cognitive disabilities in the cohort, as adjusted under clause (i), assessed using the alternate assessment aligned to alternate academic achievement standards under section 6311(b)(2)(D) of this title and awarded a State-defined alternate diploma that is--

**(AA)** standards-based;

**(BB)** aligned with the State requirements for the regular high school diploma; and

**(CC)** obtained within the time period for which the State ensures the availability of a free appropriate public education under section 1412(a)(1) of this title; and

**(II)** shall not include any student awarded a recognized equivalent of a diploma, such as a general equivalency diploma, certificate of completion, certificate of attendance, or similar lesser credential.

* * *

17

## Code of Federal Regulations, Title 34

### § 76.532.  Use of funds for religion prohibited

(a) No State or subgrantee may use its grant or subgrant to pay for any of the following:

    (1) Religious worship, instruction, or proselytization.

    (2) Equipment or supplies to be used for any of the activities specified in paragraph (a)(1) of this section.

(b) [Reserved]

### § 300.17.  Free appropriate public education

Free appropriate public education or FAPE means special education and related services that—

    (a) Are provided at public expense, under public supervision and direction, and without charge;

    (b) Meet the standards of the SEA, including the requirements of this part;

    (c) Include an appropriate preschool, elementary school, or secondary school education in the State involved; and

    (d) Are provided in conformity with an individualized education program (IEP) that meets the requirements of §§ 300.320 through 300.324.

### § 300.28.  Local Educational Agency

(a) General. Local educational agency or LEA means a public board of education or other public authority legally constituted within a State for either administrative

control or direction of, or to perform a service function for, public elementary or secondary schools in a city, county, township, school district, or other political subdivision of a State, or for a combination of school districts or counties as are recognized in a State as an administrative agency for its public elementary schools or secondary schools.

\* \* \*

## § 300.41.  State Educational Agency

State educational agency or SEA means the State board of education or other agency or officer primarily responsible for the State supervision of public elementary schools and secondary schools, or, if there is no such officer or agency, an officer or agency designated by the Governor or by State law

## § 300.100.  Eligibility for Assistance

A State is eligible for assistance under Part B of the Act for a fiscal year if the State submits a plan that provides assurances to the Secretary that the State has in effect policies and procedures to ensure that the State meets the conditions in §§ 300.101 through 300.176.

## § 300.101.  Free appropriate public education (FAPE)

(a) General. A free appropriate public education must be available to all children residing in the State between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school, as provided for in § 300.530(d).

\* \* \*

## § 300.102.  Limitation – exception to FAPE for certain ages.

(a) General. The obligation to make FAPE available to all children with disabilities does not apply with respect to the following:

(1) Children aged 3, 4, 5, 18, 19, 20, or 21 in a State to the extent that its application to those children would be inconsistent with State law or practice, or the order of any court, respecting the provision of public education to children of those ages.

* * *

(3)(i) Children with disabilities who have graduated from high school with a regular high school diploma.

(ii) The exception in paragraph (a)(3)(i) of this section does not apply to children who have graduated from high school but have not been awarded a regular high school diploma.

(iii) Graduation from high school with a regular high school diploma constitutes a change in placement, requiring written prior notice in accordance with § 300.503.

(iv) As used in paragraphs (a)(3)(i) through (iii) of this section, the term regular high school diploma means the standard high school diploma awarded to the preponderance of students in the State that is fully aligned with State standards, or a higher diploma, except that a regular high school diploma shall not be aligned to the alternate academic achievement standards described in section 1111(b)(1)(E) of the ESEA. A regular high school diploma does not include a recognized equivalent of a diploma, such as a general equivalency diploma, certificate of completion, certificate of attendance, or similar lesser credential.

* * *

## § 300.114.  LRE requirements

(a) General.

(1) Except as provided in § 300.324(d)(2) (regarding children with disabilities in adult prisons), the State must have in effect policies and procedures to ensure that public agencies in the State meet the LRE requirements of this section and §§ 300.115 through 300.120.

(2) Each public agency must ensure that—

(i) To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are nondisabled; and

(ii) Special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only if the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

(b) Additional requirement—State funding mechanism—

(1) General.

(i) A State funding mechanism must not result in placements that violate the requirements of paragraph (a) of this section; and

(ii) A State must not use a funding mechanism by which the State distributes funds on the basis of the type of setting in which a child is served that will result in the failure to provide a child with a disability FAPE according to the unique needs of the child, as described in the child's IEP.

(2) Assurance. If the State does not have policies and procedures to ensure compliance with paragraph (b)(1) of this section, the State must provide the Secretary an assurance that the State will revise the funding mechanism as soon as feasible to ensure that the mechanism does not result in placements that violate that paragraph.

## § 300.115.  Continuum of alternative placements

(a) Each public agency must ensure that a continuum of alternative placements is available to meet the needs of children with disabilities for special education and related services.

(b) The continuum required in paragraph (a) of this section must—

(1) Include the alternative placements listed in the definition of special education under § 300.39 (instruction in regular classes, special classes, special schools, home instruction, and instruction in hospitals and institutions); and

(2) Make provision for supplementary services (such as resource room or itinerant instruction) to be provided in conjunction with regular class placement.

## § 300.116.  Placements

In determining the educational placement of a child with a disability, including a preschool child with a disability, each public agency must ensure that—

(a) The placement decision—

(1) Is made by a group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options; and

(2) Is made in conformity with the LRE provisions of this subpart, including §§ 300.114 through 300.118;

(b) The child's placement—

(1) Is determined at least annually;

(2) Is based on the child's IEP; and

22

(3) Is as close as possible to the child's home;

(c) Unless the IEP of a child with a disability requires some other arrangement, the child is educated in the school that he or she would attend if nondisabled;

(d) In selecting the LRE, consideration is given to any potential harmful effect on the child or on the quality of services that he or she needs; and

(e) A child with a disability is not removed from education in age-appropriate regular classrooms solely because of needed modifications in the general education curriculum.

## § 300.118.  Children in public or private institutions

Except as provided in § 300.149(d) (regarding agency responsibility for general supervision of some individuals in adult prisons), an SEA must ensure that § 300.114 is effectively implemented, including, if necessary, making arrangements with public and private institutions (such as a memorandum of agreement or special implementation procedures).

## § 300.121.  Procedural Safeguards

(a) General. The State must have procedural safeguards in effect to ensure that each public agency in the State meets the requirements of §§ 300.500 through 300.536.

(b) Procedural safeguards identified. Children with disabilities and their parents must be afforded the procedural safeguards identified in paragraph (a) of this section.

## § 300.130.  Definition of parentally-placed private school children with disabilities

Parentally-placed private school children with disabilities means children with disabilities enrolled by their parents in private, including religious, schools or facilities that meet the definition of elementary school in § 300.13 or secondary school in § 300.36, other than children with disabilities covered under §§ 300.145 through 300.147.

## § 300.131.  Child find for parentally-placed private school children with disabilities

(a) General. Each LEA must locate, identify, and evaluate all children with disabilities who are enrolled by their parents in private, including religious, elementary schools and secondary schools located in the school district served by the LEA, in accordance with paragraphs (b) through (e) of this section, and §§ 300.111 and 300.201.

(b) Child find design. The child find process must be designed to ensure—

(1) The equitable participation of parentally-placed private school children; and

(2) An accurate count of those children.

(c) Activities. In carrying out the requirements of this section, the LEA, or, if applicable, the SEA, must undertake activities similar to the activities undertaken for the agency's public school children.

(d) Cost. The cost of carrying out the child find requirements in this section, including individual evaluations, may not be considered in determining if an LEA has met its obligation under § 300.133.

(e) Completion period. The child find process must be completed in a time period comparable to that for students attending public schools in the LEA consistent with § 300.301.

24

(f) Out-of–State children. Each LEA in which private, including religious, elementary schools and secondary schools are located must, in carrying out the child find requirements in this section, include parentally-placed private school children who reside in a State other than the State in which the private schools that they attend are located.

### § 300.132. Provision of services for parentally-placed private school children with disabilities – basic requirement

(a) General. To the extent consistent with the number and location of children with disabilities who are enrolled by their parents in private, including religious, elementary schools and secondary schools located in the school district served by the LEA, provision is made for the participation of those children in the program assisted or carried out under Part B of the Act by providing them with special education and related services, including direct services determined in accordance with § 300.137, unless the Secretary has arranged for services to those children under the by-pass provisions in §§ 300.190 through 300.198.

(b) Services plan for parentally-placed private school children with disabilities. In accordance with paragraph (a) of this section and §§ 300.137 through 300.139, a services plan must be developed and implemented for each private school child with a disability who has been designated by the LEA in which the private school is located to receive special education and related services under this part.

(c) Record keeping. Each LEA must maintain in its records, and provide to the SEA, the following information related to parentally-placed private school children covered under §§ 300.130 through 300.144:

    (1) The number of children evaluated;

    (2) The number of children determined to be children with disabilities; and

    (3) The number of children served.

## § 300.133.  Expenditures

(a) Formula. To meet the requirement of § 300.132(a), each LEA must spend the following on providing special education and related services (including direct services) to parentally-placed private school children with disabilities:

(1) For children aged 3 through 21, an amount that is the same proportion of the LEA's total subgrant under section 611(f) of the Act as the number of private school children with disabilities aged 3 through 21 who are enrolled by their parents in private, including religious, elementary schools and secondary schools located in the school district served by the LEA, is to the total number of children with disabilities in its jurisdiction aged 3 through 21.

(2)(i) For children aged three through five, an amount that is the same proportion of the LEA's total subgrant under section 619(g) of the Act as the number of parentally-placed private school children with disabilities aged three through five who are enrolled by their parents in a private, including religious, elementary school located in the school district served by the LEA, is to the total number of children with disabilities in its jurisdiction aged three through five.

(ii) As described in paragraph (a)(2)(i) of this section, children aged three through five are considered to be parentally-placed private school children with disabilities enrolled by their parents in private, including religious, elementary schools, if they are enrolled in a private school that meets the definition of elementary school in § 300.13.

(3) If an LEA has not expended for equitable services all of the funds described in paragraphs (a)(1) and (a)(2) of this section by the end of the fiscal year for which

Congress appropriated the funds, the LEA must obligate the remaining funds for special education and related services (including direct services) to parentally-placed private school children with disabilities during a carry-over period of one additional year.

(b) Calculating proportionate amount. In calculating the proportionate amount of Federal funds to be provided for parentally-placed private school children with disabilities, the LEA, after timely and meaningful consultation with representatives of private schools under § 300.134, must conduct a thorough and complete child find process to determine the number of parentally-placed children with disabilities attending private schools located in the LEA. (See appendix B for an example of how proportionate share is calculated).

(c) Annual count of the number of parentally-placed private school children with disabilities.

(1) Each LEA must—

(i) After timely and meaningful consultation with representatives of parentally-placed private school children with disabilities (consistent with § 300.134), determine the number of parentally-placed private school children with disabilities attending private schools located in the LEA; and

(ii) Ensure that the count is conducted on any date between October 1 and December 1, inclusive, of each year.

(2) The count must be used to determine the amount that the LEA must spend on providing special education and related services to parentally-placed private school children with disabilities in the next subsequent fiscal year.

(d) Supplement, not supplant. State and local funds may supplement and in no case supplant the proportionate amount of Federal funds required to be expended for parentally-placed private school children with disabilities under this part.

27

## § 300.134. Consultation.

To ensure timely and meaningful consultation, an LEA, or, if appropriate, an SEA, must consult with private school representatives and representatives of parents of parentally-placed private school children with disabilities during the design and development of special education and related services for the children regarding the following:

(a) Child find. The child find process, including—

(1) How parentally-placed private school children suspected of having a disability can participate equitably; and

(2) How parents, teachers, and private school officials will be informed of the process.

(b) Proportionate share of funds. The determination of the proportionate share of Federal funds available to serve parentally-placed private school children with disabilities under § 300.133(b), including the determination of how the proportionate share of those funds was calculated.

(c) Consultation process. The consultation process among the LEA, private school officials, and representatives of parents of parentally-placed private school children with disabilities, including how the process will operate throughout the school year to ensure that parentally-placed children with disabilities identified through the child find process can meaningfully participate in special education and related services.

(d) Provision of special education and related services. How, where, and by whom special education and related services will be provided for parentally-placed private school children with disabilities, including a discussion of—

28

(1) The types of services, including direct services and alternate service delivery mechanisms; and

(2) How special education and related services will be apportioned if funds are insufficient to serve all parentally-placed private school children; and

(3) How and when those decisions will be made;

(e) Written explanation by LEA regarding services. How, if the LEA disagrees with the views of the private school officials on the provision of services or the types of services (whether provided directly or through a contract), the LEA will provide to the private school officials a written explanation of the reasons why the LEA chose not to provide services directly or through a contract.

## § 300.135.  Written affirmation

(a) When timely and meaningful consultation, as required by § 300.134, has occurred, the LEA must obtain a written affirmation signed by the representatives of participating private schools.

(b) If the representatives do not provide the affirmation within a reasonable period of time, the LEA must forward the documentation of the consultation process to the SEA.

## § 300.136.  Compliance

(a) General. A private school official has the right to submit a complaint to the SEA that the LEA—

(1) Did not engage in consultation that was meaningful and timely; or

(2) Did not give due consideration to the views of the private school official.

(b) Procedure.

(1) If the private school official wishes to submit a complaint, the official must provide to the SEA the basis of the noncompliance by the LEA with the applicable private school provisions in this part; and

(2) The LEA must forward the appropriate documentation to the SEA.

(3)(i) If the private school official is dissatisfied with the decision of the SEA, the official may submit a complaint to the Secretary by providing the information on noncompliance described in paragraph (b)(1) of this section; and (ii) The SEA must forward the appropriate documentation to the Secretary.

## § 300.137.  Equitable services determined

(a) No individual right to special education and related services. No parentally-placed private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school.

(b) Decisions.

(1) Decisions about the services that will be provided to parentally-placed private school children with disabilities under §§ 300.130 through 300.144 must be made in accordance with paragraph (c) of this section and § 300.134(d).

(2) The LEA must make the final decisions with respect to the services to be provided to eligible parentally-placed private school children with disabilities.

(c) Services plan for each child served under §§ 300.130 through 300.144. If a child with a disability is enrolled in a religious or other private school by the child's parents and will receive special education or related services from an LEA, the LEA must—

(1) Initiate and conduct meetings to develop, review, and revise a services plan for the child, in accordance with § 300.138(b); and

(2) Ensure that a representative of the religious or other private school attends each meeting. If the representative cannot attend, the LEA shall use other methods to ensure participation by the religious or other private school, including individual or conference telephone calls.

## § 300.138.  Equitable services provided

(a) General.

(1) The services provided to parentally-placed private school children with disabilities must be provided by personnel meeting the same standards as personnel providing services in the public schools, except that private elementary school and secondary school teachers who are providing equitable services to parentally-placed private school children with disabilities do not have to meet the special education teacher qualification requirements in § 300.156(c).

(2) Parentally-placed private school children with disabilities may receive a different amount of services than children with disabilities in public schools.

(b) Services provided in accordance with a services plan.

(1) Each parentally-placed private school child with a disability who has been designated to receive services under § 300.132 must have a services plan that describes the specific special education and related services that the LEA will provide to the child in light of the services that the LEA has determined, through the process described in §§ 300.134 and 300.137, it will make available to parentally-placed private school children with disabilities.

(2) The services plan must, to the extent appropriate—

31

(i) Meet the requirements of § 300.320, or for a child ages three through five, meet the requirements of § 300.323(b) with respect to the services provided; and

(ii) Be developed, reviewed, and revised consistent with §§ 300.321 through 300.324.

(c) Provision of equitable services.

(1) The provision of services pursuant to this section and §§ 300.139 through 300.143 must be provided:

(i) By employees of a public agency; or

(ii) Through contract by the public agency with an individual, association, agency, organization, or other entity.

(2) Special education and related services provided to parentally-placed private school children with disabilities, including materials and equipment, must be secular, neutral, and nonideological.

## § 300.139.  Location of services and transportation

(a) Services on private school premises. Services to parentally-placed private school children with disabilities may be provided on the premises of private, including religious, schools, to the extent consistent with law.

(b) Transportation—

(1) General.

(i) If necessary for the child to benefit from or participate in the services provided under this part, a parentally-placed private school child with a disability must be provided transportation—

(A) From the child's school or the child's home to a site other than the private school; and

(B) From the service site to the private school, or to the child's home, depending on the timing of the services.

(ii) LEAs are not required to provide transportation from the child's home to the private school.

(2) Cost of transportation. The cost of the transportation described in paragraph (b)(1)(i) of this section may be included in calculating whether the LEA has met the requirement of § 300.133.

## § 300.140.  Due process complaints and state complaints

(a) Due process not applicable, except for child find.

(1) Except as provided in paragraph (b) of this section, the procedures in §§ 300.504 through 300.519 do not apply to complaints that an LEA has failed to meet the requirements of §§ 300.132 through 300.139, including the provision of services indicated on the child's services plan.

(b) Child find complaints—to be filed with the LEA in which the private school is located.

(1) The procedures in §§ 300.504 through 300.519 apply to complaints that an LEA has failed to meet the child find requirements in § 300.131, including the requirements in §§ 300.300 through 300.311.

(2) Any due process complaint regarding the child find requirements (as described in paragraph (b)(1) of this section) must be filed with the LEA in which the private school is located and a copy must be forwarded to the SEA.

(c) State complaints.

(1) Any complaint that an SEA or LEA has failed to meet the requirements in §§ 300.132 through 300.135 and 300.137 through 300.144 must be filed in accordance with the procedures described in §§ 300.151 through 300.153.

(2) A complaint filed by a private school official under § 300.136(a) must be filed with the SEA in accordance with the procedures in § 300.136(b).

## § 300.141.  Requirement that funds not benefit a private school

(a) An LEA may not use funds provided under section 611 or 619 of the Act to finance the existing level of instruction in a private school or to otherwise benefit the private school.

(b) The LEA must use funds provided under Part B of the Act to meet the special education and related services needs of parentally-placed private school children with disabilities, but not for meeting—

(1) The needs of a private school; or

(2) The general needs of the students enrolled in the private school.

## § 300.142.  Use of personnel

(a) Use of public school personnel. An LEA may use funds available under sections 611 and 619 of the Act to make public school personnel available in other than public facilities—

(1) To the extent necessary to provide services under §§ 300.130 through 300.144 for parentally-placed private school children with disabilities; and

(2) If those services are not normally provided by the private school.

(b) Use of private school personnel. An LEA may use funds available under sections 611 and 619 of the Act to pay for the services of an employee of a private school to provide services under §§ 300.130 through 300.144 if—

(1) The employee performs the services outside of his or her regular hours of duty; and

(2) The employee performs the services under public supervision and control.

### § 300.143.  Separate classes prohibited

An LEA may not use funds available under section 611 or 619 of the Act for classes that are organized separately on the basis of school enrollment or religion of the children if—

(a) The classes are at the same site; and

(b) The classes include children enrolled in public schools and children enrolled in private schools.

### § 300.144.  Property, equipment, and supplies

(a) A public agency must control and administer the funds used to provide special education and related services under §§ 300.137 through 300.139, and hold title to and administer materials, equipment, and property purchased with those funds for the uses and purposes provided in the Act.

(b) The public agency may place equipment and supplies in a private school for the period of time needed for the Part B program.

(c) The public agency must ensure that the equipment and supplies placed in a private school—

(1) Are used only for Part B purposes; and

(2) Can be removed from the private school without remodeling the private school facility.

(d) The public agency must remove equipment and supplies from a private school if—

(1) The equipment and supplies are no longer needed for Part B purposes; or

(2) Removal is necessary to avoid unauthorized use of the equipment and supplies for other than Part B purposes.

(e) No funds under Part B of the Act may be used for repairs, minor remodeling, or construction of private school facilities.

## § 300.145.  Applicability of §§ 300.146 through 300.147

Sections 300.146 through 300.147 apply only to children with disabilities who are or have been placed in or referred to a private school or facility by a public agency as a means of providing special education and related services.

## § 300.146.  Responsibility of SEA

Each SEA must ensure that a child with a disability who is placed in or referred to a private school or facility by a public agency—

(a) Is provided special education and related services—

(1) In conformance with an IEP that meets the requirements of §§ 300.320 through 300.325; and

(2) At no cost to the parents;

(b) Is provided an education that meets the standards that apply to education provided by the SEA and LEAs including the requirements of this part, except for § 300.156(c); and

(c) Has all of the rights of a child with a disability who is served by a public agency.

## § 300.147.  Implementation by SEA

In implementing § 300.146, the SEA must—

(a) Monitor compliance through procedures such as written reports, on-site visits, and parent questionnaires;

(b) Disseminate copies of applicable standards to each private school and facility to which a public agency has referred or placed a child with a disability; and

(c) Provide an opportunity for those private schools and facilities to participate in the development and revision of State standards that apply to them.

## § 300.320.  Definition of individualized education program

(a) General. As used in this part, the term individualized education program or IEP means a written statement for each child with a disability that is developed, reviewed, and revised in a meeting in accordance with §§ 300.320 through 300.324, and that must include—

(1) A statement of the child's present levels of academic achievement and functional performance, including—

(i) How the child's disability affects the child's involvement and progress in the general education curriculum (i.e., the same curriculum as for nondisabled children); or

(ii) For preschool children, as appropriate, how the disability affects the child's participation in appropriate activities;

(2)(i) A statement of measurable annual goals, including academic and functional goals designed to—

(A) Meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general education curriculum; and

(B) Meet each of the child's other educational needs that result from the child's disability;

(ii) For children with disabilities who take alternate assessments aligned to alternate academic achievement standards, a description of benchmarks or short-term objectives;

(3) A description of—

(i) How the child's progress toward meeting the annual goals described in paragraph (2) of this section will be measured; and

(ii) When periodic reports on the progress the child is making toward meeting the annual goals (such as through the use of quarterly or other periodic reports, concurrent with the issuance of report cards) will be provided;

(4) A statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable, to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided to enable the child—

(i) To advance appropriately toward attaining the annual goals;

(ii) To be involved in and make progress in the general education curriculum in accordance with paragraph (a)(1) of this section, and to participate in extracurricular and other nonacademic activities; and

(iii) To be educated and participate with other children with disabilities and nondisabled children in the activities described in this section;

(5) An explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class and in the activities described in paragraph (a)(4) of this section;

(6)(i) A statement of any individual appropriate accommodations that are necessary to measure the academic achievement and functional performance of the child on State and districtwide assessments consistent with section 612(a)(16) of the Act; and

(ii) If the IEP Team determines that the child must take an alternate assessment instead of a particular regular State or districtwide assessment of student achievement, a statement of why—

    (A) The child cannot participate in the regular assessment; and

    (B) The particular alternate assessment selected is appropriate for the child; and

(7) The projected date for the beginning of the services and modifications described in paragraph (a)(4) of this section, and the anticipated frequency, location, and duration of those services and modifications.

(b) Transition services. Beginning not later than the first IEP to be in effect when the child turns 16, or younger if determined appropriate by the IEP Team, and updated annually, thereafter, the IEP must include—

(1) Appropriate measurable postsecondary goals based upon age appropriate transition assessments related to training, education, employment, and, where appropriate, independent living skills; and

(2) The transition services (including courses of study) needed to assist the child in reaching those goals.

(c) Transfer of rights at age of majority. Beginning not later than one year before the child reaches the age of majority under State law, the IEP must include a

statement that the child has been informed of the child's rights under Part B of the Act, if any, that will transfer to the child on reaching the age of majority under § 300.520.

(d) Construction. Nothing in this section shall be construed to require—

(1) That additional information be included in a child's IEP beyond what is explicitly required in section 614 of the Act; or

(2) The IEP Team to include information under one component of a child's IEP that is already contained under another component of the child's IEP.


## § 300.325.  Private school placement by public agencies

(a) Developing IEPs.

(1) Before a public agency places a child with a disability in, or refers a child to, a private school or facility, the agency must initiate and conduct a meeting to develop an IEP for the child in accordance with §§ 300.320 and 300.324.

(2) The agency must ensure that a representative of the private school or facility attends the meeting. If the representative cannot attend, the agency must use other methods to ensure participation by the private school or facility, including individual or conference telephone calls.

(b) Reviewing and revising IEPs.

(1) After a child with a disability enters a private school or facility, any meetings to review and revise the child's IEP may be initiated and conducted by the private school or facility at the discretion of the public agency.

(2) If the private school or facility initiates and conducts these meetings, the public agency must ensure that the parents and an agency representative—

(i) Are involved in any decision about the child's IEP; and

(ii) Agree to any proposed changes in the IEP before those changes are implemented.

(c) Responsibility. Even if a private school or facility implements a child's IEP, responsibility for compliance with this part remains with the public agency and the SEA.

## § 300.600.  State monitoring and enforcement

(a) The State must—

(1) Monitor the implementation of this part;

(2) Make determinations annually about the performance of each LEA using the categories in § 300.603(b)(1);

(3) Enforce this part, consistent with § 300.604, using appropriate enforcement mechanisms, which must include, if applicable, the enforcement mechanisms identified in § 300.604(a)(1) (technical assistance), (a)(3) (conditions on funding of an LEA), (b)(2)(i) (a corrective action plan or improvement plan), (b)(2)(v) (withholding funds, in whole or in part, by the SEA), and (c)(2) (withholding funds, in whole or in part, by the SEA); and

(4) Report annually on the performance of the State and of each LEA under this part, as provided in § 300.602(b)(1)(i)(A) and (b)(2).

(b) The primary focus of the State's monitoring activities must be on—

(1) Improving educational results and functional outcomes for all children with disabilities; and

(2) Ensuring that public agencies meet the program requirements under Part B of the Act, with a particular emphasis on those requirements that are most closely related to improving educational results for children with disabilities.

(c) As a part of its responsibilities under paragraph (a) of this section, the State must use quantifiable indicators and such qualitative indicators as are needed to adequately measure performance in the priority areas identified in paragraph (d) of this section, and the indicators established by the Secretary for the State performance plans.

(d) The State must monitor the LEAs located in the State, using quantifiable indicators in each of the following priority areas, and using such qualitative indicators as are needed to adequately measure performance in those areas:

(1) Provision of FAPE in the least restrictive environment.

(2) State exercise of general supervision, including child find, effective monitoring, the use of resolution meetings, mediation, and a system of transition services as defined in § 300.43 and in 20 U.S.C. 1437(a)(9).

(3) Disproportionate representation of racial and ethnic groups in special education and related services, to the extent the representation is the result of inappropriate identification.

(e) In exercising its monitoring responsibilities under paragraph (d) of this section, the State must ensure that when it identifies noncompliance with the requirements of this part by LEAs, the noncompliance is corrected as soon as possible, and in no case later than one year after the State's identification of the noncompliance.

## California Education Code

### § 51225.3. Requirements for graduation

(a) A pupil shall complete all of the following while in grades 9 to 12, inclusive, in order to receive a diploma of graduation from high school:

(1) At least the following numbers of courses in the subjects specified, each course having a duration of one year, unless otherwise specified:

* * *

(2) Other coursework requirements adopted by the governing board of the school district.

* * *

## § 51225.31. Statewide course requirements; individuals with exceptional needs

(a)(1) Notwithstanding any other law, a local educational agency shall exempt an individual with exceptional needs who satisfies the eligibility criteria described in subdivision (b) from all courses and other requirements adopted by the governing board or governing body of the local educational agency that are additional to the statewide course requirements specified in Section 51225.3 and shall award the pupil a diploma of graduation from high school, as described in Section 7801(23)(A)(ii)(I)(bb) of Title 20 of the United States Code.

(2) In accordance with Section 300.102(a)(3) of Title 34 of the Code of Federal Regulations, the award of a diploma of graduation from high school pursuant to this subdivision does not change a local educational agency's obligation to provide a free appropriate public education until 22 years of age, or otherwise constitute a change in placement.

(b) An individual with exceptional needs, who entered ninth grade in the 2022-23 school year or later, shall be eligible for the exemption and award described in subdivision (a) if their individualized education program provides for all of the following:

(1) The pupil's individualized education program team has deemed the pupil eligible to take the state alternate assessments as described in subdivision (k) of Section 60640.

(2) The pupil is required to complete state standards aligned coursework to meet the statewide course requirements specified in Section 51225.3.

(c) An individual with exceptional needs who meets the criteria for the alternative diploma pathway pursuant to this section shall be eligible to participate in any graduation ceremony and any school activity related to graduation with their grade-level peers with and without disabilities. Participation in graduation activities that are subject to this section shall not be construed as termination of the provision of free appropriate public education, consistent with Section 300.102(a)(3)(ii) of Title 34 of the Code of Federal Regulations, unless the individualized education program team, which includes the parent and pupil, as defined in Sections 300.320 and 300.321 of Title 34 of the Code of Federal Regulations, has determined the pupil has completed their high school experience.

(d) For purposes of this section, "local educational agency" includes a school district, county office of education, charter school, or state special school.

## § 56026. Individuals with exceptional needs

"Individuals with exceptional needs" means those persons who satisfy all the following:

(a) Identified by an individualized education program team as a child with a disability, as that phrase is defined in Section 1401(3)(A) of Title 20 of the United States Code.

(b) Their impairment, as described by subdivision (a), requires instruction and services which cannot be provided with modification of the regular school program in order to ensure that the individual is provided a free appropriate public education pursuant to Section 1401(9) of Title 20 of the United States Code.

(c) Come within one of the following age categories:

(1) Younger than three years of age and identified by the local educational agency as requiring intensive special education and services, as defined by the board.

(2) Between the ages of three to five years, inclusive, and identified by the local educational agency pursuant to Section 56441.11.

(3) Between the ages of five and 18 years, inclusive.

(4) Between the ages of 19 and 21 years, inclusive; enrolled in or eligible for a program under this part or other special education program prior to his or her 19th birthday; and has not yet completed his or her prescribed course of study or who has not met proficiency standards or has not graduated from high school with a regular high school diploma.

(A) Any person who becomes 22 years of age during the months of January to June, inclusive, while participating in a program under this part may continue his or her participation in the program for the remainder of the current fiscal year, including any extended school year program for individuals with exceptional needs established pursuant to Section 3043 of Title 5 of the California Code of Regulations and Section 300.106 of Title 34 of the Code of Federal Regulations.

(B) Any person otherwise eligible to participate in a program under this part shall not be allowed to begin a new fiscal year in a program if he or she becomes 22 years of age in July, August, or September of that new fiscal year. However, if a person is in a year-round school program and is completing his or her

45

individualized education program in a term that extends into the new fiscal year, then the person may complete that term.

(C) Any person who becomes 22 years of age during the months of October, November, or December while participating in a program under this act shall be terminated from the program on December 31 of the current fiscal year, unless the person would otherwise complete his or her individualized education program at the end of the current fiscal year.

(D) No local educational agency may develop an individualized education program that extends these eligibility dates, and in no event may a pupil be required or allowed to attend school under the provisions of this part beyond these eligibility dates solely on the basis that the individual has not met his or her goals or objectives.

(d) Meet eligibility criteria set forth in regulations adopted by the board, including, but not limited to, those adopted pursuant to Article 2.5 (commencing with Section 56333) of Chapter 4.

(e) Unless disabled within the meaning of subdivisions (a) to (d), inclusive, pupils whose educational needs are due primarily to limited English proficiency; a lack of instruction in reading or mathematics; temporary physical disabilities; social maladjustment; or environmental, cultural, or economic factors are not individuals with exceptional needs.

## § 56028.5.  Public agency

"Public agency" means a school district, county office of education, special education local plan area, a nonprofit public charter school that is not otherwise included as a local educational agency and is not a school within a local educational agency, or any other public agency under the auspices of the state or any political subdivisions of the state providing special education or related

services to individuals with exceptional needs. For purposes of this part, "public agency," means all of the public agencies listed in Section 300.33 of Title 34 of the Code of Federal Regulations.

## § 56034.  Nonpublic, nonsectarian school

"Nonpublic, nonsectarian school" means a private, nonsectarian school that enrolls individuals with exceptional needs pursuant to an individualized education program and is certified by the department. It does not include an organization or agency that operates as a public agency or offers public service, including, but not limited to, a state or local agency, an affiliate of a state or local agency, including a private, nonprofit corporation established or operated by a state or local agency, or a public university or college. A nonpublic, nonsectarian school also shall meet standards as prescribed by the Superintendent and board.

## § 56101.  Waivers of code or regulations

(a) A public agency, as defined in Section 56028.5, may request the board to grant a waiver of any provision of this code or regulations adopted pursuant to that provision if the waiver is necessary or beneficial to the content and implementation of the pupil's individualized education program and does not abrogate any right provided individuals with exceptional needs and their parents or guardians under the federal Individuals with Disabilities Education Act (20 U.S.C. Sec. 1400 et seq.), or affect the compliance of a local educational agency with the federal Individuals with Disabilities Education Act (20 U.S.C. Sec. 1400 et seq.), Section 504 of the federal Rehabilitation Act of 1973 (29 U.S.C. Sec. 794), and federal regulations relating thereto.

(b) The board may grant, in whole or in part, any request pursuant to subdivision (a) when the facts indicate that failure to do so would hinder implementation of the pupil's individualized education program or compliance by a local educational agency with federal mandates for a free appropriate public education for children or youth with disabilities.

## § 56345.  Individualized education program; contents; legislative intent; use of state moneys; hearing impaired children

(a) The individualized education program is a written statement for each individual with exceptional needs that is developed, reviewed, and revised in accordance with this section, as required by Section 1414(d) of Title 20 of the United States Code, and that includes all of the following:

(1) A statement of the individual's present levels of academic achievement and functional performance, including all of the following:

(A) The manner in which the disability of the individual affects their involvement and progress in the general education curriculum.

(B) For preschool children, as appropriate, the manner in which the disability affects their participation in appropriate activities.

(C) For individuals with exceptional needs who take alternate assessments aligned to alternate achievement standards, a description of benchmarks or short-term objectives.

(2) A statement of measurable annual goals, including academic and functional goals, designed to do both of the following:

(A) Meet the needs of the individual that result from the disability of the individual to enable the pupil to be involved in and make progress in the general education curriculum.

48

(B) Meet each of the other educational needs of the pupil that result from the disability of the individual.

(3) A description of the manner in which the progress of the pupil toward meeting the annual goals described in paragraph (2) will be measured and when periodic reports on the progress the pupil is making toward meeting the annual goals, such as through the use of quarterly or other periodic reports, concurrent with the issuance of report cards, will be provided.

(4) A statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable, to be provided to the pupil, or on behalf of the pupil, and a statement of the program modifications or supports for school personnel that will be provided to enable the pupil to do all of the following:

(A) To advance appropriately toward attaining the annual goals.

(B) To be involved in and make progress in the general education curriculum in accordance with paragraph (1) and to participate in extracurricular and other nonacademic activities.

(C) To be educated and participate with other individuals with exceptional needs and nondisabled pupils in the activities described in this subdivision.

(5) An explanation of the extent, if any, to which the pupil will not participate with nondisabled pupils in the regular class and in the activities described in subparagraph (C) of paragraph (4).

(6)(A) A statement of individual appropriate accommodations that are necessary to measure the academic achievement and functional performance of the pupil on state and districtwide assessments consistent with Section 1412(a)(16)(A) of Title 20 of the United States Code.

(B) If the individualized education program team determines that the pupil shall take an alternate assessment instead of a particular state or districtwide assessment of pupil achievement, a statement of both of the following:

(i) The reason why the pupil cannot participate in the regular assessment.

(ii) The reason why the particular alternate assessment selected is appropriate for the pupil.

(7) The projected date for the beginning of the services and modifications described in paragraph (4), and the anticipated frequency, location, and duration of those services and modifications.

(8) Beginning not later than the first individualized education program to be in effect when the pupil is 16 years of age, or younger if determined appropriate by the individualized education program team, and updated annually thereafter, both of the following shall be included:

(A) Appropriate measurable postsecondary goals based upon age-appropriate transition assessments related to training, education, employment, and where appropriate, independent living skills.

(B) The transition services, as defined in Section 56345.1, including courses of study, needed to assist the pupil in reaching those goals.

(9)(A) A description of the means by which the individualized education program will be provided under emergency conditions, as described in Section 46392, in which instruction or services, or both, cannot be provided to the pupil either at the school or in person for more than 10 school days. The description shall include all of the following:

(i) Special education and related services.

(ii) Supplementary aids and services.

(iii) Transition services, as defined in Section 56345.1.

(iv) Extended school year services pursuant to Section 300.106 of Title 34 of the Code of Federal Regulations.

(B) Subparagraph (A) applies, on or after the operative date of this paragraph, to the development of an initial individualized education program or the next regularly scheduled revision of an individualized education program that has not already met the requirements of subparagraph (A).

(C) Public health orders shall be taken into account in implementing subparagraph (A).

(b) If appropriate, the individualized education program shall also include, but not be limited to, all of the following:

(1) For pupils in grades 7 to 12, inclusive, any alternative means and modes necessary for the pupil to complete the prescribed course of study of the district and to meet or exceed proficiency standards for graduation.

(2) For individuals whose native language is a language other than English, linguistically appropriate goals, objectives, programs, and services.

(3) Pursuant to Section 300.106 of Title 34 of the Code of Federal Regulations, extended school year services shall be included in the individualized education program and provided to the pupil if the individualized education program team of the pupil determines, on an individual basis, that the services are necessary for the provision of a free appropriate public education to the pupil.

(4) Provision for the transition into the regular class program if the pupil is to be transferred from a special class or nonpublic, nonsectarian school into a regular class in a public school for any part of the schoolday, including both of the following:

51

(A) A description of activities provided to integrate the pupil into the regular education program. The description shall indicate the nature of each activity, and the time spent on the activity each day or week.

(B) A description of the activities provided to support the transition of pupils from the special education program into the regular education program.

(5) For pupils with low-incidence disabilities, specialized services, materials, and equipment, consistent with guidelines established pursuant to Section 56136.

(c) It is the intent of the Legislature in requiring individualized education programs, that the local educational agency is responsible for providing the services delineated in the individualized education program. However, the Legislature recognizes that some pupils may not meet or exceed the growth projected in the annual goals and objectives of the individualized education program of the pupil.

\* \* \*

## § 56365.  Services provided by nonpublic, nonsectarian schools and agencies; contracts; allowances for services; tuition; report; out-of-state programs

(a) Services provided by nonpublic, nonsectarian schools, as defined pursuant to Section 56034, and nonpublic, nonsectarian agencies, as defined pursuant to Section 56035, shall be made available. These services shall be provided pursuant to Section 56366, and in accordance with Section 300.146 of Title 34 of the Code of Federal Regulations, under contract with the local educational agency to provide the appropriate special educational facilities, special education, or designated instruction and services required by the individual with exceptional needs if no appropriate public education program is available.

(b) Pupils enrolled in nonpublic, nonsectarian schools and agencies under this section shall be deemed to be enrolled in public schools for all purposes of Chapter 4 (commencing with Section 41600) of Part 24 of Division 3 and Section 42238.02. The local educational agency shall be eligible to receive allowances under Articles 3 (commencing with Section 56836.165) and 4 (commencing with Section 56836.20) of Chapter 7.2 for services that are provided to individuals with exceptional needs pursuant to the contract.

(c) If the state participates in the federal program of assistance for state-operated or state-supported programs for individuals with exceptional needs (Public Law 89-313, SEC. 6), pupils enrolled in nonpublic, nonsectarian schools shall be deemed to be enrolled in state-supported institutions for all purposes of that program and shall be eligible to receive allowances under Chapter 7.2 (commencing with Section 56836) for supplemental services provided to individuals with exceptional needs pursuant to a contract with a local educational agency. In order to participate in the federal program, the state shall find that participation will not result in any additional expenditures from the General Fund.

(d) The local educational agency shall pay to the nonpublic, nonsectarian school the full amount of the tuition or to the nonpublic, nonsectarian agency fees, as applicable, for individuals with exceptional needs that are enrolled in programs or receiving services provided by the nonpublic, nonsectarian school or agency pursuant to the contract.

(e) Before contracting with a nonpublic, nonsectarian school or agency outside of this state, the local educational agency shall document its efforts to use public schools or to locate an appropriate nonpublic, nonsectarian school or agency program, or both, within the state.

(f) If a local educational agency places a pupil with a nonpublic, nonsectarian school or agency outside of this state, the pupil's individualized education program team shall submit a report to the Superintendent within 15 days of the placement decision. The report shall include information about the special education and related services provided by the out-of-state program placement and the costs of the special education and related services provided, and shall indicate the efforts of the local educational agency to locate an appropriate public school or nonpublic, nonsectarian school or agency, or a combination thereof, within the state. The Superintendent shall submit a report to the board on all placements made outside of this state.

(g) If a local educational agency decides to place a pupil with a nonpublic, nonsectarian school or agency outside of this state, that local educational agency shall indicate the anticipated date for the return of the pupil to a public or nonpublic, nonsectarian school or agency placement, or a combination thereof, located in the state and shall document efforts during the previous placement year to return the pupil.

(h) In addition to meeting the requirements of Section 56366.1, a nonpublic, nonsectarian school or agency that operates a program outside of this state shall be certified or licensed by that state to provide, respectively, special education and related services and designated instruction and related services to pupils under the federal Individuals with Disabilities Education Act (20 U.S.C. Sec. 1400 et seq.).

(i) A nonpublic, nonsectarian school or agency that is located outside of this state is eligible for certification pursuant to Section 56366.1 only if a pupil is enrolled in a program operated by that school or agency pursuant to the recommendation of an individualized education program team in California, and if that pupil's parents or guardians reside in California.

54

(j) In accordance with Section 300.147(b) and (c) of Title 34 of the Code of Federal Regulations, the department shall disseminate copies of applicable standards to each nonpublic, nonsectarian school and nonpublic, nonsectarian agency to which a local educational agency has referred or placed an individual with exceptional needs and shall provide an opportunity for those nonpublic, nonsectarian schools and nonpublic, nonsectarian agencies to participate in the development and revision of state standards that apply to those entities.

### § 56366.  Nonpublic, nonsectarian schools; legislative intent; alternative special education service; contracts; warrants; certification; standards

It is the intent of the Legislature that the role of a nonpublic, nonsectarian school or agency shall be maintained and continued as an alternative special education service available to a local educational agency and parents.

(a) The master contract for nonpublic, nonsectarian school or agency services shall be developed in accordance with the following provisions:

(1) The master contract shall specify the general administrative and financial agreements, including teacher-to-pupil ratios, between the nonpublic, nonsectarian school or agency and the local educational agency to provide the special education and designated instruction and services, as well as transportation specified in each pupil's individualized education program. The administrative provisions of the contract also shall include procedures for recordkeeping and documentation, and the maintenance of school records by the contracting local educational agency to ensure that appropriate high school graduation credit is received by each pupil. The contract may allow for partial or full-time attendance at the nonpublic, nonsectarian school.

(2)(A) The master contract shall include an individual services agreement for each pupil placed by a local educational agency that will be negotiated for the length of

time for which nonpublic, nonsectarian school or agency special education and designated instruction and services are specified in the pupil's individualized education program.

(B) The master contract shall include a description of the process being utilized by the local educational agency to oversee and evaluate placements in nonpublic, nonsectarian schools, as required by federal law. This description shall include a method for evaluating whether each pupil is making appropriate educational progress. At least once every year, the local educational agency shall do all of the following and, to the extent possible, the following shall be conducted as part of the development and provision of an individualized education program:

(i) Evaluate the educational progress of each pupil placed in a nonpublic, nonsectarian school, including all state assessment results pursuant to the requirements of Section 52052.

(ii) Consider whether or not the needs of the pupil continue to be best met at the nonpublic, nonsectarian school and whether changes to the individualized education program of the pupil are necessary, including whether the pupil may be transitioned to a public school setting. This consideration shall be made at the meeting required by subdivision (d) of Section 56343.

(C) In the case of a nonpublic, nonsectarian school that is owned, operated by, or associated with a licensed children's institution, the master contract shall include a method for evaluating whether the nonpublic, nonsectarian school is in compliance with the mandate set forth in Section 56366.9 of this code and subdivision (b) of Section 1501.1 of the Health and Safety Code.

(3)(A) Changes in educational instruction, services, or placement provided under contract may only be made on the basis of revisions to a pupil's individualized education program.

(B) At any time during the term of the contract or individual services agreement, the parent, the nonpublic, nonsectarian school or agency, or the local educational agency may request a review of a pupil's individualized education program by the individualized education program team. Changes in the administrative or financial agreements of the master contract that do not alter the individual services agreement that outlines each pupil's educational instruction, services, or placement may be made at any time during the term of the contract as mutually agreed by the nonpublic, nonsectarian school or agency and the local educational agency.

(4) The master contract or individual services agreement may be terminated for cause. The cause shall not be the availability of a public class initiated during the period of the contract unless the parent agrees to the transfer of the pupil to a public school program. To terminate the contract either party shall give 20 days' notice.

(5) The nonpublic, nonsectarian school or agency shall provide all services specified in an individualized education program, unless the nonpublic, nonsectarian school or agency and the local educational agency agree otherwise in the contract or individual services agreement.

(6) Related services provided pursuant to a nonpublic, nonsectarian agency master contract shall only be provided during the period of a pupil's regular or extended school year program, or both, unless otherwise specified by the pupil's individualized education program.

(7) The nonpublic, nonsectarian school or agency shall report attendance of pupils receiving special education and designated instruction and services, as defined by Section 46307, for purposes of submitting a warrant for tuition to each contracting local educational agency.

(8)(A) A nonpublic, nonsectarian school is subject to the alternative accountability system developed pursuant to Section 52052 in the same manner as public schools

and each pupil placed in the nonpublic, nonsectarian school by a local educational agency shall be tested by qualified staff of the nonpublic, nonsectarian school in accordance with that accountability program. The test results shall be reported by the nonpublic, nonsectarian school to the department.

(B) Beginning with the 2006-07 school year testing cycle, each nonpublic, nonsectarian school shall determine its California Assessment of Student Performance and Progress period subject to subdivisions (b) and (c) of Section 60640. The nonpublic, nonsectarian school shall determine this period based on completion of 85 percent of the instructional year at that nonpublic, nonsectarian school, plus and minus 10 days, resulting in a 21-day period. Each nonpublic, nonsectarian school shall notify the district of residence of a pupil enrolled in the school of its testing period. Staff at the nonpublic, nonsectarian school who administer the assessments shall attend the regular testing training sessions provided by the district of residence. If staff from a nonpublic, nonsectarian school have received training from one local educational agency, that training shall be sufficient for all local educational agencies that send pupils to the nonpublic, nonsectarian school. The district of residence shall order testing materials for its pupils that have been placed in the nonpublic, nonsectarian school. The board shall adopt regulations to facilitate the distribution of and collection of testing materials.

(9) With respect to a nonpublic, nonsectarian school, the school shall prepare a school accountability report card in accordance with Section 33126.

(b)(1) The master contract or individual services agreement shall not include special education transportation provided through the use of services or equipment owned, leased, or contracted by a local educational agency for pupils enrolled in the nonpublic, nonsectarian school or agency unless provided directly or subcontracted by that nonpublic, nonsectarian school or agency.

(2) The Superintendent shall withhold 20 percent of the amount apportioned to a local educational agency for costs related to the provision of nonpublic, nonsectarian school or agency placements if the Superintendent finds that the local educational agency is in noncompliance with this subdivision. This amount shall be withheld from the apportionments in the fiscal year following the Superintendent's finding of noncompliance. The Superintendent shall take other appropriate actions to prevent noncompliant practices from occurring and report to the Legislature on those actions.

(c)(1) If a pupil is enrolled in a nonpublic, nonsectarian school or agency with the approval of the local educational agency prior to agreement to a contract or individual services agreement, the local educational agency shall issue a warrant, upon submission of an attendance report and claim, for an amount equal to the number of creditable days of attendance at the per diem tuition rate agreed upon prior to the enrollment of the pupil. This provision shall be allowed for 90 days during which time the contract shall be consummated.

(2) If after 60 days the master contract or individual services agreement has not been finalized as prescribed in paragraph (1) of subdivision (a), either party may appeal to the county superintendent of schools, if the county superintendent of schools is not participating in the local plan involved in the nonpublic, nonsectarian school or agency contract, or the Superintendent, if the county superintendent of schools is participating in the local plan involved in the contract, to negotiate the contract. Within 30 days of receipt of this appeal, the county superintendent of schools or the Superintendent, or his or her designee, shall mediate the formulation of a contract, which shall be binding upon both parties.

(d) A master contract for special education and related services provided by a nonpublic, nonsectarian school or agency may not be authorized under this part,

unless the school or agency has been certified as meeting those standards relating to the required special education and specified related services and facilities for individuals with exceptional needs. The certification shall result in the nonpublic, nonsectarian school or agency receiving approval to educate pupils under this part for a period no longer than 18 months from the date of the initial approval.

(e) By September 30, 1998, the procedures, methods, and regulations for the purposes of contracting for nonpublic, nonsectarian school and agency services pursuant to this section and for reimbursement pursuant to Sections 56836.165 and 56836.20 shall be developed by the Superintendent in consultation with statewide organizations representing providers of special education and designated instruction and services. The regulations shall be established by rules and regulations issued by the board.

### § 56366.1.  Nonpublic, nonsectarian school or agency; application for certification; multiple sites; review and oversight; expansion of services; conditions required for certification; fees; staff credentials; rules and regulations; safety standards

(a) A nonpublic, nonsectarian school or agency that seeks certification shall file an application with the Superintendent on forms provided by the department, and shall include all of the following information on the application:

(1) A description of the special education and designated instruction and services provided to individuals with exceptional needs if the application is for nonpublic, nonsectarian school certification.

(2) A description of the designated instruction and services provided to individuals with exceptional needs if the application is for nonpublic, nonsectarian agency certification.

(3) A list of appropriately qualified staff, a description of the credential, license, or registration that qualifies each staff member rendering special education or designated instruction and services to do so, and copies of their credentials, licenses, or certificates of registration with the appropriate state or national organization that has established standards for the service rendered.

(4)(A)(i) Commencing with the 2020-21 school year, documentation that the nonpublic, nonsectarian school or agency will train staff who will have contact or interaction with pupils during the schoolday in the use of evidence-based practices and interventions specific to the unique behavioral needs of the nonpublic, nonsectarian school or agency's pupil population. The training shall be provided within 30 days of employment to new staff who have any contact or interaction with pupils during the schoolday, and annually to all staff who have any contact or interaction with pupils during the schoolday.

(ii) For a nonpublic, nonsectarian school or agency that was in existence as of the January 1 immediately preceding a school year, documentation that the nonpublic, nonsectarian school or agency's staff members who will have contact or interaction with pupils during the schoolday have received training that complies with the requirements of subparagraphs (B) and (C).

(B) The training described in this paragraph shall be selected and conducted by the nonpublic, nonsectarian school or agency and shall satisfy all of the following conditions:

(i) Be conducted by persons licensed or certified in fields related to the evidence-based practices and interventions being taught.

(ii) Be taught in a manner consistent with the development and implementation of individualized education programs.

(iii) Be consistent with the requirements of Article 5.2 (commencing with <u>Section 49005</u>) of Chapter 6 of Part 27, relating to pupil discipline.

(C) The content of the training described in this paragraph shall include, but is not limited to, all of the following:

(i) Positive behavioral intervention and supports, including collection, analysis, and use of data to inform, plan, and implement behavioral supports.

(ii) How to understand and address challenging behaviors, including evidence-based strategies for preventing those behaviors.

(iii) Evidence-based interventions for reducing and replacing challenging behaviors, including deescalation techniques.

(D)(i) The contracting local educational agency shall verify the nonpublic, nonsectarian school or agency's compliance with the requirements of this paragraph, and the nonpublic, nonsectarian school or agency shall report the contracting local educational agency's verification to the Superintendent annually with the annual certification documents described in subdivision (h).

(ii) For a nonpublic, nonsectarian school or agency seeking initial certification, the contracting local educational agency shall verify that the plan and timeline for training provided pursuant to this paragraph are included in the master contract.

(iii) For a nonpublic, nonsectarian school or agency not in existence as of the January 1 immediately preceding a school year, the contracting local educational agency shall, 30 days following the commencement of the school year, verify that the nonpublic, nonsectarian school or agency provided the training required by this

paragraph, and shall submit the verification to the Superintendent at that time.

(iv) The nonpublic, nonsectarian school or agency shall maintain written records of the training provided pursuant to this paragraph, and shall provide written verification of the training upon request.

(5) Commencing with the 2021-22 school year, documentation that the administrator of the nonpublic, nonsectarian school holds or is in the process of obtaining one of the following:

(A) An administrative credential granted by an accredited postsecondary educational institution and two years of experience with pupils with disabilities.

(B) A pupil personnel services credential that authorizes school counseling or psychology.

(C) A license as a clinical social worker issued by the Board of Behavioral Sciences.

(D) A license in psychology regulated by the Board of Psychology.

(E) A master's degree issued by an accredited postsecondary institution in education, special education, psychology, counseling, behavioral analysis, social work, behavioral science, or rehabilitation.

(F) A credential authorizing special education instruction and at least two years of experience teaching in special education before becoming an administrator.

(G) A license as a marriage and family therapist certified by the Board of Behavioral Sciences.

(H) A license as an educational psychologist issued by the Board of Behavioral Sciences.

(I) A license as a professional clinical counselor issued by the Board of Behavioral Sciences.

(6) An annual operating budget.

(7) Affidavits and assurances necessary to comply with all applicable federal, state, and local laws and regulations that include criminal record summaries required of all nonpublic, nonsectarian school or agency personnel having contact with minor children under Section 44237.

(b)(1) The applicant shall provide the special education local plan area in which the applicant is located with the written notification of its intent to seek certification or renewal of its certification. The local educational agency representatives shall acknowledge that they have been notified of the intent to certify or renew certification. The acknowledgment shall include a statement that representatives of the local educational agency for the area in which the applicant is located have had the opportunity to review the application at least 60 calendar days before submission of an initial application to the Superintendent, or at least 30 calendar days before submission of a renewal application to the Superintendent. The acknowledgment shall provide assurances that local educational agency representatives have had the opportunity to provide input on all required components of the application.

(2) If the local educational agency has not acknowledged an applicant's intent to be certified 60 calendar days from the date of submission for initial applications or 30 calendar days from the date of the return receipt for renewal applications, the applicant may file the application with the Superintendent.

(3) The department shall provide electronic notification of the availability of renewal application materials to certified nonpublic, nonsectarian schools and agencies at least 120 days before the date their current certification expires.

(c) If the applicant operates a facility or program on more than one site, each site shall be certified.

(d) If the applicant is part of a larger program or facility on the same site, the Superintendent shall consider the effect of the total program on the applicant. A copy of the policies and standards for the nonpublic, nonsectarian school or agency and the larger program shall be available to the Superintendent.

(e)(1) Before certification, the Superintendent shall conduct an onsite review of the facility and program for which the applicant seeks certification. The Superintendent may be assisted by representatives of the special education local plan area in which the applicant is located and a nonpublic, nonsectarian school or agency representative who does not have a conflict of interest with the applicant. The Superintendent shall conduct an additional onsite review of the facility and program within three years of the effective date of the certification, unless the Superintendent conditionally certifies the nonpublic, nonsectarian school or agency, or unless the Superintendent receives a formal complaint against the nonpublic, nonsectarian school or agency. In the latter two cases, the Superintendent shall conduct an onsite review at least annually.

(2) In carrying out this subdivision, the Superintendent may verify that the nonpublic, nonsectarian school or agency has received a successful criminal background check clearance and has enrolled in subsequent arrest notice service, pursuant to Section 44237, for each owner, operator, and employee of the nonpublic, nonsectarian school or agency.

(3) Commencing with the 2020-21 school year, a local educational agency that enters into a master contract with a nonpublic, nonsectarian school shall conduct, at minimum, both of the following:

(A) An onsite visit to the nonpublic, nonsectarian school before placement of a pupil if the local educational agency does not have any pupils enrolled at the school at the time of placement.

(B) At least one onsite monitoring visit during each school year to the nonpublic, nonsectarian school at which the local educational agency has a pupil attending and with which it maintains a master contract. The monitoring visit shall include, but is not limited to, a review of services provided to the pupil through the individual service agreement between the local educational agency and the nonpublic, nonsectarian school, a review of progress the pupil is making toward the goals set forth in the pupil's individualized education program, a review of progress the pupil is making toward the goals set forth in the pupil's behavioral intervention plan, if applicable, an observation of the pupil during instruction, and a walkthrough of the facility. The local educational agency shall report the findings resulting from the monitoring visit to the department within 60 calendar days of the onsite visit. On or before June 30, 2020, the department shall, with input from special education local plan area administrators, create and publish criteria for reporting this information to the department.

(f) The Superintendent shall make a determination on an application within 120 days of receipt of the application and shall certify, conditionally certify, or deny certification to the applicant. If the Superintendent fails to take one of these actions within 120 days, the applicant is automatically granted conditional certification for a period terminating on August 31 of the current school year. If certification is denied, the Superintendent shall provide reasons for the denial. The Superintendent shall not certify the nonpublic, nonsectarian school or agency for a period longer than one year.

(g) Certification becomes effective on the date the nonpublic, nonsectarian school or agency meets all the application requirements and is approved by the Superintendent. Certification may be retroactive if the nonpublic, nonsectarian school or agency met all the requirements of this section on the date the retroactive certification is effective. Certification expires on December 31 of the terminating year.

(h) The Superintendent annually shall review the certification of each nonpublic, nonsectarian school or agency. For this purpose, a certified nonpublic, nonsectarian school or agency annually shall update its application between August 1 and October 31, unless the state board grants a waiver pursuant to Section 56101. The Superintendent may conduct an onsite review as part of the annual review.

(i)(1) The Superintendent shall conduct an investigation of a nonpublic, nonsectarian school or agency onsite at any time without prior notice if there is substantial reason to believe that there is an immediate danger to the health, safety, or welfare of a child. The Superintendent shall document the concern and submit it to the nonpublic, nonsectarian school or agency at the time of the onsite investigation. The Superintendent shall require a written response to any noncompliance or deficiency found.

(2) A nonpublic, nonsectarian school or agency shall notify the department and the local educational agency with which it has a master contract of any pupil-involved incident at the school or agency in which law enforcement was contacted. This notification shall be provided in writing, no later than one business day after the incident occurred.

(3) With respect to a nonpublic, nonsectarian school or agency, the Superintendent shall conduct an investigation, which may include an unannounced onsite visit, if the Superintendent receives evidence of a significant deficiency in

the quality of educational services provided, a violation of Section 56366.9, or noncompliance with the policies expressed by subdivision (b) of Section 1501 of the Health and Safety Code by the nonpublic, nonsectarian school or agency. The Superintendent shall document the complaint and the results of the investigation and shall provide copies of the documentation to the complainant, the nonpublic, nonsectarian school or agency, and the contracting local educational agency.

(4) Violations or noncompliance documented pursuant to paragraph (1) or (3) shall be reflected in the status of the certification of the nonpublic, nonsectarian school or agency, at the discretion of the Superintendent, pending an approved plan of correction by the nonpublic, nonsectarian school or agency. The department shall retain for a period of 10 years all violations pertaining to certification of the nonpublic, nonsectarian school or agency.

(5) In carrying out this subdivision, the Superintendent may verify that the nonpublic, nonsectarian school or agency received a successful criminal background check clearance and has enrolled in subsequent arrest notice service, pursuant to Section 44237, for each owner, operator, and employee of the nonpublic, nonsectarian school or agency.

(j) The Superintendent shall monitor the facilities, the educational environment, and the quality of the educational program, including the teaching staff, the credentials authorizing service, the standards-based core curriculum being employed, and the standards-focused instructional materials used, of an existing certified nonpublic, nonsectarian school or agency on a three-year cycle, as follows:

(1) The nonpublic, nonsectarian school or agency shall complete a self-review in year one.

68

(2) The Superintendent shall conduct an onsite review of the nonpublic, nonsectarian school or agency in year two.

(3) The Superintendent shall conduct a followup visit to the nonpublic, nonsectarian school or agency in year three.

* * *

(n)(1) Notwithstanding any other law, only those nonpublic, nonsectarian schools or agencies that provide special education and designated instruction and services using administrators and staff who hold a certificate, permit, or other document equivalent to that which staff in a public school are required to hold in the service rendered are eligible to receive certification. Only those nonpublic, nonsectarian schools or agencies located outside of California that employ staff who hold a current valid credential or license to render special education and related services as required by that state shall be eligible to be certified. Commencing with the 2021-22 school year, this paragraph shall not apply to administrators.

(2) Commencing with the 2021-22 school year, notwithstanding any other law, only those nonpublic, nonsectarian schools or agencies that provide special education and related services using administrators who hold or are in the process of obtaining a credential, degree, or license in accordance with paragraph (5) of subdivision (a) are eligible to be certified.

(3) The state board shall develop regulations to implement this subdivision.

(*o*) In addition to meeting the standards adopted by the state board, a nonpublic, nonsectarian school or agency shall provide written assurances that it meets all applicable standards relating to fire, health, sanitation, and building safety.

(p)(1) Notwithstanding subdivision (n) of Section 44237, and for purposes of enabling the Superintendent to carry out the duties pursuant to this section, a nonpublic, nonsectarian school or agency shall, upon demand, make available to

69

the Superintendent evidence of a successful criminal background check clearance and enrollment in subsequent arrest notice service, conducted pursuant to Section 44237, for each owner, operator, and employee of the nonpublic, nonsectarian school or agency.

(2) The nonpublic, nonsectarian school or agency shall retain the evidence and store it in a locked file separate from other files.

### § 56366.2.  Waiver of requirements; petition

(a) A local educational agency, nonpublic, nonsectarian school, or nonpublic, nonsectarian agency may petition the Superintendent to waive one or more of the requirements under Sections 56365, 56366, 56366.3, and 56366.6. The petition shall state the reasons for the waiver request, and shall include the following:

(1) Sufficient documentation to demonstrate that the waiver is necessary to the content and implementation of a specific pupil's individualized education program and the pupil's current placement.

(2) The period of time that the waiver will be effective during any one school year.

(3) Documentation and assurance that the waiver does not abrogate any right provided to individuals with exceptional needs and their parents or guardians under state or federal law, and does not hinder the compliance of a local educational agency with the federal Individuals with Disabilities Education Act (20 U.S.C. Sec. 1400 et seq.), Section 504 of the federal Rehabilitation Act of 1973 (29 U.S.C. Sec. 794), the federal Americans with Disabilities Act of 1990 (42 U.S.C. Sec. 12101 et seq.), and federal regulations relating to those acts.

(b) No waiver shall be granted for reimbursement of those costs prohibited under Article 4 (commencing with Section 56836.20) of Chapter 7.2 of Part 30 or for the

certification requirements pursuant to Section 56366.1 unless approved by the board pursuant to Section 56101.

* * *

### § 56366.4.  Revocation or suspension of certification of nonpublic, nonsectarian school or agency; grounds; notice to affected entities

(a) The Superintendent may revoke or suspend the certification of a nonpublic, nonsectarian school or agency for any of the following reasons:

(1) Violation of an applicable state or federal rule or regulation, or aiding, abetting, or permitting the violation of an applicable state or federal rule or regulation.

(2) Falsification or intentional misrepresentation of an element of the application, pupil records, or program presented for certification purposes.

(3) Conduct in the operation or maintenance of the nonpublic, nonsectarian school or agency that is harmful to the health, welfare, or safety of an individual with exceptional needs.

(4) Failure to comply with a provision in the master contract with the local educational agency.

(5) Failure to notify the department in writing of any of the following within 45 days of the occurrence:

(A) Changes in credentialed, licensed, or registered staff who render special education and related services, ownership, management, or control of the nonpublic, nonsectarian school or agency.

(B) Major modification or relocation of facilities.

(C) Significant modification of the nonpublic, nonsectarian school or agency program.

71

(6) Failure to implement recommendations and compliance requirements following an onsite review of the school or agency.

(7) Failure to provide appropriate services, supplies, equipment, or facilities for a pupil as required in the pupil's individualized education program.

(8) Failure to notify the Superintendent in writing within 10 days of the revocation or suspension of a license or permit, including, but not limited to, a residential care license, business license, or other required license or permit.

(9) Failure to implement a pupil's individualized education program.

(10) Failure to notify the Superintendent in writing within 10 days of the death of a pupil or any other individual of unnatural causes within the school or agency, including the circumstances surrounding the death and appropriate preventative measures being taken or recommended.

(b) If an investigation conducted by the department results in a finding that pupil health or safety has been compromised or is in danger of being compromised at a nonpublic, nonsectarian school or agency, the department may immediately suspend or revoke the certification of the nonpublic, nonsectarian school or agency.

(c) The Superintendent shall notify contracting local educational agencies and the special education local plan area in which the nonpublic, nonsectarian school or agency is located of the determination to suspend or revoke state certification.

(d) If the Superintendent determines that a nonpublic, nonsectarian school or agency has violated the certification requirements pursuant to this section and revokes the certification, the nonpublic, nonsectarian school or agency; the site administrator, business, organization, or entity involved in the administration of the nonpublic, nonsectarian school or agency whose certification was revoked; and the site administrator, business, organization, or entity whose nonpublic, nonsectarian

school or agency certification was revoked at any time previously, shall not be eligible to apply for recertification of the school or agency for two full years from the date of revocation.

## § 56366.5. Payment for contract services of nonpublic, nonsectarian school; request; penalty for unjustified nonpayment; use of funds for individuals with exceptional needs

(a) Upon receipt of a request from a nonpublic, nonsectarian school for payment for services provided under a contract entered into pursuant to Sections 56365 and 56366, the local educational agency shall either (1) send a warrant for the amount requested within 45 days, or (2) notify the nonpublic, nonsectarian school within 10 working days of any reason why the requested payment shall not be paid.

(b) If the local educational agency fails to comply with subdivision (a), the nonpublic, nonsectarian school may require the local educational agency to pay an additional amount of 1 ½ percent of the unpaid balance per month until full payment is made. The local educational agency may not claim reimbursement from the state for the additional amount pursuant to any provision of law, including any provision contained in Chapter 3 (commencing with Section 2201) of Part 4 of Division 1 of the Revenue and Taxation Code.

(c) Any educational funds received from a local educational agency for the educational costs of individuals with exceptional needs it has placed in nonpublic, nonsectarian schools shall be used solely for those purposes and not for the costs of a residential program.

## § 56366.10. Nonpublic, nonsectarian schools; additional certification requirements

In addition to the certification requirements set forth in Sections 56366 and 56366.1, a nonpublic, nonsectarian school that provides special education and related services to an individual with exceptional needs shall certify in writing to the Superintendent that it meets all of the following requirements:

(a) It will not accept a pupil with exceptional needs if it cannot provide or ensure the provision of the services outlined in the pupil's individualized education program.

(b) Pupils have access to the following educational materials, services, and programs that are consistent with each pupil's individualized education program:

(1)(A) For kindergarten and grades 1 to 8, inclusive, state-adopted, standards-based, core curriculum and instructional materials, including technology-based materials as defined in Section 60010.

(B) For grades 9 to 12, inclusive, standards-based, core curriculum and instructional materials, including technology-based materials as defined in Section 60010, used by any local educational agency that contracts with the nonpublic, nonsectarian school.

(2) College preparatory courses.

(3) Extracurricular activities, such as art, sports, music, and academic clubs.

(4) Career preparation and vocational training, consistent with transition plans pursuant to state and federal law.

(5) Supplemental assistance, including individual academic tutoring, psychological counseling, and career and college counseling.

(c) The teachers and staff provide academic instruction and support services to pupils with the goal of integrating pupils into the least restrictive environment pursuant to federal law.

(d) The school has and abides by a written policy for pupil discipline that is consistent with state and federal law and regulations.

(e) For a school serving pupils with significant behavioral needs or who are on behavioral intervention plans, the school has an individual onsite during school hours who is qualified, and responsible for the design, planning, and implementation of behavioral interventions, as authorized under Section 3051.23 of Title 5 of the California Code of Regulations.

(f) Commencing with the 2020-21 school year, the nonpublic, nonsectarian school provides annual training to all staff who have any contact or interaction with pupils during the schoolday. The training is also provided within 30 days of employment to new staff who have any contact or interaction with pupils during the schoolday. The nonpublic, nonsectarian school maintains written records of the training, and will provide written verification of the training upon request. The training shall comply with the requirements of subparagraphs (B) and (C) of paragraph (4) of subdivision (a) of Section 56366.1.

## California Code of Regulations, Title 5

### § 3001.  Definitions

In addition to those found in Education Code sections 56020 - 56035, 20 U.S.C. Sections 1401(1) to (35), and 34 C.F.R. Sections 300.4 - 300.45, the following definitions are provided:

(a) "Access" means that the nonpublic, nonsectarian school shall provide State Board of Education (SBE)-adopted, standards-aligned core curriculum and

75

instructional materials for kindergarten and grades 1 to 8 (K-8), inclusive; and provide standards-aligned core curriculum and instructional materials for grades 9 to 12 (9-12), inclusive, used by a local educational agency (LEA) that contracts with the nonpublic school.

(1) The nonpublic, nonsectarian school shall provide each student with a copy of textbooks and other instructional materials used to implement the SBE-adopted core curriculum (K-8) and standards-aligned core curriculum (9-12) in each subject area. As required through the individualized education program (IEP) for each pupil with hearing impairments, vision impairments, severe orthopedic impairments, or any combination thereof, SBE-adopted core curriculum (K-8) and standards-aligned core curriculum (9-12) may be in Braille, large print, recordings, and American Sign Language VideoBooks.

(2) Photocopies of portions of textbooks or instructional materials, or photocopies of entire textbooks or instructional materials to implement SBE-adopted core curriculum (K-8) and standards-aligned core curriculum (9-12) is not sufficient access.

* * *

(p) "Nonsectarian" means a private, nonpublic school or agency that is not owned, operated, controlled by, or formally affiliated with a religious group or sect, whatever might be the actual character of the education program or the primary purpose of the facility and whose articles of incorporation and/or by-laws stipulate that the assets of such agency or corporation will not inure to the benefit of a religious group.

* * *

## § 3060.  Application for Certification

76

(a) Any school, person or agency desiring to obtain certification as a nonpublic school or nonpublic agency shall file an application with the SSPI on forms developed and provided by the CDE.

(b) Applications to be certified as a nonpublic school or a nonpublic agency shall be filed at the time allowed by Education Code section 56366.1(b) and (h).

(c) Each nonpublic school or nonpublic agency application shall include all information required by the CDE's application pursuant to Education Code sections 56366.1(a) and (b) and:

   (1) the name and address of the nonpublic school or nonpublic agency;

   (2) the name of the administrator and contact person;

   (3) the telephone and FAX number and e-mail address;

   (4) for nonpublic schools, the name of the teacher(s) with a credential authorizing service in special education;

   (5) the types of disabling conditions served;

   (6) the age, gender and grade levels served;

   (7) the total student capacity of the program;

   (8) a brief description of the program including entrance criteria and exit criteria for transition back to the public school setting, and specific services designed to address student needs as listed on the student's IEP;

   (9) for nonpublic schools, SBE-adopted core-curriculum (K-8) and standards-aligned core-curriculum (9-12) and instructional materials used by general education students;

   (10) per hour, per day or monthly fees for services provided;

   (11) written directions and a street map describing the location of the nonpublic school from the major freeways, roads, streets, thoroughfares and closest major airport;

(12) annual operating budget, including projected costs and revenues for each agency and school program, providing documentation that demonstrates that the rates to be charged are reasonable to support the operation of the agency or school program;

(13) an entity-wide audit in accordance with generally accepted accounting and auditing principles including each entity's costs and revenues by individual cost center;

(14) a list of all qualified staff, including subcontractors identifying their assignment and qualifications in providing services to pupils;

(15) tuberculosis clearance dates for all staff;

(16) criminal record summary or criminal history clearance dates for all staff, including subcontractors, who have contact with pupils;

(17) a list of contracting LEAs for whom the applicant has a contract to provide school and/or related services;

(18) for out-of-state applicants, a copy of the current certification or license by the state education agency to provide education services to individuals with exceptional needs under the Individuals with Disabilities Education Act;

(19) a copy of the current school year calendar weekly class schedule, and daily schedule with number of instructional minutes by each grade level served;

(20) a fire inspection clearance completed within the past 12 months;

(21) For new or relocating nonpublic schools, the following documents shall be available for inspection during any onsite visit made by the CDE:

       (A) a copy of a business license (if applicable);

       (B) a written disaster and mass casualty plan of action;

       (C) a building safety inspection clearance; and

       (D) a health inspection clearance.

(22) For each nonpublic school with a residential component the application shall include:

    (A) the name of the residential program attached to the nonpublic school;

    (B) the proprietary status of the residential program;

    (C) a list of all residential facilities affiliated with the nonpublic school;

    (D) the total capacity of all the residential facilities affiliated with the nonpublic school;

    (E) the rate classification level (California schools only) for each residential facility affiliated with the nonpublic school; and

    (F) a copy of the current residential care license.

(d) The applicant shall submit a signed assurance statement that the nonpublic school will maintain compliance with the following:

(1) Fair Employment Act;

(2) Drug Free Workplace Act;

(3) Section 504 of the Rehabilitation Act;

(4) Individuals with Disabilities Education Act;

(5) Civil Rights Act;

(6) Nonsectarian status;

(7) Prohibition of Corporal Punishment of Pupils under Education Code section 49001; use of Positive Behavioral Interventions pursuant to Education Code sections 56520 through 56525;

(8) OSHA Bloodborne Pathogens Standards;

(9) all local, county, or state ordinances and/or statutes relating to fire, health, sanitation, and building safety;

(10) use permit, conditional permit or zoning; and

(11) other assurances as required by state or federal law set forth in an assurance statement in the nonpublic school or nonpublic agency application for certification.

(e) The applicant shall submit, with the application, a fee in accordance with Education Code section 56366.1(m).

(f) No fee shall be refunded to the applicant if the application is withdrawn or if the SSPI denies the application.

(g) Applicants shall submit a separate application for each nonpublic school or nonpublic agency site pursuant to Education Code section 56366.1(c).

## § 3061.  Service Fees, Finance and Maintenance of Records

All certified nonpublic schools and nonpublic agencies shall:

(a) make available any books and records associated with the delivery of education and related services to individuals with exceptional needs for audit inspection or reproduction by the SSPI or the SSPI's authorized representatives. These records shall include those management records associated with the delivery of education and related services, and the costs of providing services and personnel records necessary to ensure that staff qualifications comply with the requirements contained in Article 6 of these regulations; and

(b) not charge parents for services covered in the master contract with the public education agency.

## § 3062.  Contracts and Agreements

(a) A master contract shall be used by an LEA for entering into formal agreements with certified nonpublic schools or nonpublic agencies. The term of the contract shall not exceed one year. The contract shall specify the administrative and financial agreements between the LEA and the nonpublic school or nonpublic agency.

(b) No master contract with the LEA shall be contingent upon nonpublic school or nonpublic agency individual contracts or agreements with parents.

(c) The master contract shall, at a minimum, include:

(1) general provisions relating to modifications and amendments, notices, waivers, disputes, contractor's status, conflicts of interest, termination, inspection and audits, compliance with applicable state and federal laws and regulations, attendance, record-keeping, and reporting requirements;

(2) payment schedules to include, but not limited to payment amounts, payment demand, right to withhold and audit exceptions;

(3) indemnification and reasonable insurance requirements; and

(4) procedures and responsibilities for attendance and unexcused absences.

(d) All master contracts shall be re-negotiated prior to June 30.

(e) Services may be provided through dual enrollment in public and nonpublic school or nonpublic agency programs to meet the educational requirements specified in the IEP. The master contract or individual service agreement shall specify the provider of each service. The individual with exceptional needs shall be formally enrolled in both nonpublic and public school programs. The nonpublic school or nonpublic agency shall be reimbursed by the LEA for services as agreed upon in the contract.

(f) Substitute teachers shall be used consistent with the provisions of Education Code section 56061.

(g) Nonpublic schools and nonpublic agencies shall provide contracting LEAs with copies of current valid California credentials and licenses for staff providing services to individuals with exceptional needs.

(h) Nonpublic schools and agencies shall notify the SSPI and LEAs in writing within 45 days of any change in credential or licensed personnel. Failure to provide properly qualified personnel to provide services as specified in the IEP shall be cause for the termination of all contracts between the LEA and the nonpublic school or nonpublic agency.

## § 3063.  Program Reviews

(a) The SSPI shall conduct a validation review of the nonpublic school prior to an initial conditional certification. An on-site review shall be conducted within 90 days of the initial conditional certification and student enrollment. On-site reviews shall be scheduled at least once every three years thereafter.

(b) The nonpublic school, the contracting LEA, and the SELPA shall be given a minimum of 30 days prior notice before an on-site review.

(c) The person serving as the lead of the review team shall confer with the school administrator at least 48 hours prior to the on-site review to discuss the procedures and the number of days required for the review. The lead of the review team shall identify those persons who are to participate in the on-site review.

(d) Nonpublic schools and nonpublic agencies may be visited at any time without prior notice when there is substantial reason to believe that there is an immediate danger to the health, safety, or welfare of a child or group of children. The SSPI

shall document the concern and submit it to the nonpublic school or nonpublic agency at the time of the on-site monitoring.

(e) On-site reviews shall include the following procedures:

(1) an entrance meeting to acquaint the on-site review team with the nonpublic school or nonpublic agency staff and site to discuss the purpose and objectives of the review;

(2) a review and examination of files and documents, classroom observations and interviews with the site administrator, teachers, students, volunteers and parents to determine compliance with all applicable state and federal laws and regulations; and

(3) an exit meeting to provide the nonpublic school or nonpublic agency with a preliminary preview of the on-site review findings, verify compliance and offer technical assistance including how to resolve issues of noncompliance.

(f) The SSPI shall provide the nonpublic school or nonpublic agency, the contracting educational agency, and the SELPA with a written report within 60 days of the on-site review.

(g) The SSPI shall request a written response, within a timeframe to be determined by the SSPI, but in no case to exceed 180 days, to any noncompliance finding that resulted from the on-site review.

(h) The SSPI shall provide a written notification, within 30 days of receipt, to the nonpublic school or nonpublic agency regarding their response to each noncompliance finding.

(i) On-site reviews shall be conducted only by personnel who have been trained by CDE staff to perform such administrative and program examinations.

## § 3064.  Staff Qualifications – Special Education Instruction

(a) In each classroom for which the nonpublic school is seeking certification, the nonpublic school shall deliver instruction utilizing personnel who possess a credential authorizing the holder to deliver special education instruction according to the age range and disabling conditions of individuals with exceptional needs enrolled in the nonpublic school.

(1) During situations when instructional personnel leave the employ of the nonpublic school with little or no notice, the nonpublic school may employ a person who holds a Provisional Internship Permit or a Short Term Staff Permit.

(b) Instruction shall be directed and delivered pursuant to the IEP, the master contract and the individual service agreement.

(c) To provide special education instruction for individuals with exceptional needs younger than three years of age, as described in Education Code, Part 30, chapter 4.4, the nonpublic school shall comply with the provisions of Education Code section 56425 et seq., and Education Code section 56426.2(e) regarding adult to child ratios.

(d) To provide special education instruction for individuals with exceptional needs between the ages of three and five years, inclusive, as described in Education Code, Part 30, chapter 4.45, the nonpublic school shall comply with the provisions of Education Code section 56440 et seq., and Education Code section 56441.5 regarding appropriate instructional adult-to-child-ratios.

(e) Nonpublic schools and nonpublic agencies shall comply with the personnel standards and qualifications pursuant to Education Code section 45340 et seq., and Education Code section 45350 et seq., regarding instructional aides and teacher assistants, respectively.

(f) Nonpublic schools and nonpublic agencies shall comply with all of the laws and regulations governing the licensed professions, in particular the provisions with respect to supervision. Nonpublic schools and nonpublic agencies may use assistants to the extent authorized by state and federal law.

## § 3070. Graduation

When an individual with exceptional needs meets public education agency requirements for completion of prescribed course of study designated in the pupil's IEP, the public education agency which developed the IEP shall award the diploma.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 8, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: January 8, 2024        By: /s/ Thomas Prouty
                                    THOMAS H. PROUTY
                                    Attorney for the State Appellees